**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In the Matter of B.A.S. | ) |
| | ) |
| Isacco Jacky Saada, | ) |
| | ) |
| Petitioner, | ) |
| | )    Case No. _____ |
| v. | ) |
| | ) |
| Narkis Aliza Golan, | ) |
| | ) |
| Respondent. | ) |
| | ) |

## PETITION FOR RETURN OF THE CHILD TO PETITIONER

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 et seq.**

### I. Preamble

1.  This Petition is brought by Isacco Jacky Saada ("Mr. Saada" or "Petitioner"), to secure the return of his two-year-old son, B.A.S. ("The Child"), who was, without Petitioner's consent or acquiescence, wrongfully removed retained from Italy and brought to the Eastern District of New York by child's mother, Respondent Narkis Aliza Golan ("The Respondent").

2.  This petition is filed pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA") 22 U.S.C. § 9001. The Convention came into effect in the United States of America on July 1, 1988 and was also ratified between the United States of America and Italy on May 1,

---

[1]  T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986), a copy of which is attached hereto as Exhibit A.

1995.  A copy of the Hague Convention and ICARA are annexed here as **Exhibit A** and **B**, respectively.

3. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.  Convention, art. 1.

4. The Convention applies to cases in which one parent wrongfully removes and retains his or his child, who is under the age of sixteen (16) years, from the child's "habitual residence" in breach of the other parent's custodial rights, which were being exercised at the time of the wrongful retention of the child. Hague Convention, Art. 3.

5. Petitioner respectfully requests that pursuant to Articles 1(a) and 12 of the Convention, this Court order that the child be returned to Italy, the child's habitual residence.

## II. Jurisdiction and Venue

6. This Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) (jurisdiction under the Hague Convention) and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Venue is proper pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1391(b) because, upon information and belief, the Child and Respondent are residing at 1628 E. 12th Street, Brooklyn, NY 11229 in the Eastern District of New York; and because this case involves the removal and retention of a child under the age of sixteen from his habitual residence of Italy to the United States of America.

### III. History of the Case and Status of Petitioner and Child

8.  The Petitioner and the Respondent are the parents of the Child. They had a religious Jewish marriage, performed in Israel, on August 18, 2015. Their marriage, however, has not been registered in Italy or in Israel.

9.  The Child was born on ⬛⬛⬛⬛⬛⬛⬛ in Milan, Italy. A copy of the child's birth certificate is annexed hereto as **Exhibit C.**

10. Petitioner and Respondent have lived in Italy with the Child for the Child's entire life at Via Soderini Luigi N. 35, Milan, Italy. At no point did the parties share an intention for the Child to reside anywhere other than Italy.

11. Petitioner-father is an Italian citizen as is the Child. Respondent-mother is an American citizen.

12. The Child is now two (2) years old. The Convention applies to cases where a child under the age of sixteen (16) years has been removed from his or his habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

13. The parties lived together with the child in the parties' marital residence, owned by Petitioner's father's real estate company, located at Via Soderini Luigi N. 35, Milan, Italy, with a shared intent to remain in Italy, as of August 2018. Petitioner is employed full-time in Italy.

14. Respondent traveled with the Child to New York on vacation in or around July 18, 2018. She left with round trip tickets with the plan to return to Italy on or around August 15, 2018. Respondent did not return the Child to Italy and has no intention of doing so. She has wrongfully retained the minor child in a foreign jurisdiction since that time.

15. At the time of the abduction of the Child from Italy, the Petitioner had and continues to have rights of custody under Italian law in terms such that the removal and retention of the Child from Italy is in violation of Italian law and is a wrongful removal or retention within the meaning of Articles 3 and 5 of the Convention.

16. At the time of the Respondent's wrongful removal and retention of the Child, the Petitioner was actually exercising custody rights within the meaning of Articles Three and Five of the Convention, in that he is the father of the Child, was residing with the child, and has exercised custody rights over the Child since he was born.

17. Furthermore, the Child was habitually resident in Italy within the meaning of Article 3 of the Convention from June 2016 until his wrongful retention from Italy on or about August 15, 2018. A copy of the child's identification card and health insurance coverage is annexed hereto as **Exhibit D** and **E**, respectively.

18. The Child was born on███████████and will be sixteen (16) years of age on███████████ At the time immediately before the wrongful removal of the Child from Italy, the child habitually resided in Italy within the meaning of Article 3 of the Convention.

19. The residence of the minor child for the last five (5) years is as follows:

> Child's Name: B.A.S.
> Place of Birth: Milan, Italy
> Birth Date: ███████████
> Gender: Male
>
> Period of Residence: ███████████ – present
> Number of Days/Months/Years: 2 years, 3 months
> Address: Via Soderini 35
> Person Child Lived With: Petitioner and Respondent

20. Petitioner does not know of any person or institution not a party to the proceedings who has physical custody of the child or claims to have rights of parental responsibilities or legal custody or physical custody of, or visitation or parenting time with the child.

**IV.  Wrongful Removal and Retention of Child by Respondent: Claim for Relief Under the Hague Convention**

21. A removal or retention of a child is wrongful under Article 3 of the Hague Convention if: (a) the removal of retention is in breach of custody rights attributed to a person, institution, or other body, either jointly or alone, under the law of the state in which the child was habitually resident immediately before the removal or retention; and (b) at the time of the removal or retention, those custody rights were actually exercised, or would have been exercised, but for the removal or retention of the child. See Hague Convention, Arts. 3 and 5.

22. "Custody rights" under the Hague Convention are defined to include "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." See Hague Convention, Art. 5(a).

23. The child's country of "habitual residence", as defined in Article 3 of the Hague Convention, is Italy, which is where the child habitually resided prior to his wrongful removal to the United States.

24. Petitioner has a right of custody of the child within the meaning of Articles 3 and 5 of the Convention pursuant to Art. 316 of the Italian Civil Code which states as follows:

> "Both parents have parental responsibility that is exercised by mutual agreement taking into account the child's natural abilities, inclinations and aspirations. The parents by mutual agreement establish the habitual residence of the minor.
>
> In case of conflict on matters of particular importance, each of the parents can ask to the Judge to indicate the measures he considers most appropriate.

25. On or around July 18, 2018, Respondent left Italy for the United States to visit her mother who lives in Brooklyn as she has done in the past, and to attend her brother's wedding. She traveled with the Child and planned to return on August 15th. A copy of the return flight is annexed hereto as **Exhibit F.** However, Respondent then informed Petitioner, or August 15, 2018, that she did not plan on returning to Italy as promised. At the time, Petitioner was already at the airport waiting to pick up Respondent and the Child. On or around September 12, 2018, Respondent's Italian lawyer wrote a letter to Petitioner to address the future custody of the Child.

26. Following abduction by the Respondent from Italy to the United States, the Child is currently being illegally held in custody, confinement and/or restraint by the Respondent in the State of New York, Kings County.

27. Upon information and belief, Respondent is keeping the Child at 1628 E. 12th Street, Brooklyn, NY 11229.

28. The Child is now two (2) years old. The Hague Convention applies to children under sixteen (16) years of age and thus applies to this child. Petitioner has never consented or acquiesced to Respondent's wrongful removal and/or retention of the Child.

## V. Provisional Remedies

29. Pursuant to Fed R. Civ. P. 65, Petitioner, Isacco Jacky Saada, hereby moves the Court for an *ex-parte* order temporarily restraining and prohibiting Respondent Narkis Aliza Golan ("Ms. Golan" or "Respondent") from removing the child from this Court's jurisdiction, taking into safe-keeping all of the child's travel documents, and setting an expedited hearing on the Petition for Return of the Child.

30. This injunctive relief is vitally necessary on an ex parte basis to prevent irreparable harm to Petitioner. Specifically, under 22 U.S.C. §9001(a) of ICARA, a district court is empowered take appropriate measures "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." This is such a case.

31. Given the Respondent recent history of abduction and substantial risk of flight, the Respondent is a risk to further abduct the child.

32. The Respondent poses a substantial risk of flight because Respondent has close ties to Israel, both financial and familial.  Respondent's father lives in Israel and is a business man with significant financial means.

33. The Petitioner therefore believes that the Child will be carried out of the jurisdiction of this Court or will suffer some irreparable injury unless a TRO is used.

