PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS   NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

WRITER'S DIRECT DIAL NUMBER
(212) 373-3497

WRITER'S DIRECT FACSIMILE
(212) 492-0497

WRITER'S DIRECT E-MAIL ADDRESS
dlevi@paulweiss.com

UNIT 5201 FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
PO BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

August 1, 2019

**By ECF**

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    *Saada* v. *Golan*, No. 18-CV-05292 (AMD)

Dear Judge Donnelly:

    We write on behalf of Respondent, Ms. Golan, in response to the Court's July 29, 2019 Order, which directed the parties to inform the Court about their efforts with respect to certain ameliorative measures previously ordered by the Court.

    As a threshold matter, although Ms. Golan and her representatives are committed to being cooperative with Mr. Saada's efforts, we respectfully submit that a re-framing of the parties' obligations moving forward is required. Respondent has already established, by clear and convincing evidence, that return of the Child to Italy places him at grave risk of harm. This Court already ruled, among other things, that "Mr. Saada was violent—physically, psychologically, emotionally, and verbally," that he "could not control his anger or take responsibility for his behavior", and that Mr. Saada "has to date not demonstrated a capacity to change his behavior." (Opinion at 32–33.) None of these findings, including the grave risk determination, were contested on appeal.

    It continues to be Respondent's position that undertakings are not appropriate in this case because the number of issues and considerations needed to protect this Child—particularly in light of developing facts relating to his special needs—are too complex, too voluminous, and ultimately not effective or enforceable. In any event, Mr. Saada bears the burden of proving that proposed undertakings would be effective and enforceable, and that they are sufficient to negate grave risk. *See Simcox* v. *Simcox*, 511 F.3d 594, 606 (6th Cir. 2007); *see also Baran* v. *Beaty*, 526 F.3d 1340, 1352 (11th Cir.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Ann M. Donnelly 2

2008); *Danaipour* v. *McLarey*, 286 F.3d 1, 15 (1st Cir. 2002). Mr. Saada failed to meet this burden at trial.

This Court ordered Respondent to propose potential ameliorative measures after trial, which Ms. Golan did under protest. The Court has now ordered that she and her counsel take affirmative steps to make such ameliorative measures enforceable, which we respectfully suggest is not consistent with the law. The fact that Respondent is a victim of systemic domestic violence, suffers from post-traumatic stress disorder, is indigent and supporting a child for whom she has not received any financial support in the last year, does not speak Italian, and has no *pro bono* counsel in Italy,[1] also makes these requests overly and unfairly burdensome.

Consistent with his burden, it should be Mr. Saada who takes the steps necessary to secure the ameliorative measures previously identified. In the event that Mr. Saada fails to do so, this Court should deny the petition. If he is able to do so, the Court can then evaluate whether those measures are sufficient to negate grave risk, particularly in light of developing facts concerning the Child's special needs, which we described in our July 24 letter to the Court and discuss further below.

Subject to and without prejudice to this position, we address each of the ameliorative measures discussed by the Court.

1. **Obtaining an Order of Protection in Italy**

We have discussed the process for obtaining an order of protection with Ms. Golan's Italian counsel, and have also discussed the process with counsel for Mr. Saada.

Counsel for Mr. Saada informed us that, according to Mr. Saada's Italian counsel, the application for an order of protection may be heard on August 14, 2019 if we submit the application by August 7, 2019.

However, Ms. Golan's Italian counsel has advised us that Italian courts have little availability in August, due to the national holiday (*ferragosto*), and that she does not agree with Mr. Saada's counsel. August is generally the month when most Italians take lengthy summer vacations, and therefore any application is unlikely to be heard in August. In that regard, Ms. Golan's Italian counsel is on holiday until August 20, and her office is officially closed from August 10 to August 20. Nonetheless, she has agreed to work on her holiday to the best of her ability to prepare an application in an expeditious manner.

---

[1]  Paul, Weiss is engaged as Ms. Golan's *pro bono* counsel for this U.S. proceeding only. Paul, Weiss does not have offices in Italy, nor any expertise in Italian family law issues. Since the beginning of our retention, we have endeavored to find Ms. Golan *pro bono* counsel in Italy, and spent many hours doing so, but have been unsuccessful.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Ann M. Donnelly      3

        To that end, we have proposed to Mr. Saada's counsel the following conditions that should be included in an order of protection:

(1) Mr. Saada shall stay away from Ms. Golan and the Child, Ms. Golan's home, her place of employment, and the Child's school.[2]

(2) Mr. Saada's parents and siblings shall be subject to the same restrictions.

(3) Mr. Saada, his parents and siblings shall be prohibited from taking any steps to ascertain Ms. Golan's home or business address, or the address of the Child's school, including directing anyone to seek out such information.

