**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____
                                      )
                                      )
JACKY ISACCO SAADA                    )
                                      )
          Petitioner,                 )
                                      )
vs.                                   )     No.   18-CV-05292
                                      )
NARKIS GOLAN                          )
                                      )
          Respondent.                 )
_____)

## MEMORANDUM IN SUPPORT OF PETITONER'S MOTION

Michael Banuchis, an attorney duly admitted to practice before this Court, respectfully submits this this memorandum in support of the relief sought in the instant motion.

### RELEVANT BACKGROUND

On August 31, 2022, after remand from the Supreme Court, this court issued a Memorandum Decision and Order (*Saada v. Golan*, 2022 WL 4115032 (E.D.N.Y. Aug. 31, 2022) (Saada *VII*)) granting Mr. Saada's Petition for the return of the parties' son ("B.A.S." or the "Child") to Italy pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"). On September 8, 2022, Ms. Narkis Golan ("Ms. N. Golan") filed a notice of appeal.

On October 18, 2022, Ms. N. Golan died during the pendency of her appeal. On October 20, 2022, despite custody jurisdiction belonging to Italy, Ms. N. Golan's sister Morin Golan ("Ms. M. Golan" or the "Aunt") filed both family offense and custody petitions in Brooklyn Family Court. She received an *ex-parte* order granting her temporary custody of B.A.S. and directing this Court to turn over B.A.S.'s passport to her. The Aunt also received an *ex-parte* temporary order of protection for herself, and B.A.S. against Mr. Saada based on this Court's findings of fact without making any allegations that Mr. Saada ever committed a family offense

1

against her and despite the fact that that Mr. Saada has had no contact with her post abduction. Copies of these orders are annexed hereto collectively as **Exhibit A**.

On October 27, 2022 this Second Circuit issued an order stating:

> In these circumstances, the court hereby ORDERS that, on or before November 4, 2022, counsel for the parties file any motions concerning the proper disposition of this appeal in light of Ms. Golans death. Whether or not counsel for the parties file any motions, the court ORDERS that, on or before November 4, 2022, they show cause in writing why this appeal should not be dismissed as moot and explain whether the stay of the District Courts removal order may be lifted and whether the Judgment of the District Court may become final. Further, because this case concerns the removal of a minor child who had been in the physical custody of his now-deceased mother, the court ORDERS that, on or before November 4, 2022, counsel for the parties advise the court as to the identity and location of such person or persons currently having physical custody of B.A.S. If anyone other than the childs father, Mr. Saada, presently has physical custody of B.A.S., the court ORDERS that Ms. Golans counsel, as an officer of the court, is requested to provide such person or persons with a copy of the District Courts removal order and with this order, to confirm that she has done so in counsels November 4, 2022 filings, and to state therein counsels understanding of whether such person or persons intend to intervene in this appeal or otherwise to take action regarding the proceedings in the District Court.

Dkt. No 134.

On November 4, 2022, Mr. Saada filed a response to the Second Circuit's order to show and moved for various forms of relief, including affirming and modifying the *Saada VII* return order by eliminating the $150,000 payment as no longer necessary, replacing Ms. M. Golan or any other necessary member of the Golan family as respondents and vacating the Family Court orders.

On November 10, 2022, the Second Circuit dismissed the appeal as moot and remanded the case to this Court. The Second Circuit denied Mr. Saada's motion "without prejudice to his seeking similar relief at the District Court." It directed this Court to "entertain any motions for intervention or substitution of parties" and stated that it had "confidence that [this Court] will

2

expeditiously address the Hague Convention petition in light of the changed circumstances." Dkt. 152.

On November 15, 2022, there was a Family Court appearance and, despite being advised that the Family Court had no ability to issue custody orders, it renewed the order of protection and issued an order directing that B.A.S. remain in the Aunt's care and that she be granted medical and educational decision making authority. Copies of these Family Court orders are attached hereto collectively as **Exhibit B**. As detailed below and as this Court is well aware, the New York Family Court does not have the ability to issue custody orders during the pendency of this case.

