**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————————
                                              )
                                              )
JACKY ISACCO SAADA                            )
                                              )
            Petitioner,                       )
                                              )
vs.                                           )        No.     18-CV-05292
                                              )
NARKIS GOLAN                                  )
                                              )
            Respondent.                       )
———————————————————————   )


<u>**MEMORANDUM IN OPPOSITION TO CLC'S MOTION TO INTERVENE AND IN**</u>
<u>**PARTIAL OPPOSITION TO MORIN GOLAN'S MOTION TO INTERVENE**</u>


Green Kaminer Min & Rockmore LLP
420 Lexington Avenue, Suite 2821
New York, NY 10170
(212) 681-6400

Attorneys for Petitioner

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES………..……………….…………...……………………..……...ii

I.     RELEVANT BACKGROUND ...................................................................................1
II.    ARGUMENT………………………………………………………………………3
    I.    CLC Should Not Be Permitted to Intervene……………………………………4
        A.  B.A.S. Should Not Be Permitted to Intervene as a Right………………………5
        B.  The Motion to Intervene is Not Timely…………………………………………6
        C.  B.A.S.'s  Clear,  Protectable  Interests  Would  Not  Be  Served  By  CLC's Intervention……………………………………………………………………9
        D.  B.A.S.'s Interests are Adequately Protected…………………………………10
        E.  B.A.S. Should Not Be Permitted to Intervene Under FRCP 24(b)………..…12
    II.   CLC Should Not Be Appointed As G.A.L.…………………………………...…13
    III.  Ms. M. Golan Should Not Be Entitled to a New Proceeding or Hearing…………16
III.   CONCLUSION………………………..……………………………………………16

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*335-7 LLC v. City of New York,*
    524 F. Supp. 3d 316, 326 (S.D.N.Y. 2021)……………………….………………………4

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas,*
    262 F.R.D. 293 (S.D.N.Y. 2009)……………………………………………………………8

*Authors Guild v. Google, Inc.,*
    No. 05 CIV. 8136 (DC), 2009 WL 3617732 (S.D.N.Y. Nov. 4, 2009)………………………7

*Butler, Fitzgerald & Potter v. Sequa Corp.,*
    250 F.3d 171, 182 (2d Cir.2001)…………………………………………..………..8

*Catanzano by Catanzano v. Wing,*
    103 F.3d 223, 233 (2d Cir.1996)…………………………………………………..7,8

*Compagnie Noga D'Importation Et D'Exportation S.A. v. Russian Fed'n,*
    2005 WL 1690537, at *6 (S.D.N.Y. July 20, 2005)…………………………………………9

*D'Amato v. Deutsche Bank,*
    236 F.3d at 84……………………………………………………...…………………7,8

*Danaipour v. McLarey,*
    286 F.3d 1, 8 (1st Cir. 2002)………………………………………………………………13

*Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.,*
    847 F.2d 1038, 1044 (2d Cir.1988)………………………………………..…...……7,8

*Floyd v. City of New York,*
    302 F.R.D. 69 (S.D.N.Y.)……...…………………………………………………………7

*Giuffre v. Dershowitz,*
    2021 WL 5233551, at *3 (S.D.N.Y. Nov. 10, 2021)……………………………..……4

*Haimdas v. Haimdas,*
    401 F. App'x 567, 568 (2d Cir. 2010)…………………………..…………………………14

*Hnot v. Willis Grp. Holdings Ltd.,*
    2006 WL 3476746, at *5 (S.D.N.Y. Nov. 30, 2006)………………………………………8

*In re the Application of Dulce Esperanza Mendez Gonzalez v. Batres,*
    2014 WL 12618102, at *1 (D.N.M. Nov. 5, 2014)………………………………………15

*Jakubik v. Schmirer*,
   2013 WL 3465857 (S.D.N.Y. 2013)……………………………………….……..5,12

*John Wiley & Sons, Inc. v. Book Dog Books*, LLC,
   315 F.R.D. 169, 174 (S.D.N.Y. 2016)………………….…………………………..8,13

*Loos v. Manuel*,
   651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994)………………………………..……14

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
   471 F.3d 377, 389 (2d Cir. 2006)………………………………………………………4

*Miller v Miller*,
   240 F.3d 392, 397 (4th Cir. 2001)…………………………………………………14

*Ostos v. Vega*,
   No. 3:14-CV-3935-L, 2015 WL 569124, at *6 (N.D. Tex. Feb. 11, 2015)…………………15

