**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| JACKY ISACCO SAADA | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No.    18-CV-05292 |
| | ) | |
| NARKIS GOLAN | ) | |
| | ) | |
| Respondent. | ) | |

_____

## MEMORANDUM IN REPLY

Michael Banuchis, an attorney duly admitted to practice before this Court, respectfully submits this memorandum in further support of the relief sought in Mr. Saada's motion [ECF No. 178], *inter alia*, to replace or add Morin Golan as respondent and to vacate the family court order granting Ms. Golan custody of B.A.S.

## ARGUMENT

The correct legal outcome of this case is clear. Ms. Morin Golan should replace Narkis Golan as respondent, the Court should permit limited briefing just as it did after the Supreme Court remand, and B.A.S. should be ordered back to Italy as soon as possible so that this ongoing child abduction comes to an end so custody can be resolved by the Italian court.

Ms. Morin Golan's position is illogical in many respects.  First, taken to its logical end her position suggests that the Petition could have been defeated if Ms. Narkis Golan had simply refused to return to Italy. That position is untenable, and this Court never found that B.A.S. could only be returned safely with his mother. Second, her position is that since a new person is now wrongfully retaining the same child, a new petition and hearing is required. If that is the case, then Ms. Morin Golan, if faced with a similar return order, could turn over custody of B.A.S. to another family member or person and argue that another new petition and hearing

1

would be required against that new individual.  Third, her position is that the grave risk analysis must be performed at the time of the potential return. Again, she could reiterate this argument after every months-long appeal process and ask for a new analysis of the situation. Her transparent goal is to delay B.A.S.'s return to Italy by any means.

Ms. Morin Golan misstates our position in claiming that Mr. Saada "acknowledged to the Second Circuit, should Mr. Saada wish to seek a judgment against Ms. Morin Golan, he will need to bring a claim against her." [ECF No. 184 at 9.] Our position before the Second Circuit was that they should not dismiss the petition (which they did not do) because it would result in Mr. Saada having to file a new petition:

> To the extent that Ms. M. Golan argues that the appeal should be dismissed as moot and the petition dismissed, such resolution would have disastrous consequences and cause further delay. If the underlying Petition were to be dismissed, the Child would remain being wrongfully retained in the United States but Mr. Saada will have lost his legal recourse to have B.A.S. ordered home unless he files a new Hague Convention petition.

Dkt. No. 146 at 18.

There is no possible good faith reading of the above argument to support her clearly erroneous statement that Mr. Saada believes a new claim (*i.e.*, a new petition) should be filed.[1]

Further, Mr. Saada does not necessarily seek to avoid further briefing or submissions; however, a full fact-finding hearing is both unnecessary and contrary to the directives from the Second Circuit and Supreme Court to resolve this case expeditiously. This Court was tasked with a narrow jurisdictional issue which has been resolved multiple times over during this four-year litigation. The District Court issued a decision after the Supreme Court remand after permitting a limited, five-page briefing. Similar briefing would be appropriate here.  What Mr.

---

[1]      Ms. Golan also misrepresents that Petitioner released B.A.S.'s personal details in filings before the Second Circuit.  Though personal details were mistakenly filed, they were later re-filed with redactions. *See* Dkt. No. 146. B.A.S.'s gender has also never been concealed and was referenced by the Supreme Court in its decision.

Saada wishes to avoid is the continued delay of this case and any further evidentiary hearings should take place in Italy.

The fact that Ms. Golan has inserted herself into this case as the ongoing perpetrator of B.A.S.'s abduction does not grant her the right to relitigate this case or have this Court perform a best interest analysis, which is her transparent goal. Her position is this litigation is clear gamesmanship aimed to delay. The most efficient procedural mechanism to end this case is to add her as respondent, permit limited briefing, and issue a decision.

I.     **This Court Has Already Found that**
       **Returning to Italy Would Not Pose Grave Risk**

This Court has already found that returning to Italy would not present a grave risk of harm to B.A.S. This is merely a continued abduction by Ms. Morin Golan. There was never any caveat in a return order stating that B.A.S. could only be safely returned to Italy if accompanied by Ms. Narkis Golan. Had she subsequently refused to return to Italy with B.A.S. after *Saada v. Golan*, 2022 WL 4115032, at *6 (E.D.N.Y. Aug. 31, 2022) (*Saada VII*) was issued, that would not have given her the opportunity to raise new theories of grave risk and entitle her to a new hearing.  Ms. Morin Golan's arguments now essentially states that B.A.S. could only be returned safely with his mother. Therefore if Ms. Narkis Golan had simply refused to return, according to her logic, the Petition should have been dismissed. That outcome is completely at odds with this Court's findings.

