UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
ISACCO JACKY SAADA,

                         Petitioner,

        -against-

NARKIS ALIZA GOLAN,

                         Respondent.
-------------------------------------------------X

                                          REPORT AND
                                          RECOMMENDATION
                                          18 CV 5292 (AMD)(RML)

LEVY, United States Magistrate Judge:

        By order dated December 4, 2022, the Honorable Ann M. Donnelly, United States

District Judge, referred the motions to intervene filed by Morin Golan and the Children's Law

Center to me for report and recommendation.  Additionally, by order dated December 20, 2022,

Judge Donnelly referred petitioner Isacco Jacky Saada's motion to substitute Morin Golan as

respondent, vacate the Kings County Family Court orders, and transfer B.A.S. to his care during

these proceedings to me for report and recommendation.  For the reasons stated below, I

respectfully recommend that the motion to vacate the Kings County Family Court orders be

granted, petitioner's request to have B.A.S. returned to his care during these proceedings be

referred to the Italian court, the motion to substitute Morin Golan as respondent be denied, the

motion to amend the Petition to add Morin Golan as respondent be granted, Morin Golan's

motion to intervene be denied, and the Children's Law Center's motions to intervene or be

appointed guardian *ad litem* be denied.

## BACKGROUND AND FACTS

        The record for this case is voluminous and includes the record from a nine-day trial

and several decisions of the District Court, the Second Circuit, and the Supreme Court.

Accordingly, I recount the case history only to the extent necessary to provide context for the instant motions.

On September 20, 2018, petitioner Isacco Jacky Saada ("petitioner" or "Saada") brought this case against then-respondent Narkis Aliza Golan ("respondent" or "Narkis Golan"), pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, as implemented by the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001, *et seq.* On March 22, 2019, Judge Donnelly found that petitioner and respondent's child, B.A.S., was a habitual resident of Italy, and that while he would be subject to grave risk of harm upon repatriation arising from domestic violence between his parents, there were sufficient measures that would ameliorate the risk. Saada v. Golan, No. 18 CV 5292, 2019 WL 1317868, at *20 (E.D.N.Y. Mar. 22, 2019).

In affirming in part and vacating in part that decision, the Second Circuit agreed that Italy is B.A.S.'s "habitual residence" under the Hague Convention, Saada v. Golan, 930 F.3d 533, 537 (2d Cir. 2019), but determined that certain measures could not be enforced before B.A.S. was returned to Italy. Id. at 542-43. Accordingly, the Second Circuit remanded the case with instructions to ensure that the measures necessary for B.A.S.'s safe repatriation could be "enforce[d] by the District Court or supported by other sufficient guarantees of performance." Id. at 543. On May 5, 2020, Judge Donnelly found that "the Italian courts are willing and able to resolve the parties' multiple disputes, address the family's history and ensure B.A.S.'s safety and well-being." Saada v. Golan, No. 18 CV 5292, 2020 WL 2128867, at *3 (E.D.N.Y. May 5, 2020). Thus, Saada's petition under the Hague Convention ("the Petition") was granted and it was ordered that B.A.S. be returned to Italy. Id. at *6. On October 28, 2020, the Second Circuit affirmed that decision in its entirety. Saada v. Golan, 833 F. App'x 829, 831 (2d Cir. 2020).

On December 10, 2021, the United States Supreme Court granted respondent's petition for a writ of certiorari to "decide whether the Second Circuit properly required the District Court, after making a grave-risk finding, to examine a full range of possible ameliorative measures before reaching a decision as to whether to deny return[.]" Golan v. Saada, 142 S. Ct. 1880, 1888 (2022), judgment entered, 213 L. Ed. 2d 1107 (June 29, 2022). The Supreme Court vacated the Second Circuit's October 28, 2020 decision because it found that, although district courts could consider such measures at their discretion, the Second Circuit could not require district courts to consider ameliorative measures in grave risk cases. See id. at 1892. The Supreme Court remanded the case to the District Court to clarify whether it would have considered ameliorative measures as a matter of discretion, and to "determine whether the measures in question are adequate to order return in light of its factual findings concerning the risk to B.A.S. . . . ." Id. at 1895-96.

In a subsequent decision, Judge Donnelly determined that the ameliorative measures before her were more than adequate to ensure B.A.S.'s safe return to Italy. Saada v. Golan, No. 18 CV 5292, 2022 WL 4115032, at *9 (E.D.N.Y. Aug. 31, 2022), vacated and remanded sub nom., In re B.A.S., No. 22 CV 1966, 2022 WL 16936205 (2d Cir. Nov. 10, 2022). Narkis Golan then appealed that order to the Second Circuit, which stayed the order directing that B.A.S. be returned to Italy. (Order of USCA, filed Sept. 14, 2022, Dkt. No. 164.) Narkis Golan unexpectedly passed away on October 18, 2022 while that appeal was pending. The Children's Law Center ("CLC") was appointed by the Kings County Family Court to represent B.A.S. on October 20, 2022 in connection with custody and family offense proceedings filed against Saada on that same date by Narkis Golan's sister, Morin Golan. (Memorandum of Law in Support of B.A.S.'s Motion to Intervene, filed Nov. 30, 2022 ("CLC Mem."), Dkt. No. 173-1, at 1.) On

3

November 10, 2022, the Second Circuit dismissed Narkis Golan's appeal as moot and remanded the Petition to the District Court.  In re B.A.S., 2022 WL 16936205, at *1.  In that order, the Second Circuit specifically directed the District Court to "entertain any motions for intervention or substitution of parties."  Id.

