

## TRIBUNALE PER I MINORENNI DI ROMA

Rome, May 11, 2023

Honorable Mary W. Sheffield
IHJN Judge for U.S.A.

Re: Isacco Jacky Saada v. Narkis Aliza Golan
United States District Court for the
Eastern District of New York
18-CV-05292 (AMD) (SMG)

Dear Judge Sheffield,
the following is a first set of answers to Judge Donnelly's questions.

**1) In its January 25, 2023 Order, the Milan Ordinary Law Court declared "the cessation of the matter under dispute due to the death of Narkis Aliza Golan." What effect, if any, did that decision have on the question of custody of the minor child, B.A.S.?**

According to the Italian family law, the Ordinary Law Court is competent, *inter alia*, for lawsuits regarding separation of spouses and divorce proceedings.
With the death of one of the parents, the divorce lawsuit stops and, as a general rule, the surviving parent obtains *ex lege* the child's sole custody.
But if, before the death of one parent, a Court decision had limited the rights of custody of both parents or of the surviving parent, a decision must be taken on this specific issue.
This seems to be the situation in the Saada-Golan case: during the divorce proceedings, the Milan Ordinary Law Court entrusted the child to the local social service ("*affidamento del minore al servizio sociale*"), which is a decision often taken in case of strong conflict between parents.
It means that the social service has the power to intervene in decisions regarding the child. Therefore, the entrustment of the child to the social services represents a more or less strong limitation of the parent's custody rights, in the interest of the child.
The extent of this limitation is determined case by case by the Court.
So far, I cannot say more about this specific entrustment, as I have not access to the decisions of the Milan Ordinary Law Court.
When the Milan Ordinary Law Court declared the cessation of the matter under dispute due to Ms. Golan's death, most probably the Court considered that it was not advisable



in this specific case to remove all at once the entrustment to the social service, as the situation of the child was not yet resolved.
Therefore, the Milan Ordinary Law Court sent the case to the Milan Juvenile Court, more precisely to the Public Prosecutor's Office by the Juvenile Court.

**2) What is the style of the case and the current nature of the proceedings in the Juvenile Court of Milan?**
The Juvenile Court is competent for any issue regarding the protection of the child in case of bad/questionable exercise of the custody rights, neglecting conducts, abuse, or in any other situation where a protection must be put in place: all cases where there is not a conflict between parents regarding the custody rights, but it is necessary to implement protecting measures in the interest of the child.
Decisions by the Juvenile Law Courts consist in limitations of the parental responsibility to be determined according to the specific situation. Almost always public services (such as social services, psychology service, health service, family counseling, shelter homes, etc.) are necessarily involved and parents cooperate with them.
In the Saada-Golan case, the dossier has been sent to the Public Prosecutor's office at the Juvenile Court of Milan. The Public Prosecutor must decide how to proceed and what kind of request propose to the Juvenile Court.
This passage through the Public Prosecutor's office is necessary because the Juvenile Law Court has no *ex officio* powers, there must always be a request by a party, both private and public.
So far the dossier is under the attention of the Chief Public Prosecutor at the Milan Juvenile Court.

**3) If this Court were to order B.A.S.'s return to Italy, could he return in the custody of his father, Isacco Jacky Saada?**
In principle yes. The Juvenile Court will consider the reasons of the child's entrustment to the social service and evaluate if there is a substantial obstacle to entrust the child to the father. I would say that if the child's entrustment to the social service was due only to the strong conflict between the parents, it could now be removed.

**4) Are there currently any legal impediments to Mr. Saada's ability to exercise custody over his son in Italy?**
As said above, the child's entrustment to the social service represents a more or less strong limitation of the parent's custody rights.
So far, I cannot say more about extent and reasons of this limitation, as I have not access to the decision of the Milan Ordinary Law Court.

**5) If Mr. Saada could not have full custody of B.A.S., could one of his family members do so in his stead?**
In principle yes. An evaluation of their willingness and reliability should be necessary.

**6) If this Court were to order B.A.S.'s return to Italy, would he be placed in foster care, an orphanage or a group home upon his return?**



Foster care or shelter homes would be the last resource, only if no family option is available. Social services, psychology service, health service, family counseling, can be charged by the Juvenile Law Court to support the child and the father.

**7) Is Alessandro Simeone still the court-appointed Special Guardian for B.A.S.? If not, has another court appointed guardian been appointed, and who is that guardian.**
As the lawsuit before the Ordinary Court is no more pending, a new Special Guardian should be appointed by the Juvenile Court. I would say that Alessandro Simeone Esq. should be the first choice, in order to grant continuity. But of course, there could be other opportunity reasons.

I hope that these answers can be useful.
I add that the father can participate to the proceedings before the Juvenile Court filing his own requests, as well as any interested relative.
Let me know if more technical information is needed.
I am in touch with the Chief Public Prosecutor at the Milan Juvenile Court. As soon as a petition is filed with the Court, I will contact the judge appointed with the case and inform you.
Best regards,

Judge Daniela Bacchetta