### VI. Attorney's Fees and Costs

34. To date, Petitioner has incurred attorneys' fees and costs as a result of the wrongful removal of the child by Respondent.

35. Petitioner respectfully requests that this Court award his all costs and fees, including transportation costs, incurred to date as required by 22 U.S.C. § 9007.

36. Petitioner will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and in light of further expenditure required because of this wrongful removal and retention.

### VII.  Notice of Hearing

37. Pursuant to 22 U.S.C. § 9003(c), Respondent will be given notice of any hearing pursuant to the New York Rules of Civil Procedure.

## VIII.  Relief Requested

**WHEREFORE**, it is respectfully requested that the following relief be granted:

a.  Set an expedited hearing on the petition and communicate that hearing date and time to petitioner so that petitioner may provide notice of these proceedings and the hearing pursuant to ICARA Section 9003(c).

b.  Issue an immediate order that respondent surrender any and all of his passports and all of the passports of the child.

c.  Issue an order following the hearing, directing that the child shall be returned to his Habitual Residence of Italy, pursuant to Article 12 of the Convention.

d.  Enter an immediate ex parte temporary restraining order prohibiting the removal of the child from the jurisdiction of this Court pending a hearing on the merits of the Verified Complaint, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the child from the jurisdiction of this Court pending a determination on the merits of this case;

e.  Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the child's wrongful removal and retention pursuant to 22 U.S.C. § 9007;

f.  any such further relief as justice and its cause may require.

Dated:  September 20, 2018
New York, New York

Robert D. Arenstein
Attorney for Petitioner
295 Madison Avenue, 16th Floor
New York, New York 10017
(212) 297-6114

8

## VERIFICATION

I, Isacco Jacky Saada, solemnly declare and affirm under the penalties of perjury and the laws of the United States of America, that I am the petitioner in the within action and have read the foregoing Petition and know the contents of the foregoing Petition are true, to the best of my knowledge, except as to those matters alleged upon information and belief.

Dated:  September 20, 2018
        New York, New York

                                        Isacco Jacky Saada

9

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In the Matter of B.A.S. | ) |
| | ) |
| Isacco Jacky Saada, | ) |
| | ) |
|              Petitioner, | ) |
| | )    **Case No. _____** |
|    v. | ) |
| | ) |
| Narkis Aliza Golan, | )    **DECLARATION** |
| | ) |
|              Respondent. | ) |
| | ) |

Robert D. Arenstein, an attorney admitted to practice in the State of New York and admitted in this court, affirms the following under penalties of perjury:

1.    I am the attorney for Isacco Jacky Saada, the petitioner in the above-captioned matter and am fully familiar with the facts and circumstances set forth herein.  I submit this Declaration in support of the annexed Petition and order to show cause.

2.    I base this Declaration on documents I have received from Petitioner, and discussions I have had with Petitioner and others who have relevant knowledge of this matter.

3.    Petitioner requests that the Court order the prompt return of the child to Italy, the child's habitual residence, as well as temporary orders concerning the well-being of the child, including an order directing that Respondent not leave this Courts' jurisdiction with the child and to turn over her passport(s) and the child's passport(s).

4.    There is a significant risk that Petitioner will suffer irreparable injury if the requested relief is not granted forthwith, and his custody rights pursuant to the Hague Convention, its implementing statute, the International Child Abduction Remedies Act (" ICARA"), and Italian law will continue to be violated by Respondent's illegal actions.

5.     The facts of this case are set forth in greater detail in the Verified Petition attached hereto.

6.     Additionally, the facts contained in the Verified Petition demonstrate Petitioner's likelihood of success on the merits inasmuch as Petitioner sets forth a prima facie case under the Hague Convention and ICARA.

7.     Due to the urgency of the situation, the irreparable harm that will result if Respondent flees the jurisdiction, along with the well-being of the child and Petitioner's likelihood of success on the merits, the Court most respectfully should grant the instant motion.

8.     By his signature below, Petitioner's counsel hereby certifies to the Court that, based on the specific facts shown by the Verified Petition, it clearly appears that immediate and irreparable injury, loss, or damage will result to Petitioner before Respondent or her attorney can be heard in opposition to this motion; that counsel has made no effort to give notice of this motion to Respondent, because, if notice such notice was provided, there exists the possibility that Respondent would further secret both herself and Petitioner's son from both Petitioner and this Court.

9.     No previous application has been made to this Court for the relief requested herein.

WHEREFORE, Petitioner respectfully requests that this Court grant the Petition and order to show cause as prayed for herein.

Dated: New York, New York
        September 20, 2018

Robert D. Arenstein
Attorney for Petitioner
295 Madison Avenue, 16th Floor
New York, New York 10017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

In the Matter of B.A.S.                )
                                       )
Isacco Jacky Saada,                    )
                                       )
                    Petitioner,        )
                                       )        Case No. _____
         v.                            )
                                       )
Narkis Aliza Golan,                    )
                                       )
                    Respondent.        )
---                                    )

## PETITONER'S MEMORANDUM OF LAW IN SUPPORT OF ORDER TO SHOW CAUSE AND PETITION PURSUANT TO THE HAGUE CONVENTION SEEKING A TEMPORARY RESTRAINING ORDER

1. Petitioner Isacco Jacky Saada ("Mr. Saada or " Petitioner" ) seeks relief from this Court, in the form of an order for the return of B.A.S. ("the child") to Italy under the Convention on the Civil Aspects of International Child Abduction (the " Hague Convention" ). Oct. 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98 (a copy of the Hague Convention is attached as Exhibit A to the Verified Petition).

2. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art.

3. Specifically, the Petition seeks an order for the return of the Child, under Articles 8 (providing a right of action to a person exercising rights of custody) and 12 (providing for the return of the child as a remedy) of the Hague Convention, as well as under the International Child Abduction Remedies Act ("ICARA" ), 22

1

U.S.C. §§9001-9010 (a copy of ICARA is attached as Exhibit B to the Verified Complaint).

4. Further, Petitioner urgently needs emergency equitable relief to prevent Respondent Narkis Aliza Golan ("Ms. Golan" or "Respondent") from further interference with Petitioner's rights of custody over their minor child, who was, without Petitioner's acquiescence or consent, wrongfully retained from Italy by Respondent.

5. As set forth in Petitioner's Verified Petition for Return of the Child (the "Verified Petition"), Respondent has wrongfully removed the Child from their place of habitual residence in Milan, Italy, in violation of the Hague Convention.

6. Emergency relief is authorized under 22 U.S.C. §9004(a), which provides that a court may take appropriate measures "to protect the well-being of the child involved *or to prevent the child's further removal or concealment before the final disposition of the petition.*" (Emphasis added.) As discussed below, emergency relief is appropriate here.

## BACKGROUND

7. The facts are fully laid out in the Verified Petition, but are recited here succinctly for clarity.

8. Petitioner and Respondent are the parents of the Child. Petitioner and Respondent were married in a religious ceremony on August 18, 2015.  (Verified Petition ¶8)

9. On ▮▮▮▮▮▮▮ the Child was born in Milan, Italy. Id. at ¶9. The Child is currently two (2) years old. The Hague Convention applies to children under sixteen years of age, and thus, applies to the Child.

10. From the birth of the child until the wrongful retention, the parties resided with the child in Italy.  Id. at ¶10.

2

11. On July 18, 2018, the Respondent traveled to New York with the Child to visit her mother.  The Respondent and the Child were scheduled to return on August 15, 2018. Id. at ¶14.

12. Neither the Respondent nor the Child returned to Italy on August 15, 2018 or since and both remain in New York.  Id. at ¶14.

13. At no time did the Petitioner give permit or authorize the removal of the Child from Italy. Id. at ¶28. There are no currently pending legal proceedings in any other jurisdiction related to this matter.

14. Upon information and belief, the Child is currently being kept in by the Respondent at 1628 E. 12th Street, Brooklyn, NY 11229. Id. at ¶7.

## PURPOSES AND PERTINENT PROVISIONS OF THE HAGUE CONVENTION

15. The United States became a "Contracting State" to the Hague Convention on July 1, 1988. The Hague Convention is implemented in the United States by ICARA. The Convention is a reciprocal treaty, in that it is only effective between contracting states.