(4) Ms. Golan shall be permitted to return to the United States with the Child without restriction, if an Italian court determines that Mr. Saada, or any of his parents or siblings, violated any of the items (1)–(3).

(5) The order shall be in full force and effect for a minimum of six months (unless the custody proceeding is resolved earlier), commencing when Ms. Golan and the Child arrive in Italy. After such six-month period, the order can only be vacated or modified on consent of both Mr. Saada and Ms. Golan, or by the Italian court with jurisdiction over the custody dispute only after a full hearing in which both parties are afforded the opportunity to submit written argument and present live testimony and/or documentary evidence.

        Mr. Saada's counsel has informed us that they will not agree to items (2)–(5). In particular, with respect to item (5), Mr. Saada suggested to us that this Court does not have jurisdiction to require a protective order of such duration, and that if/when Ms. Golan and the Child return to Italy, the Italian court can determine whether any revisions to a protective order are warranted. His position proves our point—any purported protection provided by an Italian-court stay-away order is wholly illusory and does nothing to negate grave risk, when it is obviously Mr. Saada's intent to seek to have it vacated once the parties are beyond this Court's jurisdiction. As such, we are at an impasse and cannot proceed until such time as Mr. Saada is willing to consent to the protective order Ms. Golan believes is necessary to ensure her and her Child's safety.

        In addition, Ms. Golan's Italian counsel has informed us that any application should have appended the Second Circuit's opinion and this Court's July 29 Order, both of which need to be translated into Italian. We have asked Ms. Saada's counsel to arrange for such translations and they have agreed.

---

[2] "Stay away" shall also encompass no communication (mail, telephone, text, email, etc.), including through third-party contact.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Ann M. Donnelly 4

### 2. Dismissal of Prosecution Charges in Italy

Mr. Saada represented that he requested dismissal of the criminal charges pending against Ms. Golan and that the Italian prosecutor recommended that these charges be dropped. The Italian court, however, has not dismissed the charges against Ms. Golan and we have not received any additional update from Mr. Saada.

### 3. Submission of the Full Record of the U.S. Proceedings

As the Court noted, counsel for Mr. Saada represented that they submitted a full record of this Court's proceedings to the Italian court presiding over the custody proceeding.

We noted that the record has not been translated into Italian and requested that the full record be resubmitted in Italian. We have not received any update from Mr. Saada regarding this request and Mr. Saada has not confirmed whether he will have the entire record translated.

It is our understanding from Ms. Golan's Italian counsel that any document that the parties expect the Italian court to consider must be translated into Italian. Thus, while it is possible that there are portions of the record that may not be relevant to the Italian custody proceeding, at this stage, we cannot predict which parts of the record may not be relevant. Certainly large portions of it—such as Ms. Golan's and Mr. Saada's testimony and the exhibits shown during their testimony, the testimony, exhibits and reports of Dr. Brandt and Dr. Yohananoff, and this Court's Opinion—are crucial to the custody proceedings. At this juncture, we believe it is important to have the full record translated into Italian to ensure that the Italian court has all potentially relevant facts. If Mr. Saada has any specific requests to exclude certain parts of the record he believes to be irrelevant, we would consider such requests.

### 4. Obtaining Legal Status and Work Permit in Italy

As explained above, we respectfully submit that it is Mr. Saada's burden to make the necessary arrangements to secure legal status and a work permit for Ms. Golan, including to pay for an attorney to assist and advise Ms. Golan on the process.

As Ms. Golan's *pro bono* counsel, we do not have at our disposal an Italian immigration lawyer who can assist Ms. Golan in this process, and Ms. Golan lacks the financial resources to hire additional counsel.[3] We respectfully submit that we, as Ms.

---

[3] At trial, the expert witnesses who testified in Italy by satellite were Mr. Saada's experts, and they did so at the offices of Mr. Saada's Italian lawyers. Respondent had assistance during those examinations (passing exhibits to those witnesses) from a paralegal employed by another Italian firm that *pro bono* counsel has a relationship with from another (commercial) matter.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Ann M. Donnelly      5

Golan's *pro bono* counsel, also should not be tasked with providing the resources to satisfy a burden that falls squarely on Mr. Saada's shoulders. Mr. Saada has represented to the Court that he would find an Italian attorney and pay all legal fees necessary to obtain advice about legal status and a work permit for Ms. Golan. While we have begun to seek recommendations for appropriate immigration attorneys in Italy, we expect Mr. Saada to assume the related costs if we are able to locate someone.[4]

### 5. Cognitive Behavior Therapy Schedule for Mr. Saada

Based on the record established at trial, we respectfully submit that Mr. Saada's burden should go beyond presenting "a cognitive behavioral therapy schedule," "a plan for demonstrating regular attendance and compliance," and proof that he has attended some treatment. (July 29, 2019 Order at ¶ 5.)