On November 16, 2022, Ms. M. Golan filed a motion to intervene prior to the Mandate being issued by the Second Circuit. [ECF No. 172]. On November 30, 2022, B.A.S.'s Family Court appointed lawyer from the Children's Law Center ("CLC") filed a motion to intervene which Mr. Saada opposes. [ECF No. 174]. Mr. Saada further opposes any procedural mechanism which would require a new petition and new case to be brought against Ms. M. Golan.

Both the Aunt and CLC have made it clear that they wish for this case to be delayed in order for extensive fact finding and for this Court to conduct what amounts to a child custody best interest analysis. Ms. M. Golan's position is that Mr. Saada must procedurally file a new petition against her, which would enable her to interpose a new response alleging that B.A.S.'s autism would pose a grave risk of harm should be returned to Italy and entitle her to a new hearing on that issue, with additional experts and discovery. This argument has already been offered by Ms. N. Golan multiple times and rejected by this Court and should not be used yet again to cause delay.

3

Since Ms. N. Golan's death, the Aunt has gone to the media and set up a GoFundMe[1] to raise money. Despite the great pains this Court took to conceal B.A.S.'s identity,[2] articles have been released with his name and photo. Details of the case and B.A.S.'s picture have also been posted to social media. Ms. M. Golan stated in an article published by NBC news that "'we will be fighting tooth and nail' for custody of [B.A.S.]."[3] It is clear that Ms. M. Golan will take every opportunity to prevent an Italian court from deciding B.A.S.'s best interests. These clear actions of forum shopping and wrongful child abduction must be ended as promptly as possible without providing more room for frivolous litigation. As the Court can see from her Court filing at ECF No. 177, she is citing as evidence snippets of recorded phone conversations between Mr. Saada and Ms. N. Golan uploaded publicly to YouTube.

B.A.S. continues to be wrongfully retained in New York by Ms. Golan's family and will continue to be unless this Court intervenes, uphold the principals of the Hague Convention, and order the immediate return of B.A.S. back to Italy.

Ms. N. Golan's death has simplified rather than complicated this case. The only source of grave risk identified to B.A.S. was witnessing domestic violence between the parties. That is no longer a possibility. The Supreme Court advised the lower courts to use the record before it to expeditiously resolve this case. *Golan v. Saada*, 142 S. Ct. 1880, 1896 (2022). The Second Circuit directed this Court to expeditiously resolve the petition before it on remand. [ECF No. 170.] There can be no grave risk finding on the record before this Court, which includes evidence of B.A.S.'s autism. The most expeditious way to resolve this case is replace Narkis Golan with Morin Golan and order B.A.S. to be returned home.

---

[1]  https://www.gofundme.com/f/keep-b-safe
[2]  *Saada I*, 2019 WL 1317868, at *1, n.2.
[3]  https://www.nbcnews.com/news/crime-courts/supporters-vow-continue-fight-deceased-domestic-violence-victim-whose-rcna5396.

4

Any argument that Mr. Saada is incapable of caring for B.A.S. or poses a danger to him is meritless. Ms. Narkis Golan left B.A.S. alone with Mr. Saada regularly. *Saada I*, WL 1317868, at *4 (E.D.N.Y. Mar. 22, 2019) ("…Ms. Golan frequently left B.A.S. with Mr. Saada while she ran errands, or went out with friends."). The issue of Mr. Saada posing a direct danger to B.A.S. has never been an issue in this case. This Court made a distinct point of stating that B.A.S was never a target of abuse (i*d*.) and that ". . . there was no evidence that [Mr. Saada] was violent to B.A.S." *Saada III*, 2020 WL 2128867 at *2, n. 4. The Court also stated that "[t]here is no evidence in the record that the petitioner was abusive to B.A.S. or that B.A.S. would be unsafe with the petitioner. In fact, the respondent frequently left B.A.S. with the petitioner when she lived in Italy." *Saada III* at *2, n. 4. Ms. M. Golan should not be afforded a hearing on this issue.