*Pennacchia v. Hayes*,
   No. 1:16-CV-00173-EJL, 2016 WL 9045965, at *2 (D. Idaho June 8, 2016)………………14

*Saada v. Golan*,
   2022 WL 4115032 (E.D.N.Y. Aug. 31, 2022) (Saada *VII*))…………..…………….1, 10, 15

*Saada v. Golan*, 2021 WL 1176372,
   (E.D.N.Y. Mar. 29, 2021)……………………………………………...…………9

*Sanchez v. R.G.L.*,
   *Sanchez v. R.G.L.*, 761 F.3d 495, 508 (5th Cir. 2014)…………………….………..5, 11,13

*Seils v. Rochester City Sch. Dist.*,
   199 F.R.D. 506, 512 (W.D.N.Y. 2001)………………………………………...………8

*United States v. Pitney Bowes, Inc.*,
   25 F.3d 66, 73 (2d Cir. 1994))…………………………………………………7,13

*U.S. Equal Emp. Opportunity Comm'n v. Birchez Assocs., LLC*,
   2021 WL 1115513, at *2 (N.D.N.Y. Mar. 24, 2021)…………………………………9

*Walsh v. Walsh*,
   221 F.3d 204, 213 (1st Cir. 2000)…………………………………..………5, 13

**Statutes**

iii

Fed R. Civ. P. 24………………………………………………………………………………4

Fed R. Civ. P. 24(a)……………………………………………………………………………4

Fed R. Civ. P. 24(b)……………………………………………………………………………4

Fed. R. Civ. P. 24(b)(1)(B)……………………………………………………………………4

Hague Convention, art. 11……………………………………………………………………6

Hague Convention, art. 19…………………………………….………………………………14

**Other Sources**

*Linda D. Elrod, Please Let Me Stay: Hearing the Voice of the Child in Hague Abduction Cases*,
    63 Okla. L. Rev. 663, 687 (2011)………………………………………….………………..13

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

|  |  |
|---|---|
| JACKY ISACCO SAADA | ) |
| Petitioner, | ) |
| vs. | ) No.   18-CV-05292 |
| NARKIS GOLAN | ) |
| Respondent. | ) |

_____

## MEMORANDUM IN OPPOSITION TO CLC'S MOTION TO INTERVENE AND IN PARTIAL OPPOSITION TO MORIN GOLAN'S MOTION TO INTERVENE

Michael Banuchis, an attorney duly admitted to practice before this Court, respectfully submits this memorandum in support of the relief sought in the instant motion.

### RELEVANT BACKGROUND

On August 31, 2022, after remand from the U.S. Supreme Court, this court issued a Memorandum Decision and Order (_Saada v. Golan_, 2022 WL 4115032 (E.D.N.Y. Aug. 31, 2022) (Saada _VII_)) granting Mr. Saada's Petition for the return of the parties' son ("B.A.S." or the "Child") to Italy pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"). On September 8, 2022, Ms. Narkis Golan ("Ms. N. Golan") filed notice of appeal.

On October 18, 2022, Ms. N. Golan died during the pendency of her appeal. On October 20, 2022, despite custody jurisdiction belonging to Italy, Ms. N. Golan's sister Morin Golan ("Ms. M. Golan" or the "Aunt") filed family offense and custody petitions in Brooklyn Family Court. The Family Court appointed an attorney for the child ("AFC") for B.A.S. from the Children's Law Center ("CLC").

On October 27, 2022 this Second Circuit issued an order stating:

1

In these circumstances, the court hereby ORDERS that, on or before November 4, 2022, counsel for the parties file any motions concerning the proper disposition of this appeal in light of Ms. Golans death. Whether or not counsel for the parties file any motions, the court ORDERS that, on or before November 4, 2022, they show cause in writing why this appeal should not be dismissed as moot and explain whether the stay of the District Courts removal order may be lifted and whether the Judgment of the District Court may become final. Further, because this case concerns the removal of a minor child who had been in the physical custody of his now-deceased mother, the court ORDERS that, on or before November 4, 2022, counsel for the parties advise the court as to the identity and location of such person or persons currently having physical custody of B.A.S. If anyone other than the childs father, Mr. Saada, presently has physical custody of B.A.S., the court ORDERS that Ms. Golans counsel, as an officer of the court, is requested to provide such person or persons with a copy of the District Courts removal order and with this order, to confirm that she has done so in counsels November 4, 2022 filings, and to state therein counsels understanding of whether such person or persons intend to intervene in this appeal or otherwise to take action regarding the proceedings in the District Court.