Ms. Narkis Golan already presented arguments regarding B.A.S.'s autism and the purported disruption returning to Italy would cause. This Court ruled against her in *Saada v. Golan*, 2020 WL 2128867, at *5 (E.D.N.Y. May 5, 2020) (*Saada III*), which the Second Circuit summarily affirmed in *Saada v. Golan*, 833 F. App'x 829, 834 (2d Cir. 2020) (*Saada IV*).

Ms. N. Golan again raised the issue of autism after the Supreme Court remand, arguing for a new hearing and that "[t]he Court also would have to take evidence concerning B.A.S.'s current circumstances, including his substantial social, psychological, and educational needs

stemming from his autism, in order to understand the risk that returning him to Italy would pose." [ECF No. 154 at 4]. This Court considered the evidence she presented and denied the request to hold a new hearing in in *Saada VII,* 2022 WL 4115032 at *6, finding that "respondent had not shown by clear and convincing evidence that repatriation would cause B.A.S. grave psychological harm." *Id*.  Four months later, there should be no different conclusion when the same exact argument is presented by Ms. Morin Golan.

## II.     Ms. Golan Should Not Be Entitled to a New Proceeding or Hearing

Like Ms. Narkis Golan before her, Ms. Morin Golan cites *Ermini v. Vittori*, 758 F.3d 153 (2d Cir. 2014) to support her grave risk argument. However, that case has already been considered by the Court in *Saada VII,* WL 4115032 at *6. The Court has already determined that B.A.S.'s autism would not cause a grave risk of harm if he returned to Italy. Further, there has never been an argument that autism treatment is not available in Italy and, even in the remote possibility that there was a grave risk without treatment, it would be a case where treatment would be an ameliorative measure obviously suggested by the circumstances of the case. *Golan v. Saada*, 142 S. Ct. 1880, 1893 (2022). Further, as this Court noted, "[t]he Italian court overseeing the custody dispute has already directed Italian Social Services to evaluate B.A.S. to determine the extent of his psychological or educational needs." *Saada VII*, 2022 WL 4115032 at *6.

Ms. Golan states that a hearing is necessary to provide the Court with various types of evidence related to B.A.S.'s best interests, including his relationship with Mr. Saada. These arguments are transparently related to custody and not the narrow jurisdictional issue relevant to this case. Her reliance on *Baran v. Beaty*, 526 F.3d 1340 (11th Cir. 2008) to support the argument that Mr. Saada's conduct must be considered in new analysis is misplaced. The Court has already made findings regarding Mr. Saada's conduct and the potential danger he would cause to B.A.S. upon return. This Court has found and reiterated repeatedly that Mr. Saada

does not pose a danger to B.A.S (*Saada III,* 2020 WL 2128867 at *2) and that ". . . there was no evidence that [Mr. Saada] was violent to B.A.S." *Id.* at *4.

The contention that four years later Mr. Saada now poses a threat to B.A.S. is meritless, frivolous, and speculative. Not a single negative interaction between Mr. Saada and Ms. Narkis Golan or B.A.S. has been reported since the abduction. There is no evidence whatsoever that Mr. Saada has done anything to place B.A.S. in danger after the abduction despite numerous supervised visits.

Similarly, her reliance on *Neumann v. Neumann*, 684 F. App'x 471, 478 (6th Cir. 2017) is misplaced. There, the Sixth Circuit noted that the district court overlooked logistical issues but not that doing so caused a grave risk. The logistics of B.A.S.'s return to Italy may be an issue to be worked out before the Court, but it certainly does not present an issue of such gravity to warrant a hearing.

In Ms. Narkis Golan's brief after the Supreme Court remand filed on July 25, 2022, she argued that the Court needed to hold a hearing to "take evidence concerning B.A.S.'s current circumstances." [ECF No. 154 at 4]. Ms. Morin Golan now states that the Court must hold a new hearing because "there is nothing in the record about the current circumstances facing B.A.S." ECF No. 184 at 12. The circumstances facing B.A.S. upon return do not rise to the level of grave risk, such as as sexual abuse, physical or psychological abuse, serious neglect, and domestic violence in the home. *Golan,* 142 S. Ct. at 1894.

Further, to the extent that he will face disruption, that is due to the abduction rather than by any action attributable to Mr. Saada. "A removing parent must not be allowed to abduct a child and then—when brought to court—complain that the child has grown used to the surroundings to which they were abducted. Under the logic of the Convention, it is the abduction that causes the pangs of subsequent return." *Lukic v. Elezovic*, 2021 WL 804384, at *3 (E.D.N.Y. 2021) (*quoting Friedrich v. Friedrich*, 78 F.3d 1060, 1068 (6th Cir. 1996).