On November 16, 2022, Morin Golan filed a motion pursuant to Rule 24 of the Federal Rules of Civil Procedure to intervene in this matter.  (Motion to Intervene by Morin Golan, filed Nov. 16, 2022, Dkt. No. 172.)  On November 30, 2022, CLC filed a motion to intervene in this action on behalf of B.A.S. or alternatively to be appointed as his guardian *ad litem*.  (First Motion to Intervene by B.A.S., filed Nov. 30, 2022, Dkt. Nos. 173, 174.)  Finally, on December 9, 2022, petitioner filed a motion to substitute Morin Golan as respondent pursuant to Federal Rule of Civil Procedure 25, or in the alternative to amend the Petition under Federal Rule of Civil Procedure 15(a)(2) to add her as respondent.  (Petitioner's Motion to (1) Replace or Add Morin Golan as Respondent, (2) Vacate Kings County Family Court Orders, and (3) Transfer B.A.S. into Mr. Saada's Care, dated Dec. 9, 2022 ("Pet'r's Mot."), Dkt. No. 178.)  Additionally, petitioner requested that this court vacate the orders issued by the Kings County Family Court and transfer B.A.S. to his care in New York during these proceedings.  (Id.)  I will first address petitioner's requests to vacate the Kings County Family Court orders and for interim custody of B.A.S.  Then, I will address the motions related to determining the parties to the case.

DISCUSSION

I.    **Motion to Vacate the Kings County Family Court Orders**

Petitioner moves to vacate the Kings County Family Court orders obtained by Morin Golan.  (Memorandum in Support of Petitioner's Motion, dated Dec. 9, 2022 ("Pet'r's

Mem."), Dkt. No. 178-1, at 11.)[1]  One of the primary purposes of the Hague Convention is to prevent situations where "a family member would remove a child 'to jurisdictions more favorable to [his or her] custody claims in order to obtain a right of custody from the authorities of the country to which the child ha[d] been taken.'"  Mota v. Castillo, 692 F.3d 108, 112 (2d Cir. 2012) (quoting Gitter v. Gitter, 396 F.3d 124, 129 (2d Cir. 2005)).  Article 16 of the Hague Convention specifically provides that:

> [a]fter receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention[.]

Hague Convention, art. 16; see also Tann v. Bennett, 807 F.3d 51, 52 (2d Cir. 2015) ("holding that Tann's petition is moot because [if] the Bennetts received a favorable custody determination in a potentially friendlier New York court[,] [it] could encourage the jurisdictional gerrymandering that the Hague Convention was designed to prevent"); A.A.M. v. J.L.R.C., 840 F. Supp. 2d 624, 629 (E.D.N.Y. 2012) ("Article 16 of the Convention required the Family Court to postpone the adjudication of the respondent's custody petition unless and until it was determined that the child was not to be returned to Mexico pursuant to ICARA"), aff'd sub nom., Mota, 692 F.3d 108; Blondin v. Dubois, 189 F.3d 240, 245 n.2 (2d Cir. 1999) (citing Hague Convention, art. 16).  Thus, the custody orders issued by the Kings County Family Court contravene the Convention because it has not been determined that B.A.S. is not to be returned to Italy.

---

[1] Specifically, Saada requests that this court vacate two *ex parte* orders issued by the Kings County Family Court on November 15, 2022: the order granting Morin Golan temporary custody of B.A.S. and the temporary order of protection in favor of Morin Golan and B.A.S. against Saada.  (Pet'r's Mot.)

A district court is not barred by the <u>Rooker–Feldman</u> doctrine from vacating a state court's custodial decree made during the pendency of a Hague Convention petition.  <u>See</u> <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415-16 (1923) (holding federal statutory jurisdiction over direct appeals from state courts beyond the original jurisdiction of federal district courts); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 486-87 (1983) (holding claims "inextricably intertwined" with those a state court has already decided beyond the jurisdiction of lower federal courts).  Where Congress has specifically granted jurisdiction to the federal courts, the doctrine does not apply.  <u>See, e.g.</u>, <u>In re Gruntz</u>, 202 F.3d 1074, 1078-79 (9th Cir. 2000) (en banc) (noting that through statutory writ of habeas corpus and bankruptcy statutes Congress permits federal collateral review of state court and criminal bankruptcy judgments).  In this case, Congress has expressly granted the federal courts jurisdiction to adjudicate rights arising under the Hague Convention.  <u>See</u> 42 U.S.C. § 11603(a).  "Thus, federal courts must have the power to vacate state custody determinations and other state court orders that contravene the treaty." <u>Mozes v. Mozes</u>, 239 F.3d 1067, 1085 n. 55 (9th Cir. 2001), <u>abrogated on other grounds by</u> <u>Monasky v. Taglieri</u>, 140 S. Ct. 719 (2020); <u>see also</u> <u>Silverman v. Silverman</u>, 338 F.3d 886, 895 (8th Cir. 2003) (noting the same).