16. The Convention is to be given uniform international interpretation. 22 U.S.C. 9001. The opinion of sister signatories to the Convention are entitled to significant weight. *Air France v. Saks*, 470 U.S. 392, 404 (1985). "Treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Chocotaw Nation of Indians v. United States*, 318 U,S. 423, 431-432 (1943); *Air France v. Saks*, 470 U.S. 392, 396 (1985); *Sale v. Haitian Ctrs. Council*, 509 U.S, 155 (1993).

17. Article 1 of the Convention states that the Convention's goals are:

   (a) to secure the prompt return of children wrongfully removed to or retained in any contracting State; and

3

(b) to ensure that rights of custody and of access under the law of one
Contracting State are effectively respected in the other Contracting States.

18. Article 3 of the Convention provides, in pertinent part, that:

The removal or the retention of a child is to be considered wrongful where -

(a) it is in breach of rights of custody of a person... under the law of the State
in which the child was habitually resident immediately before the removal or
retention; and

(b) at the time of removal or retention those -rights were actually

exercised, either jointly or alone, or would have been so exercised but for the
removal or retention.

19. The rights of custody mentioned in sub-paragraph a) above, are those as

determined in the state of the habitual residence of the child, and may arise in

particular by operation of law or by reason of a judicial or administrative decision,

or by reason of an agreement having legal effect under the law of that State.

20. Article 4 of the Convention provides that the Convention "shall apply to any child

who was habitually resident in a Contracting State immediately before any breach

of custody or access rights.

21. Article 5(a) of the Convention provides that, within the meaning of the

Convention, "rights of custody shall include rights relating to the care of the

person of the child and, in particular, the right to determine the child's place of

residence."

22. In Article 14 the Convention also dictates that "[i]n ascertaining whether there has

been a wrongful removal or retention within the meaning of Article 3, the judicial

or administrative authorities of the requested State may take notice directly of the

law of, and of judicial or administrative decisions, formally recognized or not in

the State of the habitual residence of the child, without recourse to the specific

procedures for the proof of that law or for the recognition of foreign decisions

which would otherwise be applicable."

4

23. In the primary source of interpretation for the Convention, the Explanatory Report, Professor E. Perez-Vera noted that any exceptions to the return of the child to her habitual residence:

> "...are to be interpreted in a restrictive fashion if the Convention is not to become a dead letter. In fact, the Convention as a whole rests upon the unanimous rejection of this phenomenon of illegal child removals and upon the conviction that the best way to combat them at an international level is to refuse to grant them legal recognition. The practical application of this principle requires that the signatory States be convinced that they belong, despite their differences, to the same legal community within which the authorities of each State acknowledge that the authorities of one of them — those of the child's habitual residence are in principle best placed to decide upon questions of custody and access. As a result, a systematic invocation of the said exceptions, substituting the forum chosen by the abductor for that of the child's residence, would lead to the collapse of the whole structure of the Convention by depriving it of the spirit of mutual confidence which is its inspiration."[1]

**PETITIONER IS ENTITLED TO EMERGENCY RELIEF**

24. Federal courts are empowered to grant temporary restraining orders and preliminary injunctions. See F.R.C.P. 65. Consistent with Federal Rule 65 and the exigent circumstances that typically exist in Hague Convention cases, Article 2 of the Hague Convention provides: "Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the

---

[1] Elisa Perez-Vera, Explanatory Report: Hague Conference on Private International Law in 3 Acts and Documents of the Fourteenth Session ("Explanatory Report" ), 34, at 22-23

5

Convention. For this purpose they shall use the most expeditious procedures

available." October 25, 1980, T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98. The

"objects" of the Hague Convention are expressed in Article 1: the prompt return

of an abducted child and the protection of the rights of custody.

25. Federal Rule 65 allows this Court to expeditiously promote the Hague

Convention's objectives by emergency equitable relief. Rule 65(b) further

provides that "(a] temporary restraining order may be granted without written or

oral notice to the adverse party or that party's attorney only if (1) it clearly appears

from specific facts shown by affidavit or by the verified complaint that immediate

and irreparable injury, loss, or damage will result to the applicant before the

adverse party or that party 's attorney can be heard in opposition, and (2) the

applicant's attorney certifies to the court in writing the efforts, if any, which have

been made to give the notice and the reasons supporting the claim that notice

should not be required." F.R.C.P. 65

26. The decision to grant or deny an injunction is "within the sound discretion of the

district court." *Int'l Cosmetics Exch., Inc, v, Gapaardis Health & Beauty, Inc*., 303

F, 3d 1242, 1246 (11th Cir. 2002). "A preliminary injunction may be issued to

protect the moving party from irreparable injury and to preserve the power of the

trial court to render a meaningful decision on the merits." *Compact Van Equip.*

*Co., Inc. v. Leggett & Platt, Inc.,* 566 F.2d 952, 954 (5th Cir. 1978). The Court's

task on an application for a preliminary injunction is to find: "(1) a substantial

likelihood that the movant will ultimately prevail on the merits; (2) a showing that

the movant will suffer irreparable injury unless the injunction issues; (3) proof that

the threatened injury to the movant outweighs whatever damage the proposed

injunction may cause the opposing party; and (4) a showing that the injunction, if
it is issued, would not be adverse to the public interest." *Id.*

27. As explained below, all of the elements for the emergency equitable relief
requested herein, including injunctive relief, are satisfied in this case.

### *There is a Substantial Likelihood that Petitioner Will Ultimately Prevail on the Merits.*

28. According to the Hague Convention, the removal or retention of a child is
wrongful where the removal is in breach of established custody rights defined by
the law of the country in which the child was habitually resident immediately
before the removal or retention, and where, at the time of removal, these custodial
rights were exercised (either jointly or alone) or would have been so exercised but
for the removal. Convention, Art. 3.

29. By virtue of Italian law, the Country of the Child's habitual residence, the
Petitioner has custodial rights to the Child. Verified Petition ¶25.

30. Additionally, Petitioner exercised his custodial rights until the wrongful removal
and retention.

31. Consequently, Petitioner is likely to prevail on the merits of her petition for the
return of the Child.

### *The Child was habitual residents of Milan, Italy before his abduction.*

32. The fundamental inquiry in any case under the Hague Convention is the habitual
residence of the child. The habitual residence in turn dictates the local law to be
applied in determining the question of custody rights in the habitual residence.

33. The Child's habitual residence at the date of removal, within the meaning of the
Hague Convention, was Italy. The habitual residence is determined at the point in
time "immediately before the removal or retention." (art 3).

34. The Second Circuit addressed the question of the meaning of "habitually resident" in *Gitter v. Gitter,* 396 F.3d 124 (2d. Cir. 2005) and *Poliero v Centenaro,* 373 Fed. Appx. 102, 2010 WL 1573771 (2d Cir. 2010).

35. The approach of the Second Circuit is to examine both parental intent and the child's degree of acclimatization to the residence in establishing the habitual residence of the child. This analysis begins with by focusing on the intent of the persons entitled to fix the place of the child's residence, which is most frequently the parents. The intent of the parents is to be determined by both actions and declarations. The second stage of the analysis is to consider the degree to which the child is acclimatized to the their new surroundings, and whether the degree of acclimatization is such that it can be said that their habitual residence has shifted.

36. In the present case, as the child lived his entire life in Italy, there is a clear parental intent that Italy was the child's habitual residence. The child is an Italian citizen and his entire life exists in that jurisdiction.

***Petitioner was exercising his rights of custody at the time of the Child's wrongful retention.***

37. Article 3 of the Hague Convention provides that a removal is wrongful if it is in violation of the custody rights held by any person, here the petitioner, under that the law of the habitual residence of the child.

38. At the time of the removal of the Child by the Respondent, the Petitioner and the Respondent were cohabitating and the parents of the Child.

39. Article 316 of the Italian Civil Code provides that for the purposes of the Hague Convention each of the parents of a child should be regarded as having rights of custody with respect to the child.

40. Therefore, as the Petitioner is the father of the child, and there have been no court orders sought or obtained in this matter in Italy, under the law of Italy, the

8

Country of the Child's habitual residence, the Petitioner has custodial rights to the Child.

41. Furthermore, as the Verified Petition establishes, the Child has lived with the Petitioner since his birth until the wrongful removal and retention. Clearly, Petitioner was exercising his rights of custody at the time of the Child's wrongful removal.