At trial, Mr. Saada's own expert testified that any attempt at mitigating risk to the Child would require "months and months . . . of efforts [by Mr. Saada] with multiple interventional specialists," and that three different types of interventions would "need to occur": (i) parental coaching, in the context of therapeutically-supervised visits; (ii) psycho-educational efforts to improve his understanding of adverse childhood events as they affect the Child's development; and (iii) cognitive behavioral interventions aimed at training Mr. Saada to find more adaptive ways to manage his stress. (Tr. 1236:15–1238:16 (A. Yohananoff)).

We cannot assume that merely beginning therapy and setting a schedule and plan for compliance would result in sufficient change for Mr. Saada. As the Court found, Mr. Saada has not "demonstrated a capacity to change his behavior" and has "minimized" and "excuse[d]" his conduct. (Opinion at 33.) Illustrative of Mr. Saada's utter disdain and lack of commitment and respect for this process, he informed the Court last week that, in the **4 months** since this Court issued its opinion, he has attended **3 therapy sessions**. It is unclear whether any of these sessions fall into one of the required categories of parental coaching[5], psycho-educational efforts or cognitive behavioral interventions, and whether they were even administered by someone qualified in these areas. Quite plainly, once the Child is returned, there is no reason to believe that Mr. Saada will continue any treatment and any order from this Court that he do so would be unenforceable. We therefore respectfully submit that no return should be considered until Mr. Saada has participated in

---

[4] Approximately one hour before submitting this letter, counsel for Mr. Saada provided us with some paperwork concerning forms for obtaining legal status in Italy. As of the submission of this letter, we have not yet reviewed the material and note that some of it is in Italian.

[5] No parental coaching has occurred during any supervised visit in the United States, and obviously there is no supervised visitation currently taking place in Italy.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Ann M. Donnelly 6

these interventions[6] at least twice a week for 2–3 months, and his therapist(s) have submitted documentation to the Court sufficient to prove that he has done so satisfactorily, so that the Court can evaluate his progress.

6. **Medical, Educational, and Therapeutic Services in Italy**

Ms. Golan has limited contacts and resources in Italy readily able to identify medical, educational, and therapeutic services that may be available in Italy. We have, however, reached out to several contacts in Italy and will do our best to collect information on available services and experts to address the Child's needs. Of course, it is necessary to first have a better understanding of the facts surrounding the Child's condition, and what services and interventions the Child requires.

To this end, we are in the process of locating experts in the United States who can properly diagnose the Child and provide guidance on the treatments and interventions that are necessary. We again respectfully submit that the recent findings relating to the Child explained in our July 24, 2019 letter, including the behavioral issues observed at school and the results of a psychological evaluation noting a number of developmental issues and speech delays, raise new, important questions about the risk that the Child would face upon return to Italy.

Given that the Child may have significant special needs and face additional (and greater) risk than previously established, we believe that it is crucial to develop a thorough record on the special needs of the Child in the United States prior to return, including expert testimony on the Child's medical conditions and recommended treatments. We are proceeding with this exercise as expeditiously as possible.

7. **Financial Support Necessary to Facilitate Return**

We respectfully submit that it is premature at this stage to propose a dollar amount that would facilitate the return of Ms. Golan and the Child. As we noted, we are in the process of locating experts and determining the special needs of the Child, including what services and arrangements for the Child may be required. Moreover, Mr. Saada has not provided a scintilla of evidence as to why the $30,000 he proposed (and the Court ordered) is sufficient.

We submit that $30,000, would be insufficient because, at minimum, the financial support provided by Mr. Saada would need to include: (1) relocation expenses for Ms. Golan and the Child; (2) living expenses for Ms. Golan and the Child for at least one year, including expenses for safe housing, food, child support, school/day care and transportation; (3) legal expenses; (4) expenses for medical, education, and therapeutic

---

[6] We recognize that Mr. Saada cannot complete "parental coaching, in the context of therapeutically-supervised visits" while there is no ongoing supervised visitation in Italy, but submit that other therapy can be prescribed with similar goals.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Ann M. Donnelly     7

services for the Child, to be determined by relevant experts; and (5) expenses for medical and therapeutic services for Ms. Golan.

       ##        ##        ##        ##        ##        ##

       We are available at the Court's convenience to discuss these issues further. In the meantime, we will continue to work expeditiously and to cooperate with counsel for Mr. Saada.

       Respectfully submitted,

       *[signature]*

       Daniel H. Levi

cc:     All counsel of record, via ECF