Ms. M. Golan in her letter of December 7, 2022 [ECF No. 177], brings up several arguments that are either suited for a custody hearing or have already been resolved. First, Narkis Golan brought up B.A.S.'s latest autism diagnosis in her brief submitted on July 25, 2022 after the Supreme Court remand [ECF No. 154]: "A psychological evaluation within the past year found, inter alia, difficulty relating to others, low levels of adaptability, unpredictability, and poor responses to new things; his poor fluid reasoning (i.e., the capacity to problem-solve) and functional skills (i.e., the ability to care for oneself in daily life) are ranked with the lowest 1% of his peers – the lowest possible score." This Court did not grant Ms. Narkis Golan a new hearing on this evidence, and therefore Ms. Morin Golan should also not be afforded an opportunity to have a hearing on this issue. Ms. Morin Golan makes the *exact same* argument here as Ms. N. Golan which the Court already rejected and should be foreclosed from reopening that door. This Court had ordered B.A.S. back two times when presented this argument which belongs in the Italian court.

5

Mr. Saada has already made an application to the Italian court to vacate the order of protection or have B.A.S. placed with his family if it is unwilling to give him physical custody of the Child for some reason. The argument that B.A.S. is destined for a group home if returned to Italy is based on speculation. Further, Ms. M. Golan has not appeared in the Italian custody case so, if anything, is trying to manufacture this outcome (which still has no chance of materializing) by avoiding the Italian court rather than asking it to place B.A.S. with her.

Finally, and as will be described in further detail below, Mr. Saada does have a relationship with B.A.S. and the notion that B.A.S. does not know his father is wrong, notwithstanding its irrelevancy to this proceeding. Mr. Saada has had calls with B.A.S. regularly, with eleven calls taking place from April to July 2022 as charted below.

The transparent goal is to delay as long as possible. The ongoing abduction of B.A.S. must come to an end and he must be returned to Italy so that a best interest analysis can take place in the appropriate forum rather than permitting Ms. Golan to engage in a prolonged proxy custody battle in the federal court.

## ARGUMENT

### I. Morin Golan Should Replace Narkis Golan

Ms. M. Golan has assumed Ms. N. Golan's role and is continuing the unlawful abduction of B.A.S. in New York. She seeks a new trial offering the same defenses that Ms. Narkis Golan did after the Supreme Court remand, which is that B.A.S. will be at grave risk of harm if returned to Italy due to his autism. Mr. Saada opposes her motion to intervene to the extent that it would require him to file a new petition against her rather than simply adding her as a respondent and continuing this proceeding.

Hague cases also frequently involve multiple respondents when more than one individual is involved in a wrongful removal or retention of a child. In *Neves v. Neves*, 637 F. Supp. 2d 322, 335-356 (W.D.N.C. 2009), for example, a petitioning mother brought a Hague

proceeding against a father as well as two additional respondents, Barthi Patel and Mahesh Patel. The district court found that "that the Patels actively and knowingly assisted Respondent Neves in the wrongful removal and retention of the children, in violation of the Petitioner's rights of custody." *See also Cunningham v. Cunningham*, 237 F. Supp. 3d 1246, 1252 (M.D. Fla.), aff'd, 697 F. App'x 635 (11th Cir. 2017) (father and paternal grandmother named respondents); *Guerrero v. Oliveros*, 119 F. Supp. 3d 894, 898 (N.D. Ill. 2015) (same); *Rishmawy v. Vergara*, 2021 WL 1760303 (S.D. Ga. May 4, 2021) (father and his girlfriend named respondents); *Acosta v. Acosta*, 2012 WL 2178982, at *1 (D. Minn. June 14, 2012), aff'd, appeal dismissed, 725 F.3d 868 (8th Cir. 2013) (mother and maternal grandparents named respondents). Ms. Morin Golan should be treated as an additional respondent and replace Ms. Narkis Golan in this proceeding.