Dkt. No 134.

On November 3, 2022, CLC filed a letter with the District Court [ECF No. 168] asking to be included in the Hague proceeding and alleging that Mr. Saada had traveled to New York to take B.A.S. back to Italy. CLC's letter, which largely consisted of custody related arguments better suited for the Italian courts, further stated that there had been a "change in circumstances" (which is the legal standard in New York to modify a custody order) which required the Court to consider new evidence. CLC also falsely claimed that B.A.S. does not know Mr. Saada. CLC further stated the erroneous position that B.A.S. would be placed in the foster care system in Italy if returned and offered the speculative and meritless argument that Mr. Saada was likely to abuse B.A.S. CLC also reiterated the argument that B.A.S.'s autism would cause him to be harmed by returning home.

On November 10, 2022, the Second Circuit dismissed the appeal as moot and remanded the case to this Court. It directed this Court to "entertain any motions for intervention or substitution of parties" and stated that it had "confidence that [this Court] will expeditiously address the Hague Convention petition in light of the changed circumstances." [ECF No. 152].

On November 16, 2022, Ms. M. Golan filed a motion to intervene [ECF No. 172]. On November 30, 2022, CLC filed a motion to intervene in this action on behalf of B.A.S. or to appoint them as *guardian ad litem* ("GAL").[1] The motion reiterates many of the same arguments previously offered by Ms. N. Golan and now Ms. M. Golan. These arguments center around B.A.S.'s autism and the alleged psychological harm he would face if returned home. Select statements taken from a psychological evaluation which CLC argues support a grave risk finding indicate that B.A.S. – age six – is "easily distracted" and "a bit clumsy."

## **ARGUMENT**

Both the Ms. M. Golan and CLC have made it clear that they wish for this case to be delayed for extensive fact finding and for this Court to conduct what amounts to a child custody best interest analysis. Ms. M. Golan's position is that Mr. Saada must procedurally file a new petition against her, which would enable her to interpose a new response alleging that B.A.S.'s autism would pose a grave risk of harm should he be returned to Italy and entitle her to a new hearing on that issue. This argument has already been offered by Ms. N. Golan multiple times and rejected by this Court and should not be used yet again to cause delay. Moreover, Ms. M. Golan, unlike Ms. N. Golan, has no inherent custodial rights over B.A.S. and no rights have been conferred to her by a court of competent jurisdiction.  Therefore, her rights are not at issue here, only those of B.A.S.  The grave risk of harm to B.A.S. is not impacted by the addition of a new party and Ms. M. Golan has no interest separate and apart from those that have already been raised on behalf of B.A.S. To the extent Ms. M. Golan seeks to intervene in this case, there is no objection provided she is not afforded the ability to start this case from scratch with a new petition and a new evidentiary hearing.

---

[1]     The Second Circuit did not issue the Mandate [ECF No. 175] until December 1, 2022 which made both motions to intervene premature.

Likewise, CLC wishes to intervene and take the position that a new hearing is necessary due to a change in circumstances. There is no basis for B.A.S. to intervene in this case through CLC. The Second Circuit directed this Court to resolve the petition expeditiously on remand. [ECF No. 175]. Adding an additional redundant party will do nothing but cause further delay, notwithstanding that B.A.S. already is represented by counsel in the Italian custody proceeding. Further, CLC's stated position is identical to that of Ms. M. Golan's and B.A.S.'s interests are fully protected by the parties.

## I.  CLC Should Not Be Permitted to Intervene

"Rule 24 of the Federal Rules of Civil Procedure contemplates two distinct species of intervention: intervention of right under Rule 24(a), and permissive intervention under Rule 24(b)." *Giuffre v. Dershowitz*, 2021 WL 5233551, at *3 (S.D.N.Y. Nov. 10, 2021) (citations omitted). To intervene as of right under Rule 24(a), a proposed intervenor must meet each of the following four conditions: (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by other parties. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006).

Alternatively, a court may permit intervention if the motion is timely and the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Courts evaluating as-of-right or permissive motions consider the same factors. *See* 335-7 *LLC v. City of New York*, 524 F. Supp. 3d 316, 326 (S.D.N.Y. 2021). However, the principal consideration for permissive intervention is whether intervention will cause undue delay or prejudice to the original parties. *Id*.