Ms. Narkis Golan's death cannot be the source of grave risk of harm to B.A.S. based on the evidentiary record. There was never a finding suggesting that returning to Italy with her was ameliorative or necessary to ensure no grave risk would occur. There was never any finding that B.A.S. being in Mr. Saada's custody would cause a grave risk of harm. The single source or risk was due solely to the possibility of witnessing domestic violence between the parties, not B.A.S.'s autism or a risk posed directly by Mr. Saada.

It bears emphasizing that B.A.S. was already ordered to return to Italy despite the changes to his life it would entail. He was already going to have to change his home, school, and daily routine. Ms. Morin Golan's argument that harm would be caused by a drastic change in his life [ECF No. 184 at 13] was already assessed by the Court and it still ordered his return because it is the correct legal outcome. The best way to mitigate the disruption moving to Italy will cause is to resolve this case as quickly as possible. Ms. M. Golan should not be entitled to an entire new hearing to present evidence on this issue, which would only cause further delay.

III.     **A Hearing Is Not Necessary for Due Process**

Ms. Golan has no rights in this case unique or separate and apart from those of B.A.S., which have been raised and argued since the inception of this case. No new discovery or hearings are necessary. Any information Ms. Golan would seek to enter into the record would be post-abduction potential harm caused by the abduction itself. This Court has expressed a desire for additional briefing which affords Ms. Golan the opportunity to present her arguments on behalf of B.A.S. before this Court decides whether he should return to Italy.

Regarding Ms. Golan's argument that her due process rights would be violated without additional discovery and a new hearing, the Seventh Circuit has stated, in affirming a district court's denial of additional discovery, that "the adjudication of a petition for return of a child is much like a district court's exercise of equitable power in the context of a preliminary

injunction or a temporary restraining order." *Norinder v. Fuentes*, 657 F.3d 526, 533 (7th Cir. 2011).

Ms. Golan continues to argue that the Second Circuit's order that this Court "address the Hague Convention petition in light of the changed circumstances" amounts to a requirement for a new petition and hearing. The Second Circuit, however, could have dismissed the petition and required Mr. Saada to re-file a new petition, but did not. Instead, the Second Circuit directed that this Court "entertain any motions for intervention or substitution of parties" in the first instance. The correct legal outcome of this situation cannot possibly be to force Mr. Saada to bring an entirely new proceeding considering the multiple directives from both the Second Circuit and U.S. Supreme Court to resolve this case expeditiously after the already long delays.

The Court's inability to issue an order against the abducting party is the change in circumstances which prompted the Second Circuit's statement. The Second Circuit had previously ordered Ms. Narkis Golan's counsel to identify and state whether any person, other than Mr. Saada, had physical custody of B.A.S. and if they intended to act in these proceedings. With the understanding that Ms. Morin Golan now had taken physical custody of B.A.S., the Second Circuit issued its most recent order dismissing the appeal and remanding back to this Court. There is no fair reading of these Orders which require a new petition and new hearing. The factual record of this case has been clear and was affirmed by the U.S. Supreme Court. The risks to the Child are known and understood by this Court.

Regardless of whether Ms. Morin Golan is substituted or added as a new party, she should not be permitted to interpose additional exceptions or arguments, such as the Article 12 provision that permits a Court to consider whether a child is "now settled in its new environment" if a petition is not filed within one year of the date of wrongful removal or retention. It is unknown whether Ms. Morin Golan believes she is entitled to raise this

argument, but certainly it is plausible that she believes a new petition would permit her to raise this argument since it has been over 4 years since B.A.S. was originally wrongfully retained.

## IV.    Morin Golan is A Proper Party for Substitution

First, it is obvious that statutes regarding substitution of a deceased party were not drafted with Hague Convention cases in mind. However, the principle behind these statutes – that the successor in interest to a deceased party can be brought into a case to fill the decedent's place without requiring a new case to be brought, most certainly applies. Ms. Morin Golan is undoubtedly Ms. Narkis Golan's successor in interest here. Mr. Saada should be permitted to simply continue prosecuting his case to remedy B.A.S.'s abduction against her as if she were Ms. Narkis Golan's "legal representative" in typical civil suit.