Morin Golan asserts that the Uniform Child Custody and Jurisdiction Enforcement Act ("UCCJEA") and New York Domestic Relations Law authorized the Kings County Family Court to exercise temporary emergency jurisdiction in order to protect B.A.S.  (<u>See</u> Memorandum of Law in Opposition to Petitioner's Motion to Replace or Add Party and Other Matters, dated Dec. 23, 2022 ("Golan Opp. to Pet'r's Mot."), Dkt. No. 184, at 17.)  However, "[j]urisdictional priority, under the UCCJEA, is always conferred to a child's 'home state.'"  <u>Hector G. v. Josefina P.</u>, 771 N.Y.S.2d 316, 323 (Sup. Ct., Bronx Cty. 2003) (citation omitted).  "Where, as here, there

exists a custody order from another jurisdiction, it is incumbent that the temporary court contact the original court to 'resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.'" Id. at 325 (quoting N.Y. DOM. REL. L. § 76-c (4)). Therefore, the proper course of action would have been for the Kings County Family Court to contact the Italian court to work to resolve the emergency created by Narkis Golan's death and determine a period for the duration of the temporary order.

In its Temporary Order of Protection, the Kings County Family Court specified that its conditions were subject to the order of supervised visitation of the Tribunal of Milan; however, this is insufficient under New York Domestic Relations Law § 76-c. (See Kings County Family Court Temporary Order of Protection, dated Oct. 20, 2022, Dkt. No. 172-2, attached as Ex. B to the Memorandum of Law in Support of Morin Golan's Motion to Intervene, filed Nov. 16, 2022 ("Golan Mem."), Dkt. No. 172-1.) In this situation, where the Kings County Family Court was advised of the proceedings before this court and the Italian court (see Golan Opp. to Pet'r's Mot. at 17), section 76-c required the Kings County Family Court to communicate with the Italian court to resolve the emergency and determine a period for the duration of the temporary order. See N.Y. DOM. REL. L. § 76-c (4). Because the Kings County Family Court orders contravene the Convention and did not follow the proper procedure for resolving the emergency caused by Narkis Golan's death, I respectfully recommend that they be vacated.

## II.   Motion to Transfer B.A.S. to Petitioner's Care

Petitioner requests that B.A.S. be transferred to his care in New York during these proceedings. (Pet'r's Mem. at 14.) However, "[t]he Convention's core premise is that the interests of children . . . in matters relating to their custody are best served when custody decisions are made in the child's country of habitual residence." Golan, 142 S. Ct. at 1888 (citations and

7

quotation marks omitted).  "Accordingly, the Convention generally requires the prompt return of a child to the child's country of habitual residence when the child has been wrongfully removed to or retained in another country."  Id. (citations and quotation marks omitted).  "This requirement ensure[s] that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States."  Id. (citations and quotation marks omitted).  The Hague Convention "empower[s] courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."  22 U.S.C. § 9001(b)(4).

Judge Donnelly previously found that Italy is B.A.S.'s country of habitual residence and, as discussed above, that "the Italian courts are willing and able to resolve the parties' multiple disputes, address the family's history and ensure B.A.S.'s safety and well-being."  Saada, 2020 WL 2128867, at *1, 3.  Moreover, "as directed by the Italian courts, Italian social services agencies will be closely involved with the petitioner, the respondent and B.A.S."  Saada, 2022 WL 4115032, at *6 (citation omitted).  "Social services will monitor the family, evaluate both parties and B.A.S., and report their findings to the Italian court so that the court can make an informed custody determination."  Id.  Saada's request to return B.A.S. to his care during these proceedings is not for this court to decide.  See Saada, 2022 WL 4115032, at *7 ("If it is not in B.A.S.'s best interest to remain in Italy—which is unquestionably an issue for the court determining custody to decide—the Italian court will award the respondent custody in the United States."); see also Poix v. Susibel Altagracia Espaillat Santana, No. 22 CV 4980, 2022 WL 9847347, at *1 (S.D.N.Y. Oct. 17, 2022) ("it is not for this Court to adjudicate the children's custody: as Congress has explicitly declared in the legislation implementing the Convention, this

8

Court is empowered 'to determine only rights under the Convention and not the merits of any underlying child custody claims.'") (citing 22 U.S.C. § 9001(b)(4)).[2]

This court's "task is not to determine the best interests of B.A.S. or Ms. Golan, or to impose custody arrangements." Saada, 2019 WL 1317868, at *1. "In short, the custody determination, as well as considerations of B.A.S.'s 'best interests,' will be made by the Italian court, as outlined in its comprehensive order." Id. Accordingly, I respectfully recommend that petitioner's request for interim custody of B.A.S. be referred to the Italian court.[3]

## III. Motion to Substitute Morin Golan as Respondent

Petitioner moves pursuant to Federal Rule of Civil Procedure 25 to substitute Morin Golan for Narkis Golan as respondent in this action. Under Federal Rule of Civil Procedure 25(a), if a party dies, a "motion for substitution may be made by any party or by the decedent's successor or representative" if (1) "the claim is not extinguished"; (2) the party to be substituted is "the proper party"; and (3) the substitution motion is made "within 90 days after service of a statement noting the death." FED. R. CIV. P. 25(a)(1). The language of Rule 25(a) is permissive. See Natale v. Country Ford Ltd., 287 F.R.D. 135, 137 (E.D.N.Y. 2012). It provides that "'[i]f a party dies and the claim is not extinguished, the court may order substitution of the

---

[2] I acknowledge petitioner's assertion that some district courts have ordered temporary visitation and access during Hague Convention proceedings. (Pet'r's Mem at 16.) However, petitioner does not request temporary visitation or access; he requests that this court grant him custody of B.A.S. during these proceedings. While the Hague Convention provides that a court may take appropriate measures "to protect the well-being of the child involved . . . before the final disposition of the petition," 22 U.S.C. §9004(a), I find that such appropriate measures are best determined by the Italian court that has been involved in making custody determinations related to B.A.S.