### *Petitioner will suffer irreparable injury unless equitable relief is granted.*

42. Given that Respondent has already wrongfully removed the Child to the United States and violated Petitioner's custody rights, there is obviously a risk that Respondent will further hide the Child and herself when she learns that Petitioner is seeking the return of her Child to Italy through the United States courts.

43. This is precisely the situation envisaged by the District Court in *Morgan v. Morgan,* where construing the Hague Convention and similar provisions under Iowa state law, the district court issued *ex parte* relief because it feared that "if a temporary restraining order is not issued *ex parte*, Mrs. [Respondent] and Mr. [Respondent's boyfriend] will likely flee this jurisdiction with the child upon receiving notice of Mr. [Petitioner's] intent to seek a temporary restraining order preventing them from doing so." 289 F. Supp.2d 1067, 1070 (N.D. Iowa 2003).

44. If Respondent flees with Petitioner's Child again, it may become increasingly difficult to locate them again.

45. Such a state of affairs would qualify as irreparable injury to the Petitioner on any common sense approach: the separation of a parent from the parent's child is an irreparable injury that can only be rectified by reunion with the child.

46. The risk of Respondent fleeing is especially potent in the present case for the following reasons:

9

a. Respondent has significant familial and financial ties to Israel. Respondent's father lives in Israel and is a business man with significant financial means.

47. The real threat of irreparable injury clearly exists. While it is possible that the Respondent will comply with the summons and voluntarily attend a hearing before this federal district court, this Court must be mindful of the fact that, given that Respondent has abducted the child, there is a possibility that Respondent will ignore the summons and further abduct the Child within or without the jurisdiction.

48. Petitioner could suffer irreparable injury if the requested relief is not granted. Under these circumstances, emergency equitable relief is authorized under the Hague Convention.

49. ICARA directly speaks to such a remedy. 22 U.S.C. §9004(a) provides that a court may take appropriate measures "to protect the well-being of the child involved *or to prevent the child's further removal or concealment before the final disposition of the petition*." (Emphasis added).

***The threatened injury to Petitioner outweighs any damage an injunction may cause Respondent.***

50. The potential of Petitioner once again losing the Child outweighs any perceived injury to Respondent. Petitioner merely seeks the restoration of the status quo: the return of the Child to their habitual residence.

51. The Hague Convention authorizes a federal district court to determine the merits of a claim for wrongful removal or retention of a child. The Hague Convention does not, however, allow the district court to consider the merits of any underlying custody dispute. *Morris v. Morris*, 55 F. Supp. 2d 1156, 1160 (D. Colo. 1999) (recognizing that "[p]ursuant to Article 19 of the Convention, [this Court has] no

power to pass on the merits of custody"). The court's role is not to make traditional custody decisions but to determine in what *jurisdiction* the child should be physically located so that the proper jurisdiction can make those custody decisions. *Loos v. Manuel*, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994).

52. Stated another way, a district court only has jurisdiction to decide the merits of the wrongful removal claim, as the Hague Convention is intended to restore the pre-abduction status quo and deter parents from crossing borders in search of more sympathetic courts. *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (citations omitted); *Barrios Gil v. Rodriguez*, 184 F. Supp. 2d 1221, 1224 (M.D. Fla. 2002). "A return order effectively maintains the status quo with regard to custody of the child. . . A return order will not effect a change in custody. . . because she [Respondent] is free to accompany her child back . . . and retain custody. . . The specific purpose of the Hague Convention was to deter and amend the exact type of abduction in this case, not to bless it." *Furnes v. Reeves*. 362 F.3d 702,717 (11th Cir. 2004).

53. The same analysis applies here. Petitioner is not seeking a custody order from this Court. Rather, he seeks the status quo prior to the wrongful abduction, the ability to exercise his rights of custody in Italy, the Child's habitual residence, where his rights should have been properly determined in the first place. Any custody issues will be determined by a court in Milan, Italy.

54. The Respondent is no position to complain. Having abducted the child and, through his unilateral, unauthorized conduct, taken him to the United States, she left Petitioner with no choice but to pursue these remedies.

***An injunction, if issued, would not be adverse to the public interest.***

55. The relief Petitioner seeks is authorized under the Hague Convention, an international treaty ratified as between Italy, the United States, and other contracting states. The relief is further consistent with federal and state law implementing the Convention.

56. There can be no public interest objection raised to the relief sought by Petitioner. The only relevant considerations are whether Petitioner satisfies the requirements of the Hague Convention and the requirements under the Federal Rules of Civil Procedure for the issuance of emergency equitable relief. Those requirements are satisfied here.

## CONCLUSION AND RELIEF SOUGHT

57. For the foregoing reasons, Petitioner asks this Court to grant the following relief:

58. An Order directing a prompt return of the child to his habitual residence of Italy;

    a. Set an expedited hearing on the petition and communicate that hearing date and time to petitioner so that petitioner may provide notice of these proceedings and the hearing pursuant to ICARA Section 9003(c).

    b. Issue an immediate order that respondent surrender any and all of his passports and all of the passports of the child.

    c. Issue an order following the hearing, directing that the child shall be returned to her Habitual Residence of Italy, pursuant to Article 12 of the Convention.

    d. Enter an immediate ex parte temporary restraining order prohibiting the removal of the child from the jurisdiction of this Court pending a hearing on the merits of the Verified Complaint, and further providing that no person acting in concert or participating with Respondent shall take any action to remove the child from the jurisdiction of this Court pending a determination on the merits of this case;

    e. Issue an order directing Respondent to pay Petitioner for all costs and fees incurred to date by reason of the child's wrongful removal and retention pursuant to 22 U.S.C. § 9007;

f. any such further relief as justice and its cause may require.

Dated: September 20, 2018
      New York, New York

Robert D. Arenstein
Attorney for Petitioner
295 Madison Avenue, 16th Floor
New York, NY 10017
(212) 679-3999



**HCCH**
HAGUE CONFERENCE ON
PRIVATE INTERNATIONAL LAW
CONFÉRENCE DE LA HAYE
DE DROIT INTERNATIONAL PRIVÉ

### 28. CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION[1]

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

### CHAPTER I – SCOPE OF THE CONVENTION

### Article 1

The objects of the present Convention are –

a)   to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b)   to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

### Article 3

The removal or the retention of a child is to be considered wrongful where –

a)   it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b)   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction* (ISBN 90 12 03616 X, 481 pp.).

## Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

## Article 5

For the purposes of this Convention –
a)   "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b)   "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

### CHAPTER II – CENTRAL AUTHORITIES

## Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.
Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

## Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.
In particular, either directly or through any intermediary, they shall take all appropriate measures –
a)   to discover the whereabouts of a child who has been wrongfully removed or retained;
b)   to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;
c)   to secure the voluntary return of the child or to bring about an amicable resolution of the issues;
d)   to exchange, where desirable, information relating to the social background of the child;
e)   to provide information of a general character as to the law of their State in connection with the application of the Convention;
f)   to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;
g)   where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;
h)   to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;
i)   to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

### CHAPTER III – RETURN OF CHILDREN

## Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.
The application shall contain –

*a)* information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;

*b)* where available, the date of birth of the child;

*c)* the grounds on which the applicant's claim for return of the child is based;

*d)* all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

*e)* an authenticated copy of any relevant decision or agreement;

*f)* a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;

*g)* any other relevant document.

### Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

### Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

### Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

### Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

### Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

*a)* the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

*b)* there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

## Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

### CHAPTER IV – RIGHTS OF ACCESS

## Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.

The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

### CHAPTER V – GENERAL PROVISIONS

## Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

## Article 23

No legalisation or similar formality may be required in the context of this Convention.

## Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.

However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

## Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

a)     any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

b)     any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

## Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.

## Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.

## Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.

## Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.

## Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

### CHAPTER VI — FINAL CLAUSES

## Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.

## Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

## Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.

## Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.

## Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.

## Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –

(1)     for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;

(2)     for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.


## Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


## Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –

(1)     the signatures and ratifications, acceptances and approvals referred to in Article 37;

(2)     the accessions referred to in Article 38;

(3)     the date on which the Convention enters into force in accordance with Article 43;

(4)     the extensions referred to in Article 39;

(5)     the declarations referred to in Articles 38 and 40;

(6)     the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;

(7)     the denunciations referred to in Article 44.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.