 Pursuant to Federal Rule of Civil Procedure 25 (a)(1):

> Substitution if the Claim Is Not Extinguished. If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

 Mr. Saada's claim is not extinguished. His son is still being wrongfully retained in New York by Ms. M. Golan, and she has assumed Ms. N. Golan's role as abductor and is the proper party for substitution.

 The rules regarding substituting defendants in federal cases are admittedly not tailored for Hague Convention cases, but the general concept that a party with stake in the outcome of the case should be substituted in when a defendant dies is applicable. The fact that Ms. M. Golan may not be Ms. N. Golan's legal representative does not prohibit her from being substituted into this proceeding.

A broad range of individuals may be proper parties for substitution, and Ms. M. Golan is certainly an appropriate individual to replace Ms. N. Golan given the circumstances. *See Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 716 (S.D.N.Y. 1993) ("Although [the individual] has not been formally appointed as the representative of the Estate, several courts interpreting Fed. R. Civ. P. 25(a) have held that such formality is not required in certain situations." (*citing Gronowicz v. Leonard*, 109 F.R.D. 624, 626 (S.D.N.Y. 1986); *McSurely v. McClellan*, 753 F.2d 88, 97 (D.C. Cir. 1985)); *see also Sinito v. U.S. Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999) ("[T]he word 'successor' ... means that a proper party need not necessarily be the appointed executor or administrator of the deceased party's estate." (*citing Rende v Kay*, 415 F.2d 983, 986 (D.C. Cir. 1969)); *McSurely v. McClellan*, 753 F.2d 88 (D.C. Cir. 1985) (Widows of deceased defendants were "proper parties" within meaning of rule providing that if a party dies and claim is not thereby extinguished, court may order substitution of proper parties, notwithstanding that neither widow was ever designated "legal representative" of her husband's estate).

To the extent that Ms. M. Golan may argue that Mr. Saada has to file a new petition, permitting her to interpose a new response and warranting a new hearing, that would have no purpose but to cause further delay. The Supreme Court, noting that this case has already taken "years longer than it should have," urged an expeditious resolution. *Golan*, 142 S. Ct. at 1895-6. The Second Circuit remanded the case "with confidence that it will expeditiously address the Hague Convention petition in light of the changed circumstances." ECF No. 170.

The Second Circuit had an opportunity to dismiss the petition after learning of Ms. Golan's death, which would have required Mr. Saada to file a new petition, but it did not do so. Further, its order referenced addressing "*the* Hague petition" (emphasis added) and directed this Court to entertain any motion for substitution of parties. The Second Circuit clearly did not contemplate an entirely new proceeding from pleadings to a hearing occurring on remand.

8

A Hague case can rightfully be maintained against any parties engaged in or abetting a child abduction, and the fact that Ms. M. Golan immediately turned to the Family Court to obtain an invalid custody order is irrelevant to these proceedings except to show she is continuing the wrongful conduct. The law is clear – custody litigation belongs in Italy. Ms. M. Golan is engaging in jurisdictional gerrymandering because she would prefer to litigate custody in New York rather than in Italy where it belongs. The longer she can drag things out in this Court, the longer it will take for Italy to make a best interest analysis which will inevitably consider how long B.A.S. has been in New York. Every additional day of delay works to her advantage.

In the cases involving multiple respondents cited above, the death of one respondent would have no procedural impact so long as the decedent's co-conspirators continued the wrongful retention. Likewise, in the instant case the continued wrongful retention by Ms. M. Golan, should not prevent the case from proceeding onward to resolution and cause yet more delay by holding a new trial.