CLC should not be permitted to intervene at this late juncture and cause severe prejudice to Mr. Saada by adding another adverse party with an identical position to Ms. M. Golan's, causing yet more delay. This case has been in litigation for over four years without B.A.S. as a party, and there is no justifiable reason to add him now. B.A.S.'s interest in this case is served by returning him to Italy so long as he will not be subject to a grave risk of harm. Further, his interests will be served by the Court resolving this petition promptly.

There is no substantive difference between Ms. M. Golan's position and CLC's position. CLC seeks to dismiss the petition because they believe that is what is in B.A.S.'s best interests, which is readily apparent from their motion. A best interest analysis has no place in a Hague proceeding and B.A.S., who is already represented by a lawyer in Italy, will be able to offer these best interest arguments in the appropriate forum, which is the Court of Milan.

### A. B.A.S. Should Not Be Permitted to Intervene as a Right

Permitting CLC to intervene would be severely prejudicial to Mr. Saada due to the delay it would cause. Further, notwithstanding the delay, CLC is unable to meet any of the four requirements and the motion to intervene should be denied.

Motions to intervene are rarely granted in Hague Convention proceedings. In *Walsh v. Walsh*, 221 F.3d 204, 213 (1st Cir. 2000), the First Circuit stated that, regarding intervention on behalf of a child, while "not every Hague Convention case requires intervention on behalf of the children, there may be such cases (though we doubt very many)." Our legal research yielded only two cases, both distinguishable, where children were permitted to intervene in their own Hague case, *Sanchez,* 761 F.3d 495 and *Jakubik v. Schmirer*, 2013 WL 3465857 (S.D.N.Y. 2013). As detailed below, both of these cases involved older children who sought to offer their own independent defenses to a Hague petition.

B.A.S. is six years old with autism. He is far too young to offer any mature age defense and CLC does not state that it plans to assert one. He himself cannot offer a cognizable position

as to what his interests are and why they are not protected by the parties. CLC, who has been involved in this case for less than two months, seek to offer a position based upon what they believe is best for B.A.S. This, however, is not a custody case and this Court is not to determine B.A.S.'s best interests. This is applicable because the case law regarding children's intervention in Hague cases establishes that it is appropriate when an older child has a stated position that is different from the parties.

In the instant proceeding B.A.S.'s interests would be best served by a swift resolution and return to Italy so that the Italian court can resolve custody, where B.A.S. has a lawyer who is representing his interests in the custody proceeding. The purpose of CLC's attempt to intervene is simply to cause delay by obtaining a new hearing and then, working in conjunction with Ms. Golan, to seek denial of the petition. CLC clearly believes that denying the petition is in B.A.S.'s best interest.  CLC's position will be lockstep with Ms. Golan, causing Mr. Saada to litigate this case and incur yet more counsel fees against two parties with the same goal. CLC's motion should be denied as untimely, severely prejudicial, and unnecessary to protect B.A.S.'s interests.

Finally, the exceptional circumstances in this case should weigh against expanding this litigation, leading to yet more delay. It is very important to note that both the U.S. Supreme Court and the Second Circuit have directed that this case be resolved expeditiously. The goal is to have Hague Convention cases resolved in six weeks.  Hague Convention, art. 11.  We are now over four months past when the U.S. Supreme Court stated that the case had gone on for years longer than it should have and must be resolved quickly on the record before the district court.  This matter must come to a swift resolution without further delay.

**B. The Motion to Intervene is Not Timely**

CLC's motion to intervene is not timely. Timeliness is the threshold question for motions to intervene. Among the factors to be considered are: "(1) how long the applicant had

notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 70 (2d Cir. 1994).

Further, the determination of whether a motion to intervene is timely must be "evaluated against the totality of the circumstances before the court." *D'Amato*, 236 F.3d at 84 (citation and internal quotation marks omitted); *see also Pitney Bowes*, 25 F.3d at 70 (explaining that "timeliness defies precise definition"). "The length of time the applicant knew or should have known of his interest before making the motion" is "[a]mong the most important factors" to be considered in determining timeliness. *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 233 (2d Cir.1996) (internal quotation marks omitted); *see also Authors Guild v. Google, Inc.,* No. 05 CIV. 8136 (DC), 2009 WL 3617732, at *2 (S.D.N.Y. Nov. 4, 2009) (same).