Federal courts can "construe Rule 25(a)(1) equitably and sensibly" when addressing substitution of parties. *In re Baycol Prod. Litig*., 616 F.3d 778, 784 (8th Cir. 2010). As there is no New York State analogue for a Hague Convention action, looking to New York law to resolve this issue rather than the Court's inherent equitable power would not necessarily yield the outcome justice requires. To that point, in New York, when a party dies, an action is stayed pending the substitution of a legal representative. *Meehan v. Washington*, 242 A.D.2d 286, 287 (2d Dep't 1997) (citing CPLR 1015). It would be unconscionable to apply the well settled legal standard to this case. To the extent necessary, the Court should construe Mr. Saada's motion as an application to name Ms. Morin Golan as Ms. Narkis Golan's legal representative in order to avoid any further delay.[2]

As a practical matter, the New York statute regarding substitution of deceased parties, CPLR 1021 is "the method by which the court acquires jurisdiction over a deceased party's successors in interest" *Green v. Maimonides Med. Ctr*., 172 A.D.3d 824, 825 (2d Dep't 2019).

---

[2]    In New York, the court may order substitution *sua sponte* when a party dies. *See Paul v. Ascher*, 106 A.D.2d 619 (2d Dep't 1984); CPLR 1015.

Ms. Narkis Golan's estate has nothing to do with this case, and Mr. Saada cannot obtain relief against it. However, when a party who is a successor in interest to a deceased litigant participates actively in a case after the death, New York courts permit the case to continue even without formal substitution. *See e.g., McDonough v. Bonnie Heights Realty Corp.*, 249 A.D.2d 520 (2d Dep't 1998); *Durrant v. Kelly*, 186 A.D.2d 237 (2d Dep't 1992), appeal dismissed 81 N.Y.2d 758 (1992); *Nieves on Behalf of Nieve*s v. 331 E. 109th St. Corp., 112 A.D.2d 59, 60 (1st Dep't 1985).

Ms. Morin Golan wishes to put form over substance in order to cause yet more delay when, for all practical purposes, she is the successor in interest in this case. The Court does not need to rigidly apply statutes that were not tailored for extremely niche Hague Convention cases and should use its tools to achieve the most expeditious and just resolution to this case.

## V.    The Family Court Orders Are Invalid

Ms. M. Golan states that she does not "understand Mr Saada to be seeking action with respect to the order of protection in favor of B.A.S. and Ms. Morin Golan… ." [ECF No. 184 at 22, n. 13]. Of course Mr. Saada seeks to vacate those orders, which restrict his ability to access B.A.S. and conflict with any potential custody orders issued by this Court or the Italian courts.

Ms. M. Golan relies upon the UCCJEA and its temporary emergency jurisdiction powers to overcome Article 16 of the Hague Convention and its prohibition against custody determinations. Although there is no such exception, the New York Family Court did not appropriately provide a valid emergency order, which requires, pursuant to DRL 76-c(3), "a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction…. ." The Family Court was required to proscribe a time in which Ms. M. Golan could seek an order from the Italian courts necessary to protect the child which would then render the emergency over. The Family Court provided no such time period

9

and made no requirement upon Ms. M. Golan.  This failure is indicative of the improper orders that were obtained in the Family Court.  Ms. M. Golan should seek orders form the Italian court as contemplated by the Hague Convention and the UCCJEA, which she relies on in her papers.

Further, Ms. M. Golan's arguments regarding Mr. Saada's current attempts to have access to B.A.S. ring hollow and insincere. She immediately obtained an *ex parte* order of protection against Mr. Saada for herself and B.A.S. though she had no interaction with Mr. Saada which would warrant such an order.  This order prevented Mr. Saada from having access to his son in a time of need. Ms. M. Golan contends that the order was subject to the Italian orders for supervision, but those Italian orders are only in effect once the child returns to Italy and supervision is to be done through Italian social services. How Italian social services can coordinate and supervise access here in New York is not explained by Ms. M. Golan and is clearly her attempt to use Mr. Saada's lack of access as both a shield and sword against Mr. Saada. Mr. Saada filed a motion for access to this Court once this Court regained jurisdiction over this issue.  Moreover, he filed for relief in the Italian courts as well to secure his rights demonstrating his interest and intention of maintaining his relationship with B.A.S.  This Court has repeatedly stated that it does not believe Mr. Saada to be a direct threat to B.A.S.; therefore, there is no reason why Mr. Saada, rather than someone who is a stranger to this Court, should not have care and custody of B.A.S. during the pendency of these proceedings.[3]

Dated: December 30, 2022
     New York, New York

                                              Michael Banuchis
                                              Green Kaminer Min & Rockmore LLP
                                                *Attorneys for Petitioner*
                                              420 Lexington Avenue, Suite 2834
                                              New York, New York 10170
                                              (212) 681R-6400

---

[3]     Mr. Saada has taken steps to secure educational placement and develop a treatment plan for B.A.S. in Italy.