[3] Saada's memorandum indicates that the next court appearance in Italy was scheduled for December 15, 2022; however, no further information related to that conference has been filed before this court. (Pet'r's Mem. at 17, n.6.)

proper party.'" Id. (quoting FED. R. CIV. P. 25(a)(1)). "As one circuit court has noted, '[t]he

decision whether to substitute parties lies within the discretion of the trial judge . . . .'" Id.

(quoting Froning's, Inc. v. Johnston Feed Serv., Inc., 568 F.2d 108, 110 n. 4 (8th Cir. 1978)).

"The decision to order substitution or joinder is to be made by considering how the conduct of the

lawsuit will be most facilitated; it in no way affects the substantive rights of the transferor or

transferee." Fed. Deposit Ins. Corp. v. Tisch, 89 F.R.D. 446, 448 (E.D.N.Y. 1981) (citing

Television Reception Corp. v. Dunbar, 426 F.2d 174 (6th Cir. 1970)).

   Petitioner filed a formal written statement informing the court of Narkis Golan's

death, as required by Rule 25.  (See Letter of Isacco Jacky Saada, dated Oct. 19, 2022, Dkt. No.

165.)  Petitioner's motion is also timely – it was made fifty-one days after the statement of death

was filed, which is within the ninety-day day deadline set by Rule 25.  Furthermore, petitioner's

claim is not extinguished because final decision on the Petition is forthcoming.  (See Mandate of

USCA, filed Dec. 1, 2022, Dkt. No. 175 (remanding to the district court "with confidence that it

will expeditiously address the Hague Convention petition in light of the changed

circumstances.").)  The question is then whether Morin Golan is the proper party to be substituted.

   "Whether a person is a proper 'successor or representative' of the decedent is

determined by New York law." Garcia v. City of New York, No. 08 CV 2152, 2009 WL 261365,

at *1 (E.D.N.Y. Feb. 4, 2009).  However, "a party substituted for a decedent under Rule 25 need

not be formally appointed as the representative of the estate." U.S. Bank Nat'l Ass'n as Tr. for

RMAC Tr., Series 2016-CTT v. Sager, No. 19 CV 2229, 2022 WL 4392668, at *4 (E.D.N.Y.

Sept. 23, 2022) (citing Hardy v. Kaszycki & Sons Contractors, Inc., 842 F. Supp. 713, 716

(S.D.N.Y. 1993)).  "Where there is no appointed representative, and no practical need to seek one,

the district court should . . . look at the facts and circumstances of each case and then determine

whether the person moving to substitute will sufficiently prosecute or defend the action on the decedent's behalf." Id. (quoting In re Baycol Prod. Litig., 616 F.3d 778, 788 (8th Cir. 2010)). Likewise, "[t]he Second Circuit has endorsed a flexible approach to interpreting Rule 25 . . . because there can be time delays between the date of a party's death and the probate court being in a position to appoint a representative under the law of the domicile of the deceased." Cabisca v. City of Rochester, No. 14 CV 6485, 2018 WL 6680595, at *1 (W.D.N.Y. Dec. 19, 2018).

Petitioner acknowledges that "the rules regarding substituting defendants in federal cases are admittedly not tailored for Hague Convention cases[.]" (Pet'r's Mot. at 7.) Nevertheless, he argues that "the general concept that a party with stake in the outcome of the case should be substituted in when a defendant dies is applicable." (Id.) Although it is true that federal courts can "construe Rule 25(a)(1) equitably and sensibly" when addressing substitution of parties, substitution is not the proper procedural device in this case. In re Baycol Prod. Litig., 616 F.3d 778, 784 (8th Cir. 2010). The court's research has not uncovered any case law to support petitioner's argument that the general concept of substitution is applicable here. The purpose of substitution is to allow a person's estate to pursue or defend an existing interest in an action. Narkis Golan's interest in defending against the Petition was extinguished upon her death; therefore, her estate does not have an interest in this case. (See Response to Order to Show Cause, filed Nov. 4, 2022, Dkt. No. 137-1 ("Speaking as officers of the Court, our understanding as to the appropriate disposition of this appeal is that, because Ms. Golan is deceased, she 'lack[s] a legally cognizable interest in the outcome' of this case, and thus that a court cannot grant 'any effectual relief' — either for or against her.") (quoting Chafin v. Chafin, 568 U.S. 165, 172 (2013) (quotation marks omitted).) Moreover, as discussed in further depth below, Morin Golan does not

11

have a legal interest in this action.  Consequently, I respectfully recommend that the motion to substitute Morin Golan as respondent be denied.

## IV.    Motion to Amend the Petition

Petitioner alternatively seeks leave to amend the Petition to add Morin Golan as respondent.  (Pet'r's Mot. at 9.)  Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading by leave of court and leave to amend "shall be freely given when justice so requires."  FED. R. CIV. P. 15(a); see also Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Generally, amendments are favored because they "tend to facilitate a proper decision on the merits."  Sokolski v. Trans Union Corp., 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal quotation marks and citations omitted).  Where, as here, a proposed amendment adds a new party, the propriety of the amendment is governed by Federal Rule of Civil Procedure 21, which provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party."  FED. R. CIV. P. 21; see also Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010).