**22 USC Ch. 97: INTERNATIONAL CHILD ABDUCTION REMEDIES**

**From Title 22—FOREIGN RELATIONS AND INTERCOURSE**

## CHAPTER 97—INTERNATIONAL CHILD ABDUCTION REMEDIES

Sec.
9001.    Findings and declarations.
9002.    Definitions.
9003.    Judicial remedies.
9004.    Provisional remedies.
9005.    Admissibility of documents.
9006.    United States Central Authority.
9007.    Costs and fees.
9008.    Collection, maintenance, and dissemination of information.
9009.    Office of Children's Issues.
9010.    Interagency coordinating group.
9011.    Authorization of appropriations.

# §9001. Findings and declarations

**(a) Findings**

The Congress makes the following findings:

(1) The international abduction or wrongful retention of children is harmful to their well-being.

(2) Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention.

(3) International abductions and retentions of children are increasing, and only concerted cooperation pursuant to an international agreement can effectively combat this problem.

(4) The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980, establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained, as well as for securing the exercise of visitation rights. Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies. The Convention provides a sound treaty framework to help resolve the problem of international abduction and retention of children and will deter such wrongful removals and retentions.

**(b) Declarations**

The Congress makes the following declarations:

(1) It is the purpose of this chapter to establish procedures for the implementation of the Convention in the United States.

(2) The provisions of this chapter are in addition to and not in lieu of the provisions of the Convention.

(3) In enacting this chapter the Congress recognizes—

(A) the international character of the Convention; and

(B) the need for uniform international interpretation of the Convention.

(4) The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims.

(Pub. L. 100–300, §2, Apr. 29, 1988, 102 Stat. 437.)

## REFERENCES IN TEXT

This chapter, referred to in subsec. (b), was in the original "this Act" meaning Pub. L. 100–300, Apr. 29, 1988, 102 Stat. 437, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note below and Tables.

## CODIFICATION

Section was formerly classified to section 11601 of Title 42, The Public Health and Welfare.

## SHORT TITLE OF 2004 AMENDMENT

Pub. L. 108–370, §1, Oct. 25, 2004, 118 Stat. 1750, provided that: "This Act [amending section 9006 of this title] may be cited as the 'Prevention of Child Abduction Partnership Act'."

## SHORT TITLE

Pub. L. 100–300, §1, Apr. 29, 1988, 102 Stat. 437, provided that: "This Act [enacting this chapter and amending section 663 of Title 42, The Public Health and Welfare] may be cited as the 'International Child Abduction Remedies Act'."

## §9002. Definitions

For the purposes of this chapter—

(1) the term "applicant" means any person who, pursuant to the Convention, files an application with the United States Central Authority or a Central Authority of any other party to the Convention for the return of a child alleged to have been wrongfully removed or retained or for arrangements for organizing or securing the effective exercise of rights of access pursuant to the Convention;

(2) the term "Convention" means the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980;

(3) the term "Parent Locator Service" means the service established by the Secretary of Health and Human Services under section 653 of title 42;

(4) the term "petitioner" means any person who, in accordance with this chapter, files a petition in court seeking relief under the Convention;

(5) the term "person" includes any individual, institution, or other legal entity or body;

(6) the term "respondent" means any person against whose interests a petition is filed in court, in accordance with this chapter, which seeks relief under the Convention;

(7) the term "rights of access" means visitation rights;

(8) the term "State" means any of the several States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and

(9) the term "United States Central Authority" means the agency of the Federal Government designated by the President under section 9006(a) of this title.

(Pub. L. 100–300, §3, Apr. 29, 1988, 102 Stat. 437.)

### REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act" meaning Pub. L. 100–300, Apr. 29, 1988, 102 Stat. 437, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note under section 9001 of this title and Tables.

### CODIFICATION

Section was formerly classified to section 11602 of Title 42, The Public Health and Welfare.

## §9003. Judicial remedies

### (a) Jurisdiction of courts

The courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention.

### (b) Petitions

Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed.

### (c) Notice

Notice of an action brought under subsection (b) shall be given in accordance with the applicable law governing notice in interstate child custody proceedings.

### (d) Determination of case

The court in which an action is brought under subsection (b) shall decide the case in accordance with the Convention.

### (e) Burdens of proof

(1) A petitioner in an action brought under subsection (b) shall establish by a preponderance of the evidence—

(A) in the case of an action for the return of a child, that the child has been wrongfully removed or retained within the meaning of the Convention; and

(B) in the case of an action for arrangements for organizing or securing the effective exercise of rights of access, that the petitioner has such rights.

(2) In the case of an action for the return of a child, a respondent who opposes the return of the child has the burden of establishing—

(A) by clear and convincing evidence that one of the exceptions set forth in article 13b or 20 of the Convention applies; and

(B) by a preponderance of the evidence that any other exception set forth in article 12 or 13 of the Convention applies.

**(f) Application of Convention**

For purposes of any action brought under this chapter—

(1) the term "authorities", as used in article 15 of the Convention to refer to the authorities of the state of the habitual residence of a child, includes courts and appropriate government agencies;

(2) the terms "wrongful removal or retention" and "wrongfully removed or retained", as used in the Convention, include a removal or retention of a child before the entry of a custody order regarding that child; and

(3) the term "commencement of proceedings", as used in article 12 of the Convention, means, with respect to the return of a child located in the United States, the filing of a petition in accordance with subsection (b) of this section.

**(g) Full faith and credit**

Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter.

**(h) Remedies under Convention not exclusive**

The remedies established by the Convention and this chapter shall be in addition to remedies available under other laws or international agreements.

(Pub. L. 100–300, §4, Apr. 29, 1988, 102 Stat. 438.)

### REFERENCES IN TEXT

This chapter, referred to in subsecs. (f) to (h), was in the original "this Act" meaning Pub. L. 100–300, Apr. 29, 1988, 102 Stat. 437, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note under section 9001 of this title and Tables.

### CODIFICATION

Section was formerly classified to section 11603 of Title 42, The Public Health and Welfare.

## §9004. Provisional remedies

**(a) Authority of courts**

In furtherance of the objectives of article 7(b) and other provisions of the Convention, and subject to the provisions of subsection (b) of this section, any court exercising jurisdiction of an action brought under section 9003(b) of this title may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition.

**(b) Limitation on authority**

No court exercising jurisdiction of an action brought under section 9003(b) of this title may, under subsection (a) of this section, order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied.

(Pub. L. 100–300, §5, Apr. 29, 1988, 102 Stat. 439.)

### CODIFICATION

Section was formerly classified to section 11604 of Title 42, The Public Health and Welfare.

## §9005. Admissibility of documents

With respect to any application to the United States Central Authority, or any petition to a court under section 9003 of this title, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court.

(Pub. L. 100–300, §6, Apr. 29, 1988, 102 Stat. 439.)

**CODIFICATION**

Section was formerly classified to section 11605 of Title 42, The Public Health and Welfare.

## §9006. United States Central Authority

**(a) Designation**

The President shall designate a Federal agency to serve as the Central Authority for the United States under the Convention.

**(b) Functions**

The functions of the United States Central Authority are those ascribed to the Central Authority by the Convention and this chapter.

**(c) Regulatory authority**

The United States Central Authority is authorized to issue such regulations as may be necessary to carry out its functions under the Convention and this chapter.

**(d) Obtaining information from Parent Locator Service**

The United States Central Authority may, to the extent authorized by the Social Security Act [42 U.S.C. 301 et seq.], obtain information from the Parent Locator Service.

**(e) Grant authority**

The United States Central Authority is authorized to make grants to, or enter into contracts or agreements with, any individual, corporation, other Federal, State, or local agency, or private entity or organization in the United States for purposes of accomplishing its responsibilities under the Convention and this chapter.

**(f) Limited liability of private entities acting under the direction of the United States Central Authority**

**(1) Limitation on liability**

Except as provided in paragraphs (2) and (3), a private entity or organization that receives a grant from or enters into a contract or agreement with the United States Central Authority under subsection (e) of this section for purposes of assisting the United States Central Authority in carrying out its responsibilities and functions under the Convention and this chapter, including any director, officer, employee, or agent of such entity or organization, shall not be liable in any civil action sounding in tort for damages directly related to the performance of such responsibilities and functions as defined by the regulations issued under subsection (c) of this section that are in effect on October 1, 2004.