### II. Morin Golan Can Alternatively Be Added as Respondent

Alternatively, Mr. Saada requests leave to amend the Petition to add Morin Golan as respondent. According to FRCP Rule 15(a)(2), a party may amend its pleading after responsive pleadings have been filed "only with the opposing party's written consent or the court's leave," and the "court should freely give leave when justice so requires." A decision to grant or deny a motion to amend is within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, unless there is undue delay, bad faith, prejudice to the opposing party, or futility of amendment, "the leave sought should, as the rules require, be 'freely given.'" *Id*.

FRCP Rule 15(d) states:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction,

occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

"Absent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, [a motion to file a supplemental pleading under Rule 15(d)] should be freely granted." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir.1995). Further, permission to file supplemental pleadings under Rule 15(d) may be granted "when the supplemental facts connect it to the original pleading." *Id.*; *see also Corum v. Beth Israel Medical Center*, 359 F.Supp. 909, 914 (S.D.N.Y.1973) (noting that supplementing pleadings with transactions and occurrences since the date of the original proceedings complied with Rule 15(d) and may support policy considerations such as judicial economy).

Given the instant circumstances, if the Court was disinclined to replace Ms. N. Golan with Ms. M. Golan, it could alternatively add Ms. M. Golan as respondent. The supplemental facts of. Ms. N. Golan's death and Ms. M. Golan's subsequent continuation of B.A.S.'s abduction certainly connect to the original pleading, which sought to redress the harm of B.A.S.'s wrongful removal from Italy.

    III.    Regardless of the Procedural Mechanism to Add Ms. Morin Golan
<br>            <u>No Hearing Is Required to Resolve a Hague Convention Case</u>

Notwithstanding the U.S. Supreme Court's and Second Circuit's directives that this case be resolved expeditiously, courts faced with disputes under the Hague Convention are required to "use the most expeditious procedures available" to return the child to their habitual residence. Convention, arts. 2 and 11; *see also Monasky v. Taglieri*, 140 S. Ct. 719, 724 (2020) (citing Hague Convention, arts. 2, 11); *Holder v. Holder*, 305 F.3d 854, 871 (9th Cir. 2002) (noting that order and efficiency concerns in resolving actions under the Hague Convention should be subordinated to the Convention's requirement in Articles 2 and 11 that courts expeditiously resolve claims). To that end, numerous courts throughout the country have

10

determined that full hearings are not required for the timely resolution of Hague Convention cases and adjudication without a hearing still satisfies the parties' respective due process rights. *West v. Dobrev*, 735 F.3d 921, 932 (10th Cir. 2013) ("[A] meaningful opportunity to be heard . . . is all due process requires in the context of a Hague Convention petition."); *March v. Levine*, 249 F.3d 462 (6th Cir. 2001). As explained by the District Court in *March*:

> There is no requirement under the Hague Convention or under the ICARA that discovery be allowed or that an evidentiary hearing be conducted. Thus, under the guidance of the Convention and the statutory scheme, the Court is given authority to resolve these cases without resorting to a full trial on the merits or a plenary evidentiary hearing.

*Id*. at 833-34 (M.D. Tenn. 2000) (citations omitted), aff'd, 249 F.3d 462 (6th Cir. 2001); see also *Lukic v. Elezovic*, 2021 WL 466029 (E.D.N.Y. Feb. 9, 2021) (granting Hague Convention petition without hearing); *Matute-Castro v. Jiminez-Ortiz*, 15-CV-04568(DLl)(JO), 2016 WL 8711076, at *5 (E.D.N.Y. Aug. 26, 2016) (same); *In re Skrodzki*, 642 F. Supp. 2d 108 (E.D.N.Y. 2007) (same).