In this context, CLC's motion to intervene cannot be considered timely being made four years into this litigation. Ms. N. Golan could have but did not seek to have a GAL appointed for B.A.S. years ago. Another intervenor could have moved on B.A.S.'s behalf but never did. But for Ms. M. Golan filing a Family Court proceeding and forum shopping, CLC would not have been appointed by the Family Court and would have nothing to do with this case. Their presence in this case is a result of Ms. M. Golan's attempt to circumvent this and the Italian court.

To the extent relevant, B.A.S. as a legal entity and CLC as an organization have been on notice of these proceedings since its inception, which would weigh against meeting the first prong of the analysis. *See Floyd v. City of New York,* 302 F.R.D. 69, 89 (S.D.N.Y.) ("Numerous courts have found that ... the initiation of a lawsuit where the complaint addresses the would-be intervenors' interests may trigger constructive notice."); *see also Farmland Dairies v.*

*Comm'r of N.Y. State Dep't of Agric. & Mkts*., 847 F.2d 1038, 1044 (2d Cir.1988) (finding motion to intervene untimely because the proposed intervenors could have moved when they "were aware of this and related litigation"). This case received national attention when it was granted certiorari and numerous organizations and lawyers submitted amici briefs. Not one entity attempted to intervene on B.A.S.'s behalf.

"In most instances, a motion to intervene based on a claim that was known, but not acted upon, for a period of years would be untimely." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas,* 262 F.R.D. 293, 353 (S.D.N.Y. 2009); *see also Butler, Fitzgerald & Potter v. Sequa Corp*., 250 F.3d 171, 182 (2d Cir.2001) (holding 12-month delay to be untimely for purposes of intervention); *Catanzano*, 103 F.3d at 232–33 (denying intervention where the motion was filed at least 18 months after the applicants should have known of their interest in the litigation). This statute was clearly not intended for the purpose CLC seeks to achieve here but, nevertheless, on its face CLC is unable to meet its burden since an entity could have intervened any time since 2018 but did not do so.

Adding B.A.S. as a party through CLC would cause yet more delay and severely prejudice Mr. Saada. When adding additional parties would cause unnecessary delay, it is appropriate to deny a motion to intervene. *Seils v. Rochester City Sch. Dist*., 199 F.R.D. 506, 512 (W.D.N.Y. 2001); *see D'Amato v. Deutsche Bank*, 236 F.3d at 84 (district court did not abuse its discretion when it denied a motion to intervene after concluding that the prejudice to the existing parties outweighs any prejudice to party seeking intervention).

Permitting new claims and parties would substantially broaden this litigation. Such an expansion of the case would inevitably delay a speedy resolution and "would constitute substantial prejudice" to Mr. Saada "who ha[s] a legitimate interest in the expeditious resolution of claims…" *Hnot v. Willis Grp. Holdings Ltd*., 2006 WL 3476746, at *5 (S.D.N.Y. 2006); *see also John Wiley & Sons, Inc. v. Book Dog Books*, LLC, 315 F.R.D. 169, 174

(S.D.N.Y. 2016) (finding prejudice to original parties and denying Rule 24(b) motion where intervention would require expanding discovery and further delay case); *Compagnie Noga D'Importation Et D'Exportation S.A. v. Russian Fed'n*, 2005 WL 1690537, at *6 (S.D.N.Y. 2005) (denying intervention where intervenor's involvement would "substantially delay a litigation that already bears a protracted history"). This litigation is narrow and specific in scope. The expansion proposed by the intervenors and the delay it would cause are grounds to deny the intervention. *See, e.g. U.S. Equal Emp. Opportunity Comm'n v. Birchez Assocs., LLC*, 2021 WL 1115513, at *2 (N.D.N.Y. Mar. 24, 2021). Notably the cases cited above were not Hague cases on an expedited schedule and certainly had not been directed by both the Second Circuit and U.S. Supreme Court to act expeditiously.

In 2021, when deciding a motion to stay B.A.S.s return this Court noted the prejudice additional delay would cause Mr. Saada and stated "I cannot ignore the fact that he is losing precious opportunities to be with his son during this formative time in the child's development. The balance of harms weighs in the petitioner's favor." *Saada v. Golan*, 2021 WL 1176372, at *7 (E.D.N.Y. Mar. 29, 2021). Adding an additional party at this late point in the litigation would cause considerably more delay to these proceedings which the Supreme Court has stated has lasted for years longer than it should have.