In deciding whether to permit the addition of a defendant or respondent, courts apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15."  Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (quoting Fair Hous. Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).  Thus, leave to amend a pleading to assert claims against an additional party "should be denied only because of undue delay, bad faith, futility, or prejudice to the non-moving party, and the decision to grant or deny a motion to amend rests within the sound discretion of the district court."  DeFazio v. Wallis, No. 05 CV 5712, 2006 WL 4005577, at *1 (E.D.N.Y. Dec. 9, 2006) (citing Aetna Cas. and Sur. Co. v. Aniero Concrete Co.,

Inc., 404 F.3d 566, 603-04 (2d Cir. 2005); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)).

Morin Golan herself seeks to become a party to the case. Morin Golan has physical, if not legal, custody of B.A.S. Adding her as a party would be necessary in the event that Saada's Petition is granted and B.A.S. is ordered to be returned to his habitual residence in Italy. Additionally, justice requires that a living individual be added to the case as respondent, lest the Petition be dismissed. Allowing Saada to amend the Petition to add Morin Golan as respondent does not prejudice her or cause any further delay to the case. Accordingly, I recommend that petitioner be permitted to amend the Petition to add Morin Golan as respondent.

## V.   **Motions to Intervene**

Both Morin Golan and CLC move to intervene as of right, or in the alternative, to intervene permissively under Rule 24 of the Federal Rules of Civil Procedure. Under Rule 24(a), "the court *must* permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a) (emphasis added).

To be granted intervention as of right, "a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" In re New York City Policing During Summer 2020 Demonstrations, 27 F.4th 792, 799 (2d Cir. 2022) (quoting R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006)). The Second Circuit has "underscored that a failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." Floyd v. City of

New York, 770 F.3d 1051, 1057 (2d Cir. 2014) (emphasis in original, and quotation and alteration omitted).  "[T]he proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention."  Kamdem–Ouaffo v. Pepsico, Inc., 314 F.R.D. 130, 134 (S.D.N.Y. 2016).  "In considering a motion to intervene, courts 'accept as true non-conclusory allegations of the motion.'"  Bartlett v. Societe Generale de Banque au Liban SAL, No. 19 CV 07, 2021 WL 3706909, at *4 (E.D.N.Y. Aug. 6, 2021) (quoting S.E.C. v. Callahan, 2 F. Supp. 3d 427, 436 (E.D.N.Y. 2014)).

Under Rule 24(b), "the court *may* permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b) (emphasis added).  "When considering a request for permissive intervention, a district court must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"  AT & T Corp. v. Sprint Corp., 407 F.3d 560, 561-62 (2d Cir. 2005) (quoting FED. R. CIV. P. 24(b)).

A. Morin Golan

Petitioner does not oppose Morin Golan's intervention in this action.  (Letter of Michael Banuchis, Esq., dated Dec. 2, 2022, Dkt. No. 176, at 1 n.1. ("We do not oppose [Morin Golan's] intervention in this proceeding but do oppose any procedural mechanism which would require the filing of a new petition.  We do not believe that her intervention requires a new petition and for the case to begin anew."); see also Memorandum in Opposition to CLC's Motion to Intervene and in Partial Opposition to Morin Golan's Motion to Intervene, dated Dec. 14, 2022 ("Saada Opp."), Dkt. No. 179, at 16 ("Mr. Saada objects to Ms. M. Golan's motion to intervene to the extent that she is requesting a new petition to be filed and for a new evidentiary hearing to be

14

held in this matter.").)  Although Saada partially consents to her intervention, I will nevertheless address whether Morin Golan has satisfied the criteria to intervene in this action.

### 1. *Intervention as of Right*

To be permitted to intervene, Morin Golan must claim an interest relating to the property or transaction that is the subject of this action.  To determine whether an applicant has met this requirement under Rule 24(a), courts first analyze whether the applicant's interest in the litigation is "direct, substantial, and legally protectable."  Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 473 (2d Cir. 2010).  Although only persuasive authority, New York State courts have recognized that non-parents like Morin Golan can have a "real and substantial interest" in the outcome of a family-related action where custody is an issue.  Guma v. Guma, 518 N.Y.S.2d 19, 20 (2d Dep't 1987) (finding that appellants, the child's paternal grandparents, had a "real and substantial interest" in the outcome of the action which gave them a sound basis for seeking to intervene, where evidence existed that the best interests of the child would be served by granting them custody); see also Suarez v. Williams, 44 N.E.3d 915, 923 (N.Y. 2015) (holding that a child's grandparents had standing to seek custody of the child).  However, custody is not an issue in the matter before this court.