**(2) Exception for intentional, reckless, or other misconduct**

The limitation on liability under paragraph (1) shall not apply in any action in which the plaintiff proves that the private entity, organization, officer, employee, or agent described in paragraph (1), as the case may be, engaged in intentional misconduct or acted, or failed to act, with actual malice, with reckless disregard to a substantial risk of causing injury without legal justification, or for a purpose unrelated to the performance of responsibilities or functions under this chapter.

**(3) Exception for ordinary business activities**

The limitation on liability under paragraph (1) shall not apply to any alleged act or omission related to an ordinary business activity, such as an activity involving general administration or operations, the use of motor vehicles, or personnel management.

(Pub. L. 100–300, §7, Apr. 29, 1988, 102 Stat. 439; Pub. L. 105–277, div. G, title XXII, §2213, Oct. 21, 1998, 112 Stat. 2681–812; Pub. L. 108–370, §2, Oct. 25, 2004, 118 Stat. 1750.)

### REFERENCES IN TEXT

This chapter, referred to in subsecs. (b), (c), (e), and (f), was in the original "this Act" meaning Pub. L. 100–300, Apr. 29, 1988, 102 Stat. 437, as amended, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 9001 of this title and Tables.

The Social Security Act, referred to in subsec. (d), is act Aug. 14, 1935, ch. 531, 49 Stat. 620, as amended, which is classified generally to chapter 7 (§301 et seq.) of Title 42, The Public Health and Welfare. For complete classification of this Act to the Code, see section 1305 of Title 42 and Tables.

### CODIFICATION

Section was formerly classified to section 11606 of Title 42, The Public Health and Welfare.

### AMENDMENTS

**2004**—Subsec. (f). Pub.    108–370 added subsec. (f).

**1998**—Subsec. (e). Pub. L. 105–277 added subsec. (e).

## Ex. Ord. No. 12648. Implementation of Convention on Civil Aspects of International Child Abduction

Ex. Ord. No. 12648, Aug. 11, 1988, 53 F.R. 30637, provided:

The United States of America deposited its instrument of ratification of the Hague Convention on the Civil Aspects of International Child Abduction ("Convention") on April 29, 1988. The Convention entered into force for the United States on July 1, 1988. Article 6 of the Convention imposes upon Contracting States an obligation to designate a "Central Authority" for the purpose of discharging certain specified functions.

In order that the Government of the United States of America may give full and complete effect to the Convention, and pursuant to section 7 of the International Child Abduction Remedies Act, Public Law No. 100–300 (1988) [22 U.S.C. 9006], it is expedient and necessary that I designate a Central Authority within the Executive branch of said Government:

NOW, THEREFORE, by virtue of the authority vested in me as President by the Constitution and the laws of the United States, including section 301 of Title 3 of the United States Code and section 7 of the International Child Abduction Remedies Act, it is ordered as follows:

Section 1. *Designation of Central Authority*. The Department of State is hereby designated as the Central Authority of the United States for purposes of the Hague Convention on the Civil Aspects of International Child Abduction. The Secretary of State is hereby authorized and empowered, in accordance with such regulations as he may prescribe, to perform all lawful acts that may be necessary and proper in order to execute the functions of the Central Authority in a timely and efficient manner.

Ronald Reagan.

## §9007. Costs and fees

### (a) Administrative costs

No department, agency, or instrumentality of the Federal Government or of any State or local government may impose on an applicant any fee in relation to the administrative processing of applications submitted under the Convention.

### (b) Costs incurred in civil actions

(1) Petitioners may be required to bear the costs of legal counsel or advisors, court costs incurred in connection with their petitions, and travel costs for the return of the child involved and any accompanying persons, except as provided in paragraphs (2) and (3).

(2) Subject to paragraph (3), legal fees or court costs incurred in connection with an action brought under section 9003 of this title shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs.

(3) Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

(Pub. L. 100–300, §8, Apr. 29, 1988, 102 Stat. 440.)

### Codification

Section was formerly classified to section 11607 of Title 42, The Public Health and Welfare.

## §9008. Collection, maintenance, and dissemination of information

### (a) In general

In performing its functions under the Convention, the United States Central Authority may, under such conditions as the Central Authority prescribes by regulation, but subject to subsection (c), receive from or transmit to any department, agency, or instrumentality of the Federal Government or of any State or foreign government, and receive from or transmit to any applicant, petitioner, or respondent, information necessary to locate a child or for the purpose of otherwise implementing the Convention with respect to a child, except that the United States Central Authority—

(1) may receive such information from a Federal or State department, agency, or instrumentality only pursuant to applicable Federal and State statutes; and

(2) may transmit any information received under this subsection notwithstanding any provision of law other than this chapter.

**(b) Requests for information**

Requests for information under this section shall be submitted in such manner and form as the United States Central Authority may prescribe by regulation and shall be accompanied or supported by such documents as the United States Central Authority may require.

**(c) Responsibility of government entities**

Whenever any department, agency, or instrumentality of the United States or of any State receives a request from the United States Central Authority for information authorized to be provided to such Central Authority under subsection (a), the head of such department, agency, or instrumentality shall promptly cause a search to be made of the files and records maintained by such department, agency, or instrumentality in order to determine whether the information requested is contained in any such files or records. If such search discloses the information requested, the head of such department, agency, or instrumentality shall immediately transmit such information to the United States Central Authority, except that any such information the disclosure of which—

(1) would adversely affect the national security interests of the United States or the law enforcement interests of the United States or of any State; or

(2) would be prohibited by section 9 of title 13;

shall not be transmitted to the Central Authority. The head of such department, agency, or instrumentality shall, immediately upon completion of the requested search, notify the Central Authority of the results of the search, and whether an exception set forth in paragraph (1) or (2) applies. In the event that the United States Central Authority receives information and the appropriate Federal or State department, agency, or instrumentality thereafter notifies the Central Authority that an exception set forth in paragraph (1) or (2) applies to that information, the Central Authority may not disclose that information under subsection (a).

**(d) Information available from Parent Locator Service**

To the extent that information which the United States Central Authority is authorized to obtain under the provisions of subsection (c) can be obtained through the Parent Locator Service, the United States Central Authority shall first seek to obtain such information from the Parent Locator Service, before requesting such information directly under the provisions of subsection (c) of this section.

**(e) Recordkeeping**

The United States Central Authority shall maintain appropriate records concerning its activities and the disposition of cases brought to its attention.

(Pub. L. 100–300, §9, Apr. 29, 1988, 102 Stat. 440.)

### REFERENCES IN TEXT

This chapter, referred to in subsec. (a)(2), was in the original "this Act" meaning Pub. L. 100–300, Apr. 29, 1988, 102 Stat. 437, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note under section 9001 of this title and Tables.

### CODIFICATION

Section was formerly classified to section 11608 of Title 42, The Public Health and Welfare.

## §9009. Office of Children's Issues

**(a) Director requirements**

The Secretary of State shall fill the position of Director of the Office of Children's Issues of the Department of State (in this section referred to as the "Office") with an individual of senior rank who can ensure long-term continuity in the management and policy matters of the Office and has a strong background in consular affairs.

**(b) Case officer staffing**

Effective April 1, 2000, there shall be assigned to the Office of Children's Issues of the Department of State a sufficient number of case officers to ensure that the average caseload for each officer does not exceed 75.

**(c) Embassy contact**

The Secretary of State shall designate in each United States diplomatic mission an employee who shall serve as the point of contact for matters relating to international abductions of children by parents. The Director of the Office shall regularly inform the designated employee of children of United States citizens abducted by parents to that country.

**(d) Reports to parents**

**(1) In general**

Except as provided in paragraph (2), beginning 6 months after November 9, 1999, and at least once every 6 months thereafter, the Secretary of State shall report to each parent who has requested assistance regarding an abducted child overseas. Each such report shall include information on the current status of the abducted child's case and the efforts by the Department of State to resolve the case.

**(2) Exception**

The requirement in paragraph (1) shall not apply in a case of an abducted child if—

(A) the case has been closed and the Secretary of State has reported the reason the case was closed to the parent who requested assistance; or

(B) the parent seeking assistance requests that such reports not be provided.

(Pub. L. 106–113, div. B, §1000(a)(7) [div. A, title II, §201], Nov. 29, 1999, 113 Stat. 1536, 1501A-419).

### CODIFICATION

Section was enacted as part of the Admiral James W. Nance and Meg Donovan Foreign Relations Authorization Act, Fiscal Years 2000 and 2001, and not as part of the International Child Abduction Remedies Act which comprises this chapter.