This Court is under no obligation to hold a hearing in this case regardless of how Ms. Morin Golan procedurally joins in. This Court has already stated that "[t]he record in this case is voluminous, and includes the record from a nine-day trial, multiple decisions from this Court and the Second Circuit, as well as the Supreme Court's decision." *Saada VII*, 2022 WL 4115032, at *1 (E.D.N.Y. Aug. 31, 2022). It has all of the information it needs necessary to issue a ruling on the narrow, jurisdictional question at issue in this case and has already indicated that it did not foresee an extended hearing. The evidence Ms. Morin Golan wishes to enter into the record rightfully belongs in Italy and in Italy alone. To that point, if Ms. Morin Golan were to lose this case and go forward with a custody case in Italy, she would undoubtedly present essentially the same exact evidence to try to prove it would be in B.A.S.'s best interests to relocate to New York.

IV. <u>The Family Court Orders Should Be Vacated</u>

Ms. M. Golan's improperly obtained custody order is in direct violation of the Hague Convention, a U.S. Treaty which "does not allow the state to which a child has been wrongfully taken actually to decide who should have custody." *In re Application of Adan*, 437 F.3d 381, 391 (3d Cir. 2006). In addition, the Seventh Circuit's opinion in *Walker v. Walker* 701 F.3d 1110, 1116 (7th Cir.2012) is instructive in showing the relationship between these types of improperly obtained orders and Hague Convention cases:

> Accepting [the Respondent's] position that an abducting parent may render a petition for return moot by racing to a courthouse in her chosen country to obtain a custody judgment would turn the Convention on its head. The entire purpose of the Convention is to deter parents from absconding with their children and crossing international borders in the hopes of obtaining a favorable custody determination in a friendlier jurisdiction. To consider this case moot would encourage the very sort of jurisdictional gerrymandering the Convention was designed to prevent. (citation omitted).

In *Tann v. Bennett*, 807 F.3d 51, 53 (2d Cir. 2015), the father abducted the child from Northern Ireland to New York. The district court, after finding that Northern Ireland was the habitual residence, denied the petition due to the child's preference to remain in New York. During the mother's appeal, the father obtained a New York Family Court custody order and claimed that the appeal was moot. In response, this Court stated that the case was still live and that the father's "favorable custody determination in a potentially friendlier New York court could encourage the jurisdictional gerrymandering that the Hague Convention was designed to prevent."

This Court is empowered to vacate the Family Court order obtained by Ms. M. Golan. A similar situation arose in *Mozes v. Mozes*, 239 F.3d 1067, 1085 n.55 (9th Cir. 2001). There, while the case was on appeal to the Ninth Circuit, the Los Angeles Superior Court issued a custody order. The Ninth Circuit noted that Article 16 of the Convention prohibits state courts from adjudicating custody until it has been determined whether a child must not be returned under the Convention.

12

In dealing with the improperly issued order, the Ninth Circuit stated that it "presume[d] that the Superior Court, or the district court on remand, will take appropriate steps to ensure its compliance with the Convention." *Id*. The Ninth Circuit went on to note that:

> ***[T]he district court <u>would not be</u> barred by the Rooker-Feldman doctrine from vacating the Superior Court's custodial decree or its order enjoining removal of the children from California***. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (holding federal statutory jurisdiction over direct appeals from state courts beyond the original jurisdiction of federal district courts); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (holding that claims "inextricably intertwined" with those a state court has already decided beyond the jurisdiction of lower federal courts). Because the doctrine is one of congressional intent, not constitutional mandate, it follows that where Congress has specifically granted jurisdiction to the federal courts, the doctrine does not apply. *See, e.g., In re Gruntz*, 202 F.3d 1074, 1078-79 (9th Cir. 2000) (en banc) (noting that through statutory writ of habeas corpus and bankruptcy statutes Congress permits federal collateral review of state court and criminal bankruptcy judgments). In this case, Congress has expressly granted the federal courts jurisdiction to vindicate rights arising under the Convention. *See* [22 U.S.C. § 9003(a)]. ***Thus, federal courts must <u>have the power to vacate</u> state custody determinations and other state court orders that contravene the treaty.***

*Id*. (emphasis added).