B.A.S. will not be prejudiced if the motion to intervene is denied. Ms. N. Golan advocated on his behalf throughout this litigation and Ms. M. Golan will have the opportunity to maintain those arguments. Any arguments CLC seeks to offer regarding Mr. Saada's parenting ability are irrelevant to this proceeding and B.A.S. will not be prejudiced by disallowing evidence related to these arguments from entering the record. Further, if B.A.S. is returned Mr. Saada can and will afford him the best specialists available in Italy and place him in appropriate schooling.

## C. B.A.S.'s Clear, Protectable Interests Would Not Be Served by CLC's Intervention

B.A.S. certainly has a personal stake in this proceeding. His interest would best be served by an expeditious resolution and return to Italy so that the Italian court can decide custody. B.A.S., as a six-year-old, does not have a position which the Court should consider in this case, nor should his position be considered, which might be common for an Attorney for the Child ("AFC") in New York Family Court, but is not appropriate here.

The record before the Court is clear. There is no grave risk present in this case. To the extent B.A.S. has any absolute and identifiable interest here, it would be to avoid being placed at grave risk of harm. This Court has made clear that it would never return B.A.S. to Italy if it believed doing so would place in in a grave risk of harm. *Saada VII*, 2022 WL 4115032, at *9. Since there is no grave risk in this case, B.A.S.'s remaining interests are relevant only in a best interest analysis which must take place in Italy. CLC's motion is based on the conclusory if not erroneous assumption that B.A.S.'s has an interest in remaining in New York which must be protected. That decision, however, belongs only to the Italian court and not to CLC's independent judgment.

B.A.S.'s remaining interests can *only* be determined and protected by the Italian court, which requires the disposition of this proceeding. CLC cannot meet the second or third prongs of the standard for intervention because B.A.S. cannot articulate an independent interest in this proceeding or establish how its disposition will impair his ability to protect that interest. In fact, the disposition of this proceeding is necessary to protect B.A.S.'s interests in the parallel custody proceeding.

### D. B.A.S.'s Interests are Adequately Protected

As far as this case is concerned, B.A.S.'s interest is to be returned to Italy so long as doing so would not pose a grave risk of harm. Both Mr. Saada and Ms. M. Golan can adequately protect those interests.

CLC argues a litany of best interest related issues to support the position that B.A.S.'s interests are not protected by the parties. These issues, including the quality of B.A.S. and Mr. Saada's relationship post-abduction, Mr. Saada's contact with B.A.S.'s school, and his understanding of his special needs are all appropriate in a custody setting and not a Hague proceeding.

A grave risk defense is already present in this case and Ms. M. Golan seems determined to continue to pursue those claims as set forth in her letter of December 6, 2022 [ECF No. 177]. These arguments are identical to those CLC sets forth in their motion to intervene. CLC does not present any new or independent arguments regarding grave risk and, incidentally, these arguments have nearly all been previously offered by Ms. N. Golan and rejected by the court.

The two cases where children have been permitted to intervene are instructive and demonstrate that B.A.S.'s intervention in this case is completely unwarranted. The case CLC uses to support its position that B.A.S. should be permitted to intervene, *Sanchez v. R.G.L.*, 761 F.3d (5th Cir. 2014) is easily distinguishable. In *Sanchez*, the children were taken from Mexico to the United States by their aunt and uncle. The mother asked for the children back and the aunt sent them to walk across the border by themselves. They were picked up by DHS and transferred to the custody of another government agency. When the mother filed a Hague return petition, the aunt and uncle did not participate, and the government took no position. The oldest child stated that he did not want to return to Mexico because her mother's boyfriend was a member of a drug cartel. The Fifth Circuit found that it was appropriate for a GAL to be appointed because no respondent offered a defense. *Id*. at 508. In the instant case, Ms. M. Golan seeks to interpose a grave risk defense and therefore is offering the same defense CLC states it will present for B.A.S. The Court in *Sanchez* was clear that "[c]hildren are not usually parties to Hague Convention proceedings…[and] some cases, but not 'very many,' may warrant a child's formal representation…" *Id.* The circumstances in *Sanchez* were "exceptional" and are

11

not replicated in this case. Mr. Saada and Ms. M. Golan are fully capable of presenting all evidence to this Court for its consideration in rendering a decision on Mr. Saada's request to return B.A.S. to Italy. To the extent CLC seeks to offer an alternative grave risk defense due to danger caused by being returned to Mr. Saada in Italy, the Court has already determined that Mr. Saada is not a risk to the Child and that issue has been resolved.