Morin Golan is B.A.S.'s aunt and has been his caregiver since the death of his mother, Narkis Golan.  (Golan Mem. at 9.)  During that time, Morin Golan has provided for B.A.S.'s physical and emotional needs, and ensured the continuity of his education, therapy, and counseling in Brooklyn.  (Id.)  As his caregiver and aunt, she asserts that she has an interest in safeguarding B.A.S.'s health, safety, and well-being.  (Id.)  Furthermore, she has filed petitions for custody of B.A.S., which were granted by the Kings County Family Court on October 20, 2022 and November 15, 2022.  (See Kings County Family Court Short Orders, attached as Exs. A

and F to the Motion to Intervene by Morin Golan, filed Nov. 16, 2022, Dkt. No. 172-2.)  This court is only tasked with determining the narrow jurisdictional issue of B.A.S.'s habitual residence under the Hague Convention.  The interest asserted by Morin Golan, while certainly relevant to a custody determination, is not one that is direct, substantial, or legally protectable in the context of this action.  I therefore respectfully recommend that Morin Golan's motion to intervene as of right be denied.

### 2. *Permissive Intervention*

Federal Rule of Civil Procedure 24(b) provides that "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b).  An application for permissive intervention requires the court to consider "substantially the same factors" as for an application for intervention of right.  In re Bank of N.Y. Derivative Litig., 320 F.3d 291, 300 & n. 5 (2d Cir. 2003).  Permissive intervention, however, is committed to the discretion of the trial court.  See U.S. Postal Serv., 579 F.2d at 191.  "In exercising its discretion, the court should consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  NYTDA, Inc. v. City of New York, No. 11 CV 1836, 2014 WL 4274219, at *2 (E.D.N.Y. Aug. 28, 2014) (citing H.L. Havden Co. of N.Y., Inc. v. Siemens Med., 797 F.2d 85, 89 (2d Cir. 1986)).

As discussed above, Morin Golan has not claimed an interest that is direct, substantial, or legally protectable in the context of this action.  Her concerns are instead relevant to the best interests of B.A.S. in a custody determination, which is not for this court to decide.

16

Furthermore, the underlying factual issues in this case have already been determined.  Both the district court and the Second Circuit have found that Italy is B.A.S.'s "habitual residence" under the Hague Convention.  Saada, 930 F.3d at 537.  Additionally, I have recommended that petitioner be permitted to add Morin Golan as respondent, making her intervention unnecessary.  For these reasons, I respectfully recommend that her motion for permissive intervention be denied.

        B.  CLC

Although "children are not usually parties to Hague Convention proceedings . . . nothing in the Convention expressly prohibits a court from allowing children to intervene." Sanchez v. R.G.L., 761 F.3d 495, 508 (5th Cir. 2014).  Therefore, I will address whether CLC has satisfied the criteria to intervene on B.A.S.'s behalf either as of right or permissively.

        *1.*       *Intervention as of Right*

As discussed above, Federal Rule of Civil Procedure 24(a) provides for intervention as of right when a prospective party "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  FED. R. CIV. P. 24(a).  Furthermore, the applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.  See In re New York City Policing During Summer 2020 Demonstrations, 27 F.4th at 799 (citation and quotation marks omitted).  Failure to satisfy any one of these four requirements is sufficient to deny the application.  Floyd, 770 F.3d at 1057.

In determining the timeliness of a motion to intervene, courts may consider the following factors: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." Marin v. Apple-Metro, Inc., No. 12 CV 5274, 2015 WL 13707983, at *6 (E.D.N.Y. Sept. 16, 2015), report and recommendation adopted, No. 12 CV 5274, 2016 WL 11110380 (E.D.N.Y. Feb. 26, 2016) (citations omitted). "Among the most important factors in a timeliness decision is 'the length of time the applicant knew or should have known of his [or her] interest before making the motion.'" Tummino v. Hamburg, 260 F.R.D. 27, 36 (E.D.N.Y. 2009) (quoting Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996)). The timeliness determination "is within the discretion of the district court, 'evaluated against the totality of the circumstances before the court.'" D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001) (citation omitted).

While CLC undeniably acted expeditiously and without delay in moving to intervene in this action after Narkis Golan's death, the interest it seeks to protect is that of B.A.S. – an interest that has existed since the action commenced.[4]  Courts in this Circuit have held that a delay of even a year after becoming aware of an interest may render a motion to intervene untimely.  See, e.g., Kamdem-Ouaffo, 314 F.R.D. at 135 (denying motion to intervene after sixteen months of actual notice and collecting cases where intervention was untimely after, *inter alia*, ten months and fifteen months); S.E.C. v. Callahan, 2 F. Supp. 3d at 438 (finding that the entity was aware of its interest since the commencement of the action and that waiting a year and five months to seek to intervene was untimely); United States v. Simpson Borough Place Corp.,

---

[4] See Sanchez, 761 F.3d at 508 (noting that children's fundamental interests are at stake in the context of Hague proceedings).

01 CV 693, 2007 WL 2581888, at *3 (E.D.N.Y. Sept. 5, 2007) ("A delay of fifteen months is untimely."); see also Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts., 847 F.2d 1038, 1044 (2d Cir. 1988) (finding motion to intervene untimely because the proposed intervenors could have moved when they "were aware of this and related litigation").