Section was formerly classified to section 11608a of Title 42, The Public Health and Welfare.

## §9010. Interagency coordinating group

The Secretary of State, the Secretary of Health and Human Services, and the Attorney General shall designate Federal employees and may, from time to time, designate private citizens to serve on an interagency coordinating group to monitor the operation of the Convention and to provide advice on its implementation to the United States Central Authority and other Federal agencies. This group shall meet from time to time at the request of the United States Central Authority. The agency in which the United States Central Authority is located is authorized to reimburse such private citizens for travel and other expenses incurred in participating at meetings of the interagency coordinating group at rates not to exceed those authorized under subchapter I of chapter 57 of title 5 for employees of agencies.

(Pub. L. 100–300, §10, Apr. 29, 1988, 102 Stat. 441.)

### CODIFICATION

Section was formerly classified to section 11609 of Title 42, The Public Health and Welfare.

## §9011. Authorization of appropriations

There are authorized to be appropriated for each fiscal year such sums as may be necessary to carry out the purposes of the Convention and this chapter.

(Pub. L. 100–300, §12, Apr. 29, 1988, 102 Stat. 442.)

### REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act" meaning Pub. L. 100–300, Apr. 29, 1988, 102 Stat. 437, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note under section 9001 of this title and Tables.

### CODIFICATION

Section was formerly classified to section 11610 of Title 42, The Public Health and Welfare.

Comune di
Milano

Area Servizi Al Cittadino

UFFICIO STATO CIVILE

ESTRATTO PER RIASSUNTO DI ATTO DI NASCITA

Anno 2016  Numero 0761  Registro 01  Parte 1  Serie A

Il giorno ████████
alle ore 16:17
nel comune di Milano
e' nato ████████████████  B.A.S.
di    SAADA ISACCO JACKY
e di   GOLAN NARKIS ALIZA

Annotazioni Marginali: nessuna

Rilasciato in conformita' del combinato disposto degli art. 3 e 5 del regolamento 2 maggio 1957 n.432 che attua
la legge 31/10/1955 n. 1064.

13/09/2018

Il presente certificato non puo' essere prodotto
agli organi della pubblica amministrazione o ai
privati gestori di pubblici servizi

Rilasciato in carta libera ai sensi della legge 29.12.90 n.405 art.7
DIRITTI DI SEGRETERIA 0,26

L'UFFICIALE DELLO STATO CIVILE

Pellegrino Celestina

C364652

# CIVIL OFFICE

## SUMMARY OF BIRTH CERTIFICATE

Year 2016 number 0761 Registry 01 Part 1 Series A

Day ▮▮▮▮▮▮▮
Hour: 16.17
In the city of Milan
is born ▮▮▮▮▮▮▮▮▮▮▮▮▮    B.A.S
From SAADA ISACCO JACKY
And GOLAN NARKIS ALIZA

Marginal notes: none

This document is released ex art. 3 and 5 of May 2nd, 1957 Regulation n. 432  in implementation of
Oct. 31th, 1955 n. 1064

Date : 09/13/2018

PUBLIC CIVIL OFFICER

Pellegrino Celestino

This certificate can not be produced
to the organs of the public administration.

Released in ordinary paper ex art. 7 Law 12.29.1990 n.405
Administrative fees 0.26 €



**Comune di Milano**

Protocollo ANPR 16662651

Area Servizi Al Cittadino





**Comune di MILANO**

## Certificato contestuale di Residenza,  Anagrafico di nascita,
## di Stato civile,  di Cittadinanza,
## di Esistenza in vita,  di Stato di famiglia

**L'ufficiale di anagrafe**

A norma dell'art. 33 del D.P.R. 30-5-1989, N.223;
Visti i dati registrati dal comune di MILANO

**Certifica che nell'ANAGRAFE NAZIONALE DELLA POPOLAZIONE RESIDENTE**

Cognome ▮▮▮▮  B.A.S.
Nome ▮▮▮▮▮▮▮

Risulta nato il ▮▮▮▮▮▮▮ in MILANO (MI)
    Atto N.761 parte 1 serie A volume R01 – anno 2016 – Comune di MILANO (MI)
(C.F. SDABDL16H16F205T)

Risulta iscritto all'indirizzo
VIA SODERINI LUIGI N. 35
Comune MILANO (MI)

Risulta di stato libero

Risulta in possesso della cittadinanza ITALIANA

Risulta in data odierna iscritto nell'Anagrafe Nazionale della Popolazione Residente.

Risulta iscritto/a nella famiglia anagrafica così composta:

Cognome SAADA
Nome ISACCO JACKY
    nato il 28/12/1987 in MILANO (MI)
    Atto N.3882 parte 1 serie A volume R04 – anno 1987 – Comune di MILANO (MI)
(C.F. SDASCJ87T28F205C)

Cognome ▮▮▮▮▮ B.A.S.
Nome ▮▮▮▮▮
    nato il ▮▮▮▮▮▮▮ in MILANO (MI)
    Atto N.761 parte 1 serie A volume R01 – anno 2016 – Comune di MILANO (MI)
(C.F. SDABDL16H16F205T)

Data 13/09/2018

L'ufficiale di anagrafe di MILANO
Pellegrino Celestina –

Pag. 1 di 2

 

IL PRESENTE CERTIFICATO NON PUO' ESSERE PRODOTTO AGLI ORGANI DELLA PUBBLICA AMMINISTRAZIONE O AI
PRIVATI GESTORI DI PUBBLICI SERVIZI (art. 40 DPR 28 dicembre 2000, n.445)

Esente da imposta di bollo
Riscossi Euro 0,00 per diritti di segreteria

Annotazioni del Comune di MILANO al quale è stata richiesta l'emissione del certificato
RILASCIATO IN CARTA LIBERA ai sensi dell'art.13 Tab.B e art.82 legge 4/5/83 n.184
esente diritti di segreteria ai sensi art.82 legge 4/5/83 n.184 per uso affidamento minori
C1 C-2018-00364648

## City of MILAN

## CONTESTUAL CERTIFICATE OF RESIDENCE, REGISTRY OF BIRTH, CIVIL STATE, CITIZENSHIP, EXISTENCE IN LIFE, FAMILY STATE.

The Registry officer,

Ex art 33 of Presidential Decree May 30th, 1989 n. 223,
Seen the data registered by the city of Milan,

### CERTIFIES THAT IN THE REGISTRY OF THE RESIDENT POPULATION

Surname: █████
Name: ████████  B.A.S.

He was born on ████████ in Milan (MI)
        act n.761 part 1 series A volume R01- year 2016- City of MILAN (MI)
(fiscal code: SDABDL16H16F205T)

He is registered at the address:
VIA SODERINI LUIGI N. 35
City of MILAN (MI)

He is free

He is Italian citizen

He is at the present day registered in National Registry of the Population Resident.

He is registered in Family Registry in the family composed by

Surname: SAADA
Name: ISACCO JACKY
born on 12/28/1987 in Milano (MI)
        act n. 3882 part 1 series A volume R04- year 1987- City of MILAN (MI)
(fiscal code: SDASCLJ87T28F205C)

Surname: █████
Name: ████████  B.A.S.
He was born on ████████ in Milan (MI)
act n.761 part 1 series A volume R01- year 2016- City of MILAN (MI)
        (fiscal code: SDABDL16H16F205T)

Date 09/13/2018

                                                                The Registry Public Officer

                                                                Pellegrino Celestina

THIS CERTIFICATE CAN NOT BE PRODUCED TO THE ORGANS OF THE PUBLIC ADMINISTRATION EX ART. 40 PRESIDENTIAL DECREE DEC 12TH, 2000 N. 445)

This certificate is exempt from stamp duty
Administrative fees 0.00 €

City of Milan's notes to which the certificate has been requested
RELEASED IN ORDINARY PAPER ex art. 13 Tab.B and art. 82 Law 5/4/1983 n. 184
Extempt from administrative fees ex art. 82 Law 5/4/1983 n. 184 for minor custody use.