Likewise, when faced with a similar situation the Eighth Circuit in *Silverman v. Silverman*, 338 F.3d 886, 895-96 (8th Cir. 2003), noted that the state court custody order obtained by the mother during the pendency of a Hague Convention proceeding was of "dubious validity" because Article 16 of the Hague Convention "specifically precluded Minnesota from determining custody issues involving the children." The Eighth Circuit held that "[the respondent's] argument that a state court custody decision can somehow trump clearly granted federal court jurisdiction to decide and review issues of congressionally adopted policy and procedure is simply untenable," and that the "Rooker-Feldman doctrine has no application under the circumstances of this case." *Id.* at 895.

This Court can and should vacate any Family Court orders obtained by Ms. M. Golan, which are inextricably intertwined with this case and interfere with B.A.S.'s return to Italy.

13

Further, any New York custody order impeding B.A.S.'s return to Italy interferes with *Saada VII* and is in direct violation of the Supremacy Clause of the U.S. Constitution. U.S.C.A. Const. Art. 6, cl. 2.

This case must conclude and B.A.S. should be returned home after three return orders and nearly four years of litigation. Ms. M. Golan should not be permitted to utilize the U.S. state courts to circumvent this Court, the Italian court, and the Hague Convention to obtain custody of B.A.S. without a best interest hearing first taking place in Italy.

V. Mr. Saada Should Have B.A.S. During these Proceedings

Mr. Saada is B.A.S.'s father and only surviving parent. He has been fighting for years to have his son returned home. This Court has found that he does not pose a risk to B.A.S. Ms. M. Golan, by virtue of her taking B.A.S., should not have superior rights to B.A.S. during the pendency of this proceeding.[4] Mr. Saada wants to be there for his son in this turbulent time in his young life to provide him comfort and care. Mr. Saada loves his son very much and is devastated by the turn of events in this case. He is also bewildered that Ms. Morin Golan could step in seemingly out of nowhere and simply take his son from him utilizing the state court.

Ms. M. Golan's contention that Mr. Saada has had no contact with B.A.S. for two years is incorrect. Ms. N. Golan testified that she wanted Mr. Saada to have a relationship with B.A.S. (*Saada I*, WL 1317868, at *4) and acted accordingly. Mr. Saada had phone calls with B.A.S. on the following dates:[5]

| Date | Duration |
|---|---|
| April 10, 2022 | 1 hr. 32 min. |

---

[4] Ms. M. Golan is represented pro bono by Skadden Arps in this court and Cahill Gordon in Family Court. She has no financial incentive to resolve this case and will litigate indefinitely to keep B.A.S. in her custody.

[5] Mr. Saada does not have records of his calls with B.A.S. before April 2022 due to getting a new phone. Records of these calls are on Mr. Saada's WhatsApp.

14

| | |
|---|---|
| April 18, 2022 | 21 min. |
| April 18, 2022 | 38 min. |
| May 5, 022 | 1 hr. 3 min. |
| May 14, 2022 | 9 min. |
| June 9, 2022 | 4 min. |
| June 9, 2022 | 8 min. |
| June 11, 2022 | 5 min. |
| June 16, 2022 | 30 min. |
| July 7, 2022 | 6 min. |
| July 6, 2022 | 10 min. |

The issue of Mr. Saada's contact with B.A.S. post-abduction (which was impacted by the pandemic) is relevant only to the issue of custody however it is important to demonstrate that Ms. Morin Golan is either intentionally misleading the Court or is simply unaware of B.A.S.'s contact with Mr. Saada. If she is unaware of this contact, she should not be making false representations to this Court to gain advantage in this litigation. Given her tactics thus far, it is exceedingly important for the Court to step in and prevent Ms. M. Golan from further damaging B.A.S.'s relationship with his father or providing an opportunity to unduly influence him while in a fragile emotional state. Additionally, she argues that the alleged lack of a relationship between B.A.S. and Mr. Saada is a grave risk factor. This alleged issue is easily rectified, however, by permitting Mr. Saada to have access to his son. Ms. M. Golan should not cut off Mr. Saada's access to B.A.S. (she asked for and obtained an order of protection so restrictive that Mr. Saada cannot even call B.A.S) and simultaneously argue that their lack of contact is a source of grave risk.