Likewise, *Jakubik v. Schmirer*, 2013 WL 3465857 (S.D.N.Y. 2013) is also distinguishable. There, the subject child was fifteen years old. She wished to assert a freestanding Article 13 defense that she objected to being returned. The respondent mother had not offered that particular defense and, in addition, the court noted that the child and respondent's interests may diverge due to immigration issues. The court also noted that the teenage child would be in the best position to assert her own defense through counsel.

These cases are clearly distinguishable. B.A.S. will not be able to offer any cognizable independent defense here. In any event, intervention on behalf of a child has been typically utilized for older children to offer unique defenses rather than to buttress a respondent's case.

### E.  B.A.S. Should Not Be Permitted to Intervene Under FRCP 24(b)

"There are at least three preliminary hurdles movants must negotiate before this court may exercise its discretion to grant permissive intervention: (1) the motion must be timely, Rule 24(b); (2) movants' claim or defense and the main action must have a question of law or fact in common, Rule 24(b)(2); and (3) movants must show an independent grounds of jurisdiction to support their permissive intervention. 3B Moore's Federal Practice, ¶ 24.18 [4]. If movants successfully clear these hurdles, "Rule 24(b) necessarily vests broad discretion in the district court to determine the fairest and most efficient method of handling a case with multiple parties and claims." *SEC v. Everest Management Corp.,* 475 F.2d 1236, 1240 (2d Cir.1972)." *Cook v. Pan American World Airways, Inc.,* 636 F.Supp. 693, 698-99 (S.D.N.Y. 1986).

As discussed above, CLC's motion is not timely.  Moreover, "[T]he issue of prejudice and undue delay is 'the principal guide in deciding whether to grant permissive intervention.'" *John Wiley & Sons, Inc. v. Book Dog Books*, LLC, 315 F.R.D. 169, 172 (S.D.N.Y. 2016) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994)).  As discussed above, permitting CLC to intervene on behalf of B.A.S. would be severely prejudicial and add undue delay without any additional benefit to the Court.

## II.  CLC Should Not Be Appointed as G.A.L.

The First Circuit has stated that some cases, but not "very many," may warrant a child's formal representation in a Hague Convention proceeding.  *See Walsh v. Walsh*, 221 F.3d 204, 213 (1st Cir. 2000).  "District courts have sometimes allowed children to participate [in Hague Convention proceedings] through *guardians ad litem* when their interests were not adequately represented by either party." *Sanchez v. R.G.L.*, 761 F.3d 495, 508 (5th Cir. 2014) (citing *Danaipour v. McLarey*, 286 F.3d 1, 8 (1st Cir. 2002).  Likewise, Federal Rule of Civil Procedure 17(c)(2) provides that a court "must appoint a *guardian ad litem* – or issue another appropriate order –to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2).  It is not appropriate to appoint a GAL in this action because the child's interests will be fully and robustly represented by the parties.  Therefore, this Court should decline to appoint a GAL for the Child at this late juncture because he does not need an independent advocate in these proceedings.  Further, appointing a GAL to advise the court of his position may be prejudicial to Mr. Saada because "[t]here is a recognized tendency for children to be influenced by the preferences of the parent with whom he or she lives." *Linda D. Elrod, Please Let Me Stay: Hearing the Voice of the Child in Hague Abduction Cases*, 63 Okla. L. Rev. 663, 687 (2011).

This Court's task is narrow and jurisdictional in nature; it is not to determine the best place for B.A.S. to reside.  The typical role of a GAL is to argue for the best interests of the

13

child – a consideration that the Court knows it does not need to consider in this action.  The scope of a court's inquiry under the Hague Convention is limited to the merits of the claim for wrongful removal or retention. ICARA § 9001(b)(4); Hague Convention, art. 16.  The merits of any underlying custody case are not at issue.  *Miller v Miller*, 240 F.3d 392, 397 (4th Cir. 2001); Hague Convention, art. 19.  The court's role is not to make traditional custody decisions but to determine in what jurisdiction the minor child should be physically located so that the proper jurisdiction can make a custody decision.  *Loos v. Manuel*, 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994).  Put differently, the focus of a court's inquiry in a Hague Convention case is not "the best interests of the child" as it typically is in a state court custody case; rather it is the specific claims and narrow discretionary exceptions under the Convention – whether a child has been wrongfully removed to, or retained in, a country different from the child's habitual residence and, if so, whether any of the Convention's narrow discretionary exceptions apply to bar the child's return to his habitual residence.