 As petitioner asserts, "B.A.S. as a legal entity and CLC as an organization have been on notice of these proceedings since [the case's] inception[.]" (Saada Opp. at 7.)[5]  This case has been in litigation for over four years without B.A.S. as a party.  Furthermore, allowing CLC to intervene at this late stage would likely result in further delay of the action, as petitioner would be required to litigate against an additional adverse party.  See Seils v. Rochester City Sch. Dist., 199 F.R.D. 506, 512 (W.D.N.Y. 2001) (finding that "[a]dding numerous additional parties at this juncture would prejudice the existing parties by causing unnecessary delay" where action had been pending for four years); see also D'Amato, 236 F.3d at 84 (district court did not abuse its discretion when it denied a motion to intervene after concluding that the prejudice to the existing parties outweighed any prejudice to party seeking intervention).  Narkis Golan's death presents an unusual circumstance; however, it does not outweigh the prejudice and delay CLC's motion to intervene would cause to petitioner.[6]  Furthermore, CLC will not be prejudiced by the denial of

---

[5] This assertion is further supported by the publicity generated by this case.  (Memorandum in Opposition to CLC's Motion to Intervene and in Partial Opposition to Morin Golan's Motion to Intervene, dated Dec. 14, 2022, Dkt. No. 179, at 8 ("This case received national attention when it was granted certiorari and numerous organizations and lawyers submitted amici briefs.  Not one entity attempted to intervene on B.A.S.'s behalf.").)

[6] In 2021, when deciding a motion to stay B.A.S.'s return, Judge Donnelly noted the prejudice that additional delay would cause petitioner: "I cannot ignore the fact that he is losing precious opportunities to be with his son during this formative time in the child's development.  The balance of harms weighs in the petitioner's favor."  Saada v. Golan, 2021 WL 1176372, at *7 (E.D.N.Y. Mar. 29, 2021); see also Nicolson v. Pappalardo, 685 F. Supp. 2d 142, 146 (D. Me.

Continued . . .

its motion to intervene.  I have recommended that Morin Golan be added as respondent and, as discussed in further detail below, conclude that she will adequately represent any interest CLC or B.A.S. may have in this action.  Because CLC's motion to intervene is not timely and because CLC has not demonstrated that Morin Golan cannot adequately protect any interest it may have in this action, I respectfully recommend that its motion to intervene as of right be denied on that ground.

2.    <u>*Permissive Intervention*</u>

As discussed above, Federal Rule of Civil Procedure 24(b) provides that "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact."  FED. R. CIV. P. 24(b).  An application for permissive intervention requires the court to consider "substantially the same factors" as for an application for intervention of right.  <u>In re Bank of N.Y. Derivative Litig.</u>, 320 F.3d at 300 & n.5.  Permissive intervention, however, is committed to the discretion of the trial court.  <u>See</u> <u>U.S. Postal Serv.</u>, 579 F.2d at 191.  "In exercising its discretion, the court should consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  <u>NYTDA, Inc.</u>, 2014 WL 4274219, at *2 (citing <u>H.L. Havden Co. of N.Y., Inc.</u>, 797 F.2d at 89).  Even if intervention as of right is untimely, intervention may still be permitted under Rule 24(b).  <u>Id.</u> at *3.

---

2010) ("Every additional day that [the child] is wrongfully retained in the United States causes harm to the Petitioner.").

20

Furthermore, "[t]he burden of showing that the [p]roposed [i]ntervenors' interests are not adequately protected by an existing party is minimal." High Farms, LLC v. King, No. 16 CV 736, 2021 WL 1137995, at *14 (E.D.N.Y. Mar. 25, 2021) (citation and quotation marks omitted). In general, "[t]he burden of persuasion to demonstrate adequacy of representation falls on the party opposing intervention." CBS Inc. v. Snyder, 136 F.R.D. 364, 368 (S.D.N.Y. 1991) (citation omitted). However, where a litigant and a proposed intervenor "have the same ultimate objective," the Second Circuit "demand[s] a more rigorous showing of inadequacy." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001) (citation omitted). In such instances, there is a "presumption of adequate representation" that "the movant to intervene must rebut." Id. at 179-80.

As discussed above, CLC's intervention on behalf of B.A.S. would cause delay and prejudice to petitioner. Additionally, CLC's intervention would not significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. CLC asserts that, while some of the defenses it intends to raise align with those of Morin Golan, B.A.S. is best positioned to assert those defenses himself through his own counsel. (CLC Mem. at 12.) [7] CLC further asserts that

> [Morin Golan] and B.A.S.'s interests would diverge in the event that this Court directed B.A.S.'s immediate return to Italy, as it is doubtful that she would choose to uproot her life to move to Italy with B.A.S., given her lack of any connection to Italy, or any

---

[7] CLC cites Jakubik v. Schmirer to support this assertion. No. 13 CV 4087, 2013 WL 3465857, at *1 (S.D.N.Y. July 9, 2013). However, that case is distinguishable from the instant action because it involved a fifteen-year-old who sought to intervene and present a freestanding Article 13 defense, which allows a court to consider the views of a child who has attained an age and degree of maturity that make it appropriate to do so. Id. ("D.T.J. will prove that she is a mature teenager whose views are thoughtful, rational, and altogether her own [and] should be given great weight.").

> ability to live and work there over the long term.  In such a situation, B.A.S. would have an independent interest in the adoption of ameliorative measures that might enable him to reunite with the father in a manner that was as safe as possible, physically, emotionally, and psychologically.

(Id.)  Significantly, CLC points out that Morin Golan and B.A.S.'s interests would only diverge *if he were returned to Italy*.  Thus, Morin Golan and CLC share the same ultimate goal related to the Petition.  Moreover, there is no indication that Morin Golan does not share CLC's concerns regarding the adoption of ameliorative measures if B.A.S. is directed to return to Italy.[8]

I have recommended granting petitioner's motion to add Morin Golan as respondent and conclude that she and petitioner will be able to adequately represent any interest CLC may have in this action.  Because CLC's motion to intervene would cause delay and prejudice to petitioner and because Morin Golan and petitioner will be able to adequately present any relevant issues that CLC may have put forth on B.A.S.'s behalf, I respectfully recommend that CLC's motion to intervene permissively be denied.