C1 C-2018-00364648

FORMULA A

| 1 | REPUBBLICA<br>STATO :<br>ITALIANA<br>ETAT: | | 2 | SERVIZIO DELLO STATO CIVILE DI : MILANO<br>SERVICE DE L'ETAT CIVIL DE |

| 3 | ESTRATTO DELL'ATTO DI NASCITA N°.<br>EXTRAIT DE L'ACT DE NAISSANCE N°.   ATTO N. 0761  R. 01  P. 1 S. A  ANNO 2016 |

| 4 | DATA E LUOGO DI NASCITA<br>DATE ET LIEU DE NAISSANCE | Jo | Mo | An | | Milano == |

| 5 | COGNOME<br>NOM | ▮▮▮▮ |

| 6 | PRENOMI<br>PRENOMS | ▮▮▮▮  B.A.S. |

| 7 | SESSO  Maschile<br>SEXE | | 8 | PADRE<br>PERE | | | 9 | MADRE<br>MERE |

| 8 | COGNOME<br>NOM | | SAADA=== | | GOLAN=== |

| 9 | PRENOMI<br>PRENOMS | | ISACCO JACKY=== | | NARKIS ALIZA=== |

| 10 | ALTRE ENUNCIAZIONI DELL'ATTO  ===<br>AUTRES ENONCIATIONS DE L'ACTE |

| 11 | DATA DI RILASCIO,<br>FIRMA, BOLLO<br>DATE DE DELIVRANCE<br>SIGNATURE, SCEAU | Jo<br>1 3 | Mo<br>0 9 | An<br>2 0 1 8 | L'Ufficiale dello Stato Civile<br>Pellegrini Celestina |

COMUNE DI MILANO

C364635

SIMBOLI / ZEICHEN / SYMBOLS / SIMBOLS / ΣΥΜΒΟΛΑ / SYMBOLES /
SYMBOLEN / SIMBOLS / ISARETLER / SIMBOLI

- Jo: Giorno / Tag / Dav / Dia / Ημέρα / Jour / Dag / Día / Gün / Dan
- Mo: Mese / Monat / Month / Mes / Mηv / Mois / Maand / Mês / Ay / Meseo
- An: Anno / Jahr / Year / Ano / Έτος / Annee / Jaar / Ano / Yil / Godina
- M: Maschile / Männlich / Masculine / Masculino / Αρρεν / Masculin / Mannelijk / Masculine / Erkek / Muski
- F: Femminile / Weiblich / Feminine / Femenino / Θηλυ / Féminin / Vrouwvelijk / Feminino / Kadin / Zenski
- Mar: Matrimonio / Eheschliessung / Marriage / Γαμος / Mariago / Huwelijk / Casamento / Evlenme / Zakljucenje braka
- Sc: Separazione personale / Trennung von Tisch und Bett / Legal separation / Separación personal / Χωρισμος απο τραπεζζω χας χοιτα / Scheiding van tafel en bed / Separação de pessoas e bene / Ayrilik / Fizicka rastava
- Div: Divorzio / Scheidung / Divorce / Divorcio / Διαζυγιου / Divorce / Echtscheiding / Divórcio / Bosanma / Razvod
- A: Annullamento / Nichtigerklarung / Annulment / Anulación / Ακυρωσις / Annulation / Nietig verklaring / Anulaçao / Iptal / Ponistenie
- Mm: Morte del marito / Tod des Ehemanns / Death of the husband / Defunción del marido / Θανατος του συζυγου / Décès du mari / Overlijden van de man / Óbito do marido / Kocanin olumu / Smrt muza
- Mf: Morte della moglie / Tod der Ehefrau / Death of the wife / Defuncion de la mujer / Θανατος της συζυγου / Décès de la femme / Overlijden van de vrouw / Óbito da mulher / Karinin olumu / Smrt zene





TESSERA SANITARIA PROVVISOI   (*)

## SERVIZIO SANITARIO NAZIONALE

**REGIONE LOMBARDIA - 030321 ATS DELLA CITTA' METROPOLITANA DI MILANO**

| | |
|---|---|
| Codice Assistito | 800WV897 |
| Codice Fiscale | SDABDL16H16F704B |
| Cognome e Nome | ▬▬▬▬▬▬ B.A.S. |
| Data di Nascita | ▬▬▬▬▬ |
| Comune di domicilio | MILANO MI |
| Comune di residenza | MILANO MI |
| Data di rilascio | 20.06.2016   Valida sino al |

## SCELTA DEL MEDICO

| | |
|---|---|
| Dott. | G. NIZZOLI |
| Codice | 37956 |
| Decorrenza | 20.06.2016 |

*Timbro e firma operatore*



# PROVVISORY HEALTH INSURANCE CARD

# NATIONAL HEALTH SERVICE

## REGION LOMBARDIA- 030321 ATS OF METROPOLITAN CITY OF MILAN

Beneficiary code:        800WV897

Fiscal code:             SDABDL16H16F205T

Surname and Name:        ████████████████  *B.A.S.*

Date of born:            ████████████

City of address:         MILAN MI

City of current address: MILAN MI

Date of release:         06.20.2016       Valid until

## DOCTOR CHOICE

Doc.        G. NIZZOLI

Code:       37956

Effect from: 06.20.2016

*Stamp and signed*

**16:59**                          4G

<         ∧ ∨

**Da:** "SODERINI VIAGGI" [mailto:soderiniviaggi@tiscalinet.it]
**Inviato:** martedì 31 luglio 2018 16:53
**A:** SODERINI_VIAGGI@INWIND.IT
**Oggetto:** GOLAN/NARKIS ALIZA MRS 14AUG2018 JFK
MXP

```
SODERINI VIAGGI
PRENOTAZIONE: WXEOA3
VIA SODERINI,55
DATA:          31 LUGLIO 2018
MILANO
ITALY
GOLAN/NARKIS ALIZA MRS
TELEFONO:   39.02.48376169
FAX:        02 700521820
E-MAIL:  SODERINIVIAGGI@TISCALINET.IT


VOLO         DL 418 - DELTA AIR
LINES                     MAR 14 AGOSTO
2018
-------------------------------------------
-------------------------------------
PARTENZA:    NEW YORK, NY (JOHN F KENNEDY
INTL), TERMINALE 4 -     14 AGO 17:38
             TERMINAL 4
ARRIVO:      MILAN, IT (MALPENSA), TERMINALE
1 - TERMINAL 1        15 AGO 07:45
             CODICE PRENOTAZIONE: DL/GIVLJX
             PRENOTAZIONE CONFERMATA,
TURISTICA (Q)            DURATA: 08:07
- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - -
             FRANCHIGIA BAGAGLIO:    1PC
             PASTO:                  CENA
             PASTO KOSHER CONFERMATO

NON-STOP     NEW YORK, NY A MILAN
             AEROMOBILE:             AIRBUS
INDUSTRIE A330-300
```

Case 1:18-cv-05292-AMD-SMG   Document 1   Filed 09/20/18   Page 52 of 52 PageID #: 52



**Oggetto: SAADA/BRADLEY AMOS MR 14AUG2018 JFK MXP**

```
SODERINI VIAGGI
PRENOTAZIONE: WXEOA3
VIA SODERINI,55
DATA:          31 LUGLIO 2018
MILANO
ITALY        B.A.S.
▄▄▄▄▄▄▄▄▄▄MR (Bambino)
TELEFONO:    39.02.48376169
FAX:         02 700521820
E-MAIL: SODERINIVIAGGI@TISCALINET.IT


VOLO         DL 418 - DELTA AIR
LINES                    MAR 14 AGOSTO
2018
------------------------------------------
------------------------------------
PARTENZA:    NEW YORK, NY (JOHN F KENNEDY
INTL), TERMINALE 4 -    14 AGO 17:38
             TERMINAL 4
ARRIVO:      MILAN, IT (MALPENSA), TERMINALE
1 - TERMINAL 1     15 AGO 07:45
             CODICE PRENOTAZIONE: DL/GIVLJX
             PRENOTAZIONE CONFERMATA,
TURISTICA (Q)          DURATA: 08:07
- - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - -
             FRANCHIGIA BAGAGLIO:    1PC
             PASTO:                  CENA
             PASTO KOSHER CONFERMATO

NON-STOP     NEW YORK, NY A MILAN
             AEROMOBILE:             AIRBUS
INDUSTRIE A330-300


FLIGHT(S) CALCULATED AVERAGE CO2 EMISSIONS
IS 361.71 KG/PERSON
SOURCE: ICAO CARBON EMISSIONS CALCULATOR
```