15

Courts have exercised their discretion in ordering access during Hague Convention cases. *Charalambous v. Charalambous,* 751 F. Supp. 2d 255, 259 (D. Me. 2010) (ordering visitation at specific dates and times); *Khan v. Fatima*, 680 F.3d 781 (7th Cir. 2012) (supervised visits granted). Court all around the country have ordered temporary visitation and access during Hague Convention matters, including in this Circuit. *See*, *e.g.*, *Souratgar v. Lee*, 720 F.3d 96 (2d Cir. 2013); *Villegas Duran v, Arribada Beaumont*, 534 F.3d 142 (2d Cir. 2008), *vacated on other grounds in Duran v. Beaumont*, 560 U.S. 921 (2010).

Such relief is generally recognized under 22 U.S.C. §9004(a), which provides that a court may take appropriate measures "to protect the well-being of the child involved… before the final disposition of the petition" and 22 U.S.C. §9003(b), which further provides for the "organizing or securing the effective exercise of rights of access… ."

The Goldman Act further encourages the ability of courts to order interim visitation. Public Law No. 113-150 [HR 3212], Sean and David Goldman International Child Abduction Prevention and Return Act of 2014, 22 U.S.C. §§ 9101–9141.  One of the purposes of the Act is to "assist left-behind parents in … maintaining safe and predictable contact with their child while an abduction case is pending." *Id*. at §2(c)(2). The legislation further defines the phrase "interim contact" to mean "the ability of a left-behind parent to communicate with or visit an abducted child during the pendency of an abduction case." *Id*. at §3(14).

There is legal precedent in this Circuit to transferring B.A.S. to Mr. Saada as well. In *Diorinou v. Mezitis*, 237 F.3d 133, 138 (2d Cir. 2001), the New York State Supreme Court ordered that the abducting mother have custody of the child. The father prevailed in his Hague petition. During appeal, the Second Circuit "directed that, pending appeal, [respondent mother] transfer care and temporary custody of the children to [petitioning father] in New York."

Ms. Morin Golan should not obtain de facto custody of B.A.S. during the remainder of these proceedings by virtue to taking him. She has had no contact with Mr. Saada since the

16

abduction and cannot have superior right to his child without the proper showing in a custody proceeding. This Court is well aware that Mr. Saada poses no threat to B.A.S. and after over a hundred hours of supervised visits, not a single complaint had been raised about his ability to care for his son or provide him a safe environment. Mr. Saada is ready to leave his home and job to move to New York and take over as caretaker for his son for the (what should be few) weeks or months until this proceeding is resolved. He is fully capable of bringing him to school and for all his appointments.  He will take B.A.S. to school and to all of his appointments for psychological treatment and autism. That will greatly aid any issues with transitioning B.A.S. back to Italy if the Court were to order his return home.

In Italy, Ms. N. Golan's counsel has taken the position that she cannot confirm her death and has sought to delay proceedings in Italy[6] in a transparent attempt to prevent the Italian court from taking any action to modify or vacate the order of protection. This Court does, however, have the power to ensure that this gamesmanship does not result in yet more time lost between Mr. Saada and B.A.S.

## CONCLUSION

Petitioner Jacky Saada respectfully submits this motion and its memorandum in support and asks this Court to enter an order consistent with the Federal Rules of Civil Procedure, the Hague Convention, and the applicable case law as outlined above.

Dated: December 9, 2022
       New York, New York

_(signature)_
Michael Banuchis
Green Kaminer Min & Rockmore LLP
*Attorneys for Petitioner*
420 Lexington Avenue, Suite 2834
New York, New York 10170
(212) 681R-6400

---

[6]    The next court appearance in Italy is scheduled for December 15, 2022.