In *Haimdas v. Haimdas,* 401 F. App'x 567, 568 (2d Cir. 2010), the Second Circuit found that the district court's denial of the respondent-father's motion to appoint a GAL was not an abuse of discretion because his proffered reason for seeking a guardian – to represent the best interests of the children – was not relevant to the court's analysis under the Hague Convention. Likewise, in *Pennacchia v. Hayes*, No. 1:16-CV-00173-EJL, 2016 WL 9045965, at *2 (D. Idaho June 8, 2016), the court denied the respondent's motion to appoint a GAL where the court found that the determinations that it needed to make could be adequately based on the arguments and evidence supplied by the parties without the need for the services of a GAL. Even though grave risk and the child's age and maturity were raised as affirmative defenses, the court found that the parties' respective positions evidenced that the child's fundamental interests were well represented by the parents. In the instant proceeding the Court has already

14

recognized the voluminous record (*Saada VII*, WL 4115032, at *1) and this Court could certainly issue a decision on the evidence before it or which it will permit the parties to provide.

In *In re the Application of Dulce Esperanza Mendez Gonzalez v. Batres*, 2014 WL 12618102, at *1 (D.N.M. 2014), the court noted the difference between a Hague proceeding and a custody proceeding, where the appointment of a GAL would be more appropriate. The court denied petitioner's motion for the appointment of a GAL where she failed to show that such appointment was necessary to protect her children's well-being and "[t]he Court does not see, and Petitioner has not explained, how a *guardian ad litem's* participation would help her establish that her children were habitually residents in Mexico upon their removal, that their removal was in breach of her custody rights, or that she was exercising those rights at the time of removal." The *Gonzalez* court also tellingly stated that "the Hague Convention is not a mechanism by which parties can get into federal court to resolve traditional state court family law issues pertaining to child custody, visitation and support." (*id*.), which is precisely what CLC and Ms. M Golan wish to do here. *See also, Ostos v. Vega*, 2015 WL 569124, at *6 (N.D. Tex. Feb. 11, 2015) (motion for *guardian ad litem* denied where respondent fails to set forth any specific reason as to why he believed it was necessary, and the court determined that the child's fundamental interests under the Convention were adequately represented by the parents).

In sum, a GAL is not appropriate in this case at this late stage given the limited scope of Hague proceedings, the duplicative arguments proposed to be made, and moreover because there are no standards for GALs and other lawyers for children in Hague proceeding. This issue is on the agenda to be discussed at the Hague Conference on Private International Law ("HCCH") for its 8th Special Commission in October 2023. If this Court were to appoint a lawyer for B.A.S., we would request the opportunity to submit a proposed order clarifying and limiting the role of said lawyer.

## III.  **Ms. M. Golan Should Not Be Entitled to a New Proceeding or Hearing**

Further, Mr. Saada objects to Ms. M. Golan's motion to intervene to the extent that she is requesting a new petition to be filed and for a new evidentiary hearing to be held in this matter.  As discussed above, Ms. M. Golan seems to believe that this case should start anew from scratch and that she is entitled to be served with a new petition, which would enable her to interpose a new response alleging that B.A.S.'s autism would pose a grave risk of harm should he be returned to Italy and entitle her to a new evidentiary hearing on that issue.

Ms. M. Golan has no rights over B.A.S. aside from the fact that she is wrongfully abducting him. B.A.S.'s rights and the grave risk of harm towards him are at issue here and have been since the inception of this case. Ms. M. Golan's addition here does not change the contours of the grave risk analysis.  Therefore, no new petition is necessary and we have already filed a motion for Ms. M. Golan to be substituted as a party or added without the need for a new petition or new hearing.

### CONCLUSION

For the foregoing reasons, Petitioner Jacky Saada respectfully opposes CLC's intervention on behalf of B.A.S. and partially opposes Ms. M. Golan's intervention in this case to the extent a new petition and new hearing are required.

Dated: December 14, 2022
      New York, New York

Michael Banuchis
Green Kaminer Min & Rockmore LLP
*Attorneys for Petitioner*
420 Lexington Avenue, Suite 2834
New York, New York 10170
(212) 681R-6400