---

[8] In further support of its motion to intervene, CLC asserts that it

> would present evidence, including expert testimony, that, for reasons unanticipated by the District Court, there is a grave risk that an immediate return to Italy would expose B.A.S. to psychological harms that are different from those previously contemplated and address[ed] by this court, and which would place him in an intolerable situation.  This testimony would include, but not be limited to B.A.S.'s special needs and the availability of necessary services in Italy to address those needs, as well as the special psychological and emotional needs of a young child with special needs, who has lost the only parent he can remember.

(CLC Mem. at 15-16.)  However, Narkis Golan previously offered the argument that B.A.S.'s autism diagnosis would pose a grave risk of harm should he be returned to Italy, which was rejected by Judge Donnelly.  Saada, 2020 WL 2128867, at *6.  "As I have explained before at length, the grave risk of harm to B.A.S. comes from a single source—the violence between his parents."  Saada, 2022 WL 4115032, at *7.  Thus, it appears that there is no longer a basis for concluding that there is a grave risk of harm and, consequently, no need to consider ameliorative measures because Narkis Golan's unfortunate passing brings an end to the possibility of domestic violence.

VI.    **Motion to be Appointed as Guardian *ad litem* for B.A.S.**

As an alternative to its motion to intervene, CLC requests that it be appointed as guardian *ad litem* for B.A.S.  The procedure for the appointment of a guardian *ad litem* is governed by Rule 17 of the Federal Rules of Civil Procedure, which provides that "[a] minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.  The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." FED. R. CIV. P. 17(c)(2).  District courts sometimes allow children to participate in Hague Convention actions through guardians *ad litem* or independent counsel when their interests are not adequately represented by either party or when they are found to have attained an age and degree of maturity making it appropriate to take account of their views on repatriation.  See, e.g., Lomanto v. Abelusi, No. 22 CV 7349, 2022 WL 17418696, at *1 (S.D.N.Y. Nov. 17, 2022) ("For this limited purpose and for the needs of this case (where, contra Sanchez, both the mother and father purport to represent the children's interests) the appointment of counsel for the children is appropriate, rather than the appointment of a *guardian ad litem*"); Sanchez, 761 F.3d at 508 (directing the district court on remand to appoint a guardian *ad litem* where the children's fundamental interests were at stake in the district court proceedings and no respondent was making an effort to represent those interests); Johnson v. Johnson, No. 11 CV 37, 2011 WL 569876, at *2 (S.D.N.Y. Feb. 10, 2011) (noting that appointing an attorney for the child is a procedure consistent with those adopted by district courts in Hague Convention cases) (citation and quotation marks omitted).

Often, when counsel is appointed for a child in a proceeding related to a Hague Convention petition, the case involves a child who is found to have attained an age and degree of

maturity at which it is appropriate to consider his or her views of repatriation.  See, e.g., Lomanto, 2022 WL 17418696, at *1 (noting that appointment of counsel for children who are the subject of a Hague Convention petition is warranted in cases where the children may be questioned by the court regarding the grave risk of harm defense and their wishes related to repatriation); Johnson, 2011 WL 569876, at *6 (appointing counsel for an almost fifteen-year-old child who was found to have reached an age, degree of maturity and level of independent thinking where it was appropriate to take his views into account); Reyes-Olguin v. Cruz Santana, No. 03 CV 6299, 2005 WL 67094, at *8 (E.D.N.Y. Jan. 13, 2005) ("As part of the grave-risk analysis under Article 13(b), courts may consider, as non-dispositive factors, whether the child is settled into his new environment, and what the child's own views on repatriation are, taking into account the child's age and degree of maturity.  In large part, the purpose of appointing the guardian *ad litem* was to assist in making these assessments") (internal citation omitted); Diaz Arboleda v. Arenas, 311 F. Supp. 2d 336, 343 (E.D.N.Y. 2004) (appointing guardian *ad litem* where the fourteen- and twelve-year-old children were found to have attained the age and degree of maturity at which it was appropriate to take into account their views of repatriation); c.f. Souratgar v. Lee, 720 F.3d 96, 101 (2d Cir. 2013) (noting that the district court appointed a guardian *ad litem* to represent four-year-old child).

　　　　CLC does not contend that B.A.S. has attained an age or degree of maturity that would make it appropriate to consider his views of repatriation.  Furthermore, as previously discussed, petitioner and Morin Golan will be able to adequately represent B.A.S.'s interests. Accordingly, I respectfully recommend that CLC's motion to be appointed as guardian *ad litem* for B.A.S. be denied.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Kings County Family Court Orders be vacated, that petitioner's request to transfer B.A.S. to his care during these proceedings be referred to the Italian court, and that petitioner's motion to amend the Petition to add Morin Golan as respondent be granted.  I further recommend that Morin Golan's motion to intervene be denied and that CLC's motion to intervene or to be appointed as guardian *ad litem* be denied.  Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Donnelly and to my chambers, within fourteen days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

_____ /s/ _____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
         January